

Carol Gilden
(312) 357-0370
cgilden@cohenmilstein.com

December 3, 2013

**VIA ECF**

The Honorable J. Paul Oetken
United States District Court Southern District of New York
40 Foley Square, Room 2101
New York, NY 10007

      Re:    *In re ITT Educational Services, Inc. Securities Litigation,* Civ. No. 13-1620 (JPO)

Dear Judge Oetken:

      We represent Lead Plaintiffs, Plumbers and Pipefitters National Pension Fund and Metropolitan Water Reclamation District Retirement Fund ("Plaintiffs"), in the above referenced action and write in response to Defendants' pre-motion letter dated, November 26, 2013. Plaintiffs disagree with Defendants' characterizations of the Complaint[1] and believe that the allegations contained therein adequately state cognizable claims under the federal securities laws.

    **I.**    **Factual Background**

      Throughout the Class Period, ITT, a for-profit education company, made a practice of exploiting its students by charging them exorbitant tuition in order to generate large revenues for the Company and large shareholder returns. Because ITT invests so little in career services and student development, its students frequently face difficulty obtaining gainful employment and repaying their student loans. As a result, ITT students default on their student loans at an alarming rate. Indeed, ITT's 2012 Form 10-K disclosed that its three-year default rate for students entering into repayment in 2009 was 34.2% - far higher than the industry average.

      The credit crisis had a profound impact on private student lending throughout the country. In order to maintain enrollment rates, strong revenues and earnings in the face of the shrinking market for private lending, Defendants entered into three Risk Sharing Agreements ("RSAs") with third-party lenders on behalf of ITT. Pursuant to those RSAs, Defendants guaranteed repayment of any private loans that the lender charged-off above a certain percentage. During the Class Period, Defendants assured investors that their obligations under these RSAs were not material, and that the Company was being ultraconservative in booking reserves for losses under the RSAs. However, unbeknownst to investors, the Company's

---

[1] References to "¶__" are to the Corrected Consolidated Amended Securities Class Action Complaint ("Complaint"), filed on October 11, 2013, following Lead Plaintiffs' appointment by the Court.

exposure under each RSA was much larger than disclosed and was only made to seem minimal by virtue of improper accounting methods used by ITT to inflate its finances. The truth about these omissions and misstatements was finally revealed to the market through a series of partial disclosures late in the class period when (1) ITT revealed that no private lender would enter into an RSA with them, that ITT was increasing its bad debt expense and for the first time adding its exposure under the RSAs to its balance sheet; (2) ITT revealed that it had settled a dispute with Sallie Mae directly related to the amount of exposure that the Company maintained for its 2007 RSA; and (3) ITT finally disclosed (only after its senior directors executed their own insider sales at inflated prices) that they were under investigation by the SEC for the same conduct alleged here. As a result, the price of ITT stock plummeted injuring Plaintiffs and the Class.

**II.     Response to Defendants' Perceived Deficiencies**

The Complaint certainly meets the requirements of Rule 9(b) and satisfies the PSLRA. Under this rule, the complaint must "state with particularity the circumstances constituting fraud[.]" F.R.C.P. 9(b). The Complaint clearly alleges that during the Class Period, Defendants made numerous misstatements and omissions that (1) concealed the Company's true liabilities under the RSAs, ¶¶3, 23; (2) failed to disclose the risks associated with the RSAs while assuring investors that the Company had properly recorded reserves to meet its liabilities, ¶¶75, 78, 119-190; and (3) concealed the fact that the Company had improperly accounted for its liabilities under the RSAs in violation of Generally Accepted Accounting Principles ("GAAP"). *See e.g.* ¶¶3, 23, 90-103 (explaining Defendants' disregard of GAAP).

Moreover, the misstatements and omissions set forth in the Complaint are neither statements of opinion nor were they forward-looking statements accompanied by meaningful cautionary language as Defendants claim. "Generalized disclosures of amorphous risks will not shield defendants from liability." *In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 212 (S.D.N.Y. 2004). This is particularly so here, given that Defendants had specific knowledge of the Company's substantial liabilities under the RSAs, but continued to assure investors that the Company's liabilities were not material, and failed to disclose that the method of accounting for such liabilities violated GAAP principles. *Id.* ("If a party is aware of a particular problem worthy of disclosure, the party may not rely on general disclaimers to avoid liability").

The Complaint also adequately alleges that Defendants had actual knowledge that their statements were false at the time the statements were made. As alleged in the Complaint, Modany and Fitzpatrick were both present for monthly meetings during which the Company's finances and student aid were regularly discussed among high level employees. ¶¶86-89; 225-26. Defendants, particularly Modany who had a reputation as a micromanager, also closely tracked the cohort default rates and ongoing economic conditions of the Company. ¶¶212-218. Moreover, both Modany and Fitzpatrick were professional accountants with extensive knowledge of GAAP and financial principles that would govern the alleged conduct.

The Complaint also adequately alleges that all of the Defendants acted with the requisite scienter. First, Plaintiffs need not allege scienter separately for each Individual Defendant.[2] The

---

[2] *See In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 516 (S.D.N.Y. 2009) ("[S]cienter by management-level employees is generally sufficient to attribute scienter to corporate defendants" and "the individual making an alleged

The Honorable J. Paul Oetken
Page 3

Complaint adequately alleges scienter with respect to ITT itself and provides sufficient facts to give rise to a strong inference of scienter as to Modany and Fitzpatrick.  Moreover, it is a holistic inquiry that courts must undertake. "Courts must consider the complaint in its entirety . . . . The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues &Rights, Ltd.,* 551 U.S. 308, 322-23 (2007).[3]  Plaintiffs' additional scienter allegations are also sufficient.  The Complaint alleges that Defendants filed 10b5-1 trading plans just one day after receiving claims from Sallie Mae for additional liabilities under the RSA.  ¶222-223.  The Complaint also details the February 2013 insider trading conducted just days after receiving the subpoena from the SEC but before that subpoena was disclosed to the public.  ¶224.

Finally, the partial corrective disclosures described herein bear directly on the alleged misstatements and omissions made by the Company during the Class Period and, as a result, Plaintiffs have adequately alleged loss causation.  Each identified disclosure incrementally revealed that the Company's exposure under the RSAs was far more significant than previously disclosed, that the Defendants failed to record adequate reserves for such exposure, and that the Defendants had falsely portrayed the Company's finances by using improper accounting practices.  *See* ¶191 (revealing that Company had begun lending directly to students and had to increase allowance for doubtful accounts and bad debt expense on its books for the first time); ¶197 (revealing that the Company settled an action in connection with its exposure to the 2007 RSA); ¶201 (revealing that Company received an SEC subpoena relating to its accounting practices for the RSAs).

For all of these reasons, Plaintiffs believe Defendants' intended motion to dismiss should be denied.  We are available at the Court's convenience for a pre-motion conference.

Respectfully submitted,

*/s/ Carol V. Gilden*

Carol V. Gilden

cc: All Counsel of Record

---

misstatement and the one with scienter do not have to be one and the same."); *see also Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 194-95 (2d Cir. 2008).

[3] *Tellabs* also makes clear that Plaintiffs need not allege motive to prevail at the motion to dismiss stage.  *See Tellabs*, 551 U.S. at 325.  In any event, the Complaint does allege motive.  *See* ¶219-221.  The Complaint makes clear that concealing the Company's liabilities under the RSA's permitted Defendants to overstate the Company's earnings and record increased revenue which directly benefitted Modany and Fitzpatrick in the form of increased compensation, and that it also allowed ITT to maintain its Composite Score with the Department of Education.