**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ITT EDUCATIONAL SERVICES, INC. SECURITIES LITIGATION | Civil Action No. 13-cv-1620-JPO<br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND OF THE LITIGATION........................................................... 3

III.    SETTLEMENT NEGOTIATIONS .................................................................... 6

IV.     ARGUMENT ..................................................................................................... 6

        A.      The Proposed Settlement Warrants Preliminary Approval.................................... 6

        B.      The Proposed Settlement Is Fair, Reasonable and Adequate ................................ 8

                1.      The Proposed Settlement Is the Result of Non-Collusive, Arm's-Length Negotiations............................................................................ 8

                2.      The Settlement Was Reached by Capable Counsel After Meaningful Discovery ..................................................................................... 9

                3.      The Proposed Settlement Is in the Best Interests of the Class......... 11

        C.      The Plan of Allocation Is Fair and Reasonable .................................................. 12

V.      THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE ADEQUATE................................................................................................... 13

        A.      The Scope of the Notice Program................................................................... 13

        B.      The Notice Program Comports with Due Process .............................................. 14

VI.     PROPOSED SCHEDULE OF EVENTS.......................................................... 16

VII.    CONCLUSION................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Advanced Battery Techs. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................................15

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...............................................................................12

*In re AOL Time Warner, Inc.*,
    No. 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...........................................11

*Authors Guild v. Google, Inc.*,
    No. 05 Civ. 8136, 2009 U.S. Dist. LEXIS 116175 (S.D.N.Y. Dec. 1, 2009) ..........................8

*In re Currency Conversion Fee Antitrust Litig.*,
    No. 01-MDL-1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ...........................................9

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..................................................................................................9

*Danieli v. IBM Corp.*,
    No. 08 CV 3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ...........................................12

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..................................................................................................7

*In re Gilat Satellite Networks, Ltd.*,
    No. 02-cv-1510, 2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007) ..........................11

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................15

*Great Neck Capital Appreciation Inv. P'ship, LP v. Pricewaterhouse Coopers*,
    *LLP*, 212 F.R.D. 400 (E.D. Wis. 2002) ...............................................................................10

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ..........................................................................7, 9, 10, 13

*In re Interpublic Sec. Litig.*,
    Nos. 02 Civ. 6527 (DLC), 03 Civ. 1194 (DLC), 2004 WL 2397190 (S.D.N.Y.
    Oct. 26, 2004) ......................................................................................................................6

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02-MDL-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...........................................15

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................7

*New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group,*
  *PLC, et al.*,
  No. 08-5093-LAP (S.D.N.Y. July 18, 2014) ........................................................15

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F. 3d 132 (2d Cir. 1998) ................................................................................6

*In re Platinum & Palladium Commodities Litig.*,
  No. 10-3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ..................8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................7, 11

*In re Sadia S.A. Sec. Litig.*,
  No. 08-cv-9528, 2011 U.S. Dist. LEXIS 149107 (S.D.N.Y. Dec. 28, 2011) ........15

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ......................................................................7, 11

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................9

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..............................................................................8, 14

*Walsh v. Great Atl. & Pac. Tea Co.*,
  726 F.2d 956 (3d Cir. 1983) ...............................................................................12

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008).......7, 15

Lead Plaintiffs[1] Plumbers and Pipefitters National Pension Fund ("PPNPF" or "Plumbers and Pipefitters") and Metropolitan Water Reclamation District Retirement Fund ("MWRDRF" or "Metropolitan Water") (collectively "Lead Plaintiffs"), respectfully submit this memorandum of law in support of Lead Plaintiffs' unopposed motion for: (i) preliminary approval of the Stipulation of Settlement dated November 2, 2015 (the "Stipulation" or "Settlement"), proposing to settle all claims in this action; (ii) certification of a Class for the purposes of settlement; (iii) approval of the form and manner of notice to Class Members; and (iv) the scheduling of a hearing (the "Final Approval Hearing") on final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Lead Counsel's and Lead Plaintiffs' litigation expenses. Subject to the Court's availability, Lead Plaintiffs respectfully request that the Court schedule the Final Approval Hearing for a date during the week of February 29, 2016.

## I.   INTRODUCTION

After more than two years of litigation, which included the Court's denial in substantial part of Defendants' motion to dismiss; Lead Plaintiffs' motion for class certification; and extensive fact and class-certification discovery, including seven depositions and expansive written discovery, including the production and review of over 2 million pages of documents; an all-cash settlement of $16.9625 million was achieved for the benefit of the Class. This $16.9625 million cash settlement provides an immediate benefit to the Class to resolve the claims against Defendants.

Lead Plaintiffs and Lead Counsel, based upon extensive discovery and evaluation of the facts and applicable law in this case and their recognition of the substantial risk and expense of

---

[1] All capitalized terms not defined here have the same meanings as set forth in the Stipulation.

continued litigation, and in light of both the Company's financial condition and the competing demands placed on the Company's insurance policies by other litigation and proceedings in which the Company is involved, submit that the proposed Settlement is in the best interests of the Class and provides a meaningful recovery for the Class now. Accordingly, Lead Plaintiffs respectfully move for the certification of the Class for the purposes of the Settlement, approval of the form and manner of distribution of notice to the Class, and scheduling of a Final Approval Hearing.

Specifically, Lead Plaintiffs request that the Court enter the proposed Order Preliminarily Approving the Settlement, Approving Notice to the Class and Scheduling Final Approval Hearing (the "Preliminary Approval Order"), attached as Exhibit A to the Stipulation, which, *inter alia*, will:

(i)       preliminarily approve the Settlement, including all provisions therein;

(ii)      approve the form and content of the Notice of Pendency of Class Action and Proposed Settlement ("Notice") and Summary Notice of Pendency of Class Action and Proposed Settlement ("Summary Notice"), attached as Exhibits A-1 and A-2 to the Stipulation, respectively;

(iii)     approve the form and content of the Proof of Claim Form, attached as Exhibit A-3 to the Stipulation;

(iv)      preliminarily certify, for the purposes of the Settlement, a Class of all persons or entities who purchased or acquired the common stock of ITT Educational Services, Inc. ("ITT" or the "Company") between April 24, 2008 and February 25, 2013, both dates inclusive;

(v)       preliminarily appoint, for the purposes of the Settlement, Lead Plaintiffs as class representatives for the Class and Lead Counsel as counsel for the Class;

2

(vi)    find that the procedures established for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and

(vii)   schedule the Final Approval Hearing and establish a schedule and procedures for: disseminating the Notice and publishing the Summary Notice; requesting exclusion from the Class; objecting to the Settlement; considering Lead Counsel's motion for attorney's fees and reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

## II.    BACKGROUND OF THE LITIGATION

The case commenced on March 11, 2013, when plaintiff William Koetsch filed a class action complaint, Civil Action No. 13-cv-1620-JPO (Dkt. 1), against ITT and two of its officers, Daniel M. Fitzpatrick and Kevin M. Modany (the "Individual Defendants"), in the United States District Court for the Southern District of New York (the "Court" or "District Court"), on behalf of a putative class comprising purchasers of the Company's common stock between April 22, 2010 and February 25, 2013, and asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. The case was assigned to the Honorable J. Paul Oetken.

On April 17, 2013, plaintiff Massachusetts Laborers' Annuity Fund filed a substantially similar class action complaint against the same defendants in the same Court, with a proposed class period of April 24, 2008 to February 25, 2013.

Both actions asserted substantially similar claims, namely that Defendants misled investors by misrepresenting the Company's liabilities under certain risk-sharing agreements ("RSAs") that the Company had entered into in connection with certain third-party, private student loan programs for ITT students. Under the RSAs, the Company would be liable to the third parties if the Company's students were to default on their student loans received under those programs beyond a certain threshold. The actions asserted that Defendants knowingly or recklessly understated, or otherwise misrepresented, the extent of those liabilities, and that when the market learned the true extent of those liabilities, investors were harmed.

On July 25, 2013, the Court consolidated the two actions, appointed Plumbers and Pipefitters and Metropolitan Water as Lead Plaintiffs, and approved Lead Plaintiffs' selection of Cohen Milstein Sellers & Toll PLLC as Lead Counsel in the consolidated action (the "Action"). (Dkt. 18).

On October 7, 2013, Lead Plaintiffs filed a Consolidated Amended Class Action Complaint with an expanded Class Period of April 24, 2008 through February 25, 2013, inclusive. (Dkt. 29). On November 26, 2013, pursuant to the Court's Individual Practices, Defendants filed a letter articulating the bases for an anticipated motion to dismiss. (Dkt. 32). On December 6, 2013, also pursuant to the Court's Individual Practices, Lead Plaintiffs sought, and were granted, leave to amend the Consolidated Amended Class Action Complaint in lieu of Defendants filing a motion to dismiss at that stage. (Dkt. 34).

On January 15, 2014, Lead Plaintiffs filed a Second Amended Consolidated Class Action Complaint (the "Complaint"). (Dkt. 37). The Complaint alleged: (1) that ITT and the Individual Defendants made material misrepresentations and omissions in violation of Section 10(b) and Rule 10b-5 of the Exchange Act; and (2) that the Individual Defendants are liable for ITT's primary violation of the Exchange Act as alleged "control persons" of the Company within the meaning of Section 20(a) of the Exchange Act.

On March 3, 2014, Defendants moved to dismiss the Complaint. (Dkt. 40). On July 22, 2014, the Court denied in large part Defendants' motion to dismiss. (Dkt. 48).

On August 5, 2014, Defendants answered the Complaint, denying all allegations of wrongdoing or liability therein, and also asserting various defenses. (Dkt. 50).

Lead Plaintiffs, on behalf of themselves and the putative Class, and Defendants (together the "Parties") then commenced written discovery focused on, among other things, ITT's RSAs and student loan default rates and the extent of Defendants' knowledge regarding the likelihood that the Company's obligations under the RSAs would be triggered.  Prior to producing documents, the Parties engaged in extensive negotiations about the scope of discovery. The parties also conducted extensive third-party discovery; in particular, Lead Plaintiffs directed subpoenas to the counterparties to the RSAs, among other entities, while Defendants directed subpoenas to, and took the depositions of, Lead Plaintiffs' investment managers.  The parties also conducted discovery in connection with class certification, including the taking by Defendants of seven depositions, including of representatives of Lead Plaintiffs. On March 27, 2015, as discovery was ongoing, Lead Plaintiffs filed a motion for class certification ("Class Certification Motion") (Dkt. 64), supported by the expert report of Michael L. Hartzmark, Ph.D.

On June 16, 2015, the Court entered a stipulation and order that stayed proceedings for three months to facilitate the parties' efforts to resolve the Action through mediation. (Dkt. 76). On September 14, 2015, the Court extended the stay of proceedings for an additional two months to allow the parties to continue their settlement discussions. (Dkt. 78).

The parties have engaged in comprehensive discovery relating to both merits issues and class certification. Defendants have produced over 350,000 documents, and over 1,400,000 pages of documents. Lead Plaintiffs have produced over 1,300 documents, and over 115,000 pages of documents. Additionally, Defendants took seven depositions, largely in connection with class certification, including the deposition of Dr. Hartzmark as well as the Rule 30(b)(6) depositions of Plumbers and Pipefitters and Metropolitan Water.

## III.   SETTLEMENT NEGOTIATIONS

On August 12, 2015, Lead Plaintiffs, Lead Counsel, Defendants, ITT's insurers, and Defendants' Counsel participated in a mediation under the auspices of the Honorable Daniel Weinstein (Ret.) of JAMS. Pursuant to Judge Weinstein's instructions, the Parties submitted detailed confidential mediation statements in advance of the mediation session, totaling 57 pages plus 109 exhibits. As a result of the arm's-length negotiations at that mediation, the parties (including ITT's insurers) agreed in principle to settle the Action for $16.9625 million, subject to agreement on documentation and the approval of the Court. On November 2, 2015, the Parties executed the Stipulation of Settlement.

## IV.   ARGUMENT

### A.   The Proposed Settlement Warrants Preliminary Approval

There is a "strong judicial policy in favor of settlement, particularly in the class action context." *In re PaineWebber Ltd. P'ships Litig.*, 147 F. 3d 132, 138 (2d Cir. 1998); *In re Interpublic Sec. Litig.*, Nos. 02 Civ. 6527 (DLC), 03 Civ. 1194 (DLC), 2004 WL 2397190, at *7

6

(S.D.N.Y. Oct. 26, 2004). Approving a settlement "is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement." *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (internal quotations omitted).

Preliminary approval of a proposed settlement "is the first in a two-step process required before a class action may be settled." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). First, "the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005). Where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Id.* (quoting *NASDAQ Market-Makers*, 176 F.R.D. at 102).

In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ*, 176 F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (internal quotation marks and citation omitted).

Any further analysis of the fairness of a proposed settlement under the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)) is unnecessary at this stage and is to be reserved for the Court's determination of final approval of the settlement. *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the Grinnell] factors is required for final approval, at the

preliminary approval stage, 'the Court need only find that the proposed settlement fits "within the range of possible approval"' to proceed."); *In re Platinum & Palladium Commodities Litig.*, No. 10-3617, 2014 U.S. Dist. LEXIS 96457, at *38 (S.D.N.Y. July 15, 2014) ("At preliminary approval, it is not necessary to exhaustively consider the factors applicable to final approval."); *see also Authors Guild v. Google, Inc.*, No. 05 Civ. 8136, 2009 U.S. Dist. LEXIS 116175, at *2-3 (S.D.N.Y. Dec. 1, 2009) ("In evaluating a proposed class action settlement agreement for preliminary approval . . . a full fairness analysis is neither feasible nor appropriate.").

Where the settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery," then a "presumption of fairness, adequacy, and reasonableness may attach." *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (*quoting Manual for Complex Litigation, Third* § 30.42 (1995)). The proposed Settlement is an excellent result for Lead Plaintiffs and the Class. The Settlement, which was reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery, provides a recovery in a case where Lead Plaintiffs faced significant hurdles in proceeding with the litigation and proving liability and damages, and is certainly within the range that would be determined to be fair, reasonable and adequate.

### B.    The Proposed Settlement Is Fair, Reasonable and Adequate

#### 1.    The Proposed Settlement Is the Result of Non-Collusive, Arm's-Length Negotiations

The proposed Settlement of $16.9625 million represents an excellent result for the Class, and is the product of extensive arm's-length negotiations between Lead Plaintiffs and Defendants. These arm's-length negotiations were facilitated through mediation before a highly-experienced and well-regarded mediator, the Honorable Daniel Weinstein (Ret.).

The Parties participated in an all-day mediation session on August 12, 2015 in New York City. Prior to this mediation session, the Parties prepared comprehensive mediation statements accompanied by more than 100 exhibits consisting of evidence produced during discovery. At the mediation, the Parties reached an agreement in principle to settle this Action. Following this agreement in principle, the Parties spent substantial time negotiating the specific terms of the Settlement, which are embodied in the Stipulation that was executed by the Parties on November 2, 2015.

At all times, the Parties' negotiations were conducted at arm's-length, and the process required all Parties and their counsel to assess difficult and uncertain outcomes. There can be no doubt that the proposed Settlement is "the product of serious, informed, non-collusive negotiations." *Initial Pub. Offering*, 226 F.R.D. at 194 (finding proposed settlement the product of non-collusive negotiations where settlement negotiations were facilitated by an experienced and well-respected mediator); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion"); *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MDL-1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) ("Judge Infante's participation in the negotiations substantiates the parties' claim that the negotiations took place at arm's length.").

### 2.    The Settlement Was Reached by Capable Counsel After Meaningful Discovery

The factual and class-certification issues raised in this Action were complex, and the Parties engaged in meaningful, extensive discovery before beginning the mediation process,

which included seven depositions taken by Defendants and Lead Counsel's review of more than 350,000 documents produced by Defendants spanning 1.4 million pages and of nearly 80,000 documents produced by third parties spanning nearly 800,000 pages. That the Settlement followed this discovery demonstrates that the Parties had sufficient information to properly evaluate the strengths and weaknesses of the claims asserted in the Complaint, class certification issues, and the likelihood of protracted and expensive litigation if the case were to continue.

Lead Plaintiffs also retained and consulted with Dr. Hartzmark of Hartzmark Economics Litigation Practice, LLC, who submitted an expert report in support of Lead Plaintiffs' motion for class certification. Dr. Hartzmark conducted a series of financial analyses and concluded that (1) the market for ITT stock was efficient; and (2) there is a common, class-wide methodology for calculating the economic loss for purchasers of ITT stock.

Lead Plaintiffs also retained and consulted with an accounting expert to analyze documents produced by Defendants during discovery relating to the level of ITT's student loan default rates during the Class Period, the impact of those default rates on ITT's liabilities under the RSAs, and ITT's resulting accounting obligations. Although a report proved unnecessary because the Parties reached the proposed Settlement, Lead Counsel and Lead Plaintiffs' consultation with this expert provided Lead Plaintiffs with a clear and detailed view of the factual strengths and weaknesses of the case. *Initial Pub. Offering*, 226 F.R.D. at 194 (preliminarily approving settlement where "[t]he settling parties are represented by experienced and talented counsel that share expertise in this field and an extensive knowledge of the details of this case."); *see also Great Neck Capital Appreciation Inv. P'ship, LP v. Pricewaterhouse Coopers*, LLP, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("[T]he settlement was reached after

PwC's motion to dismiss had been decided and after merits discovery was well underway. Thus, plaintiffs' counsel's evaluation of the case was based on a reasonable amount of information.").

### 3.     The Proposed Settlement Is in the Best Interests of the Class

The $16.9625 million proposed Settlement represents an exceptional recovery for the Class. "Securities class actions are generally complex and expensive to prosecute." *In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510, 2007 U.S. Dist. LEXIS 29062, at *36 (E.D.N.Y. Apr. 19, 2007); *see also Sumitomo Copper Litig.*, 189 F.R.D. at 281 ("[I]n evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."). Because of:

> the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class. In the circumstances of such a case as this, it may be preferable to take the bird in the hand instead of the prospective flock in the bush.

*Prudential*, 163 F.R.D. at 210. The proposed Settlement will allow the Class to receive a concrete benefit now, not a hypothetical benefit after years of uncertain litigation and a far-from-guaranteed jury verdict. *See In re AOL Time Warner, Inc.*, No. 02 Civ. 5575, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (immediate, substantial and concrete benefit of settlement outweighs possibility of higher recovery after trial). Moreover, even if Lead Plaintiffs were to obtain a favorable jury verdict that would survive the inevitable round of appeals, it is possible that due to other litigation and proceedings pending against the Company, and the Company's resulting financial condition, which Lead Counsel retained a financial consultant to analyze, there could be insufficient Company assets or insurance policy proceeds to satisfy a substantial judgment.

In sum, nothing in the course of the Parties' negotiations or the terms of the Settlement reveals any grounds to doubt the fairness of the Settlement. To the contrary, the substantial

recovery for the Class, the extensive investigation and discovery conducted, the Parties' litigation efforts over the course over more than two years, the arm's-length nature of the negotiations, and the participation of an experienced mediator, all amply support a finding that the proposed Settlement is well "within the range of possible approval" so as to justify notice to the Class and scheduling of a Final Approval Hearing.

### C. The Plan of Allocation Is Fair and Reasonable

"An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (internal quotations omitted). The court's "principal obligation is simply to ensure that the fund distribution is fair and reasonable." *Id.* (quoting *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983)).

Here, the proposed Plan of Allocation was prepared with the assistance of Lead Plaintiffs' economic expert, Dr. Hartzmark, who has significant experience in drafting plans of allocation. The Plan of Allocation provides a reasonable, rational basis for Class Members to recover their *pro rata* damages based upon the dates of their ITT stock transactions. The proposed Plan of Allocation is also fair and reasonable because, for Class Members who purchased their shares during the Class Period but sold or continued to hold their shares after the Class Period, the Plan of Allocation calculates damages based on the methodology set forth in the PSLRA. *See* 15 U.S.C. § 78u-4(e) (providing methodology for limiting damages). The proposed Plan of Allocation is fair and reasonable, and should be preliminarily approved. *See Danieli v. IBM Corp.,* No. 08 CV 3688, 2009 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009) (approving plan of allocation where it "is rationally related to the relative strengths and weaknesses of the respective claims asserted" and falls within the range of possible approval).

## V.     THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE ADEQUATE

Once a court preliminarily approves a settlement as fair, adequate and reasonable, then "it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *Initial Pub. Offering*, 226 F.R.D. at 191.

### A.     The Scope of the Notice Program

Following a competitive bidding process and extensive evaluation, Lead Counsel has selected Epiq Systems, Inc., a highly experienced and diligent class action claims administrator, to serve as the Claims Administrator for the proposed Settlement. The Claims Administrator will send a Notice of Pendency of Class Action and Proposed Settlement, which provides a detailed explanation of the Action and proposed Settlement, to shareholders who may be identified through the records maintained by or on behalf of the Company, including the Company's transfer agents, or through brokers holding shares on behalf of beneficial owners. The Claims Administrator will also publish a Summary Notice, which provides a summary of the Action and the proposed Settlement, and explains how to obtain the more detailed Notice and Proof of Claim Form. The Summary Notice will be published in the *Wall Street Journal* as well as transmitted over *PR Newswire*, not later than twenty-one (21) days after the entry of the proposed Preliminary Approval Order (subject to Court approval).

Lead Plaintiffs have also instructed the Claims Administrator to maintain a website, at www.ITTSecuritiesSettlement.com. This website will provide more information on the Settlement, including downloadable copies of the Notice, Proof of Claim Form, and Stipulation. The Claims Administrator will also maintain a toll-free telephone number for Class Members to call with any questions. The Preliminary Approval Order, Notice and Proof of Claim Form will also be available on Lead Counsel's website at www.cohenmilstein.com.

**B.**     **The Notice Program Comports with Due Process**

The standard for determining the adequacy of a class action settlement notice under either

the Due Process Clause or the Federal Rules is reasonableness. *Wal-Mart*, 396 F.3d at 113. The

Second Circuit has explained:

> There are no rigid rules to determine whether a settlement notice to the class
> satisfies constitutional or Rule 23(e) requirements; the settlement notice must
> fairly apprise the prospective members of the class of the terms of the proposed
> settlement and of the options that are open to them in connection with the
> proceedings. Notice is adequate if it may be understood by the average class
> member.

*Id*. at 114 (internal citation and quotations omitted). In addition, the PSLRA sets forth several

elements that must be present in settlement notices. *See* 15 U.S.C. § 78u-4(a)(7).

The proposed Notice has been carefully drafted to contain all necessary information. All

of the information is provided in a format that is easily accessible to the reader. The Notice and

Summary Notice "fairly apprise the prospective members of the class of the terms of the

proposed settlement[s] and of the options that are open to them in connection with the

proceedings." *Wal-Mart*, 396 F.3d at 114 (internal quotation marks omitted).  The Notice advises

recipients of their legal rights and obligations in connection with the Settlement, including the

right to object to any portion of the Settlement, exclude themselves from the Class, or submit a

completed Proof of Claim Form in order to be eligible to share in the Settlement. Contact

information for both Lead Counsel and the Claims Administrator is provided, as well as a toll-

free number and website for the recipient if there are any further questions. As described above

and further outlined in the proposed Preliminary Approval Order, the Claims Administrator will

(i) notify Class Members of the Settlement by mailing the Notice and Proof of Claim Form to all

potential Class Members who can be identified with reasonable effort, (ii) cause the Summary

Notice to be published in the *Wall Street Journal* and transmitted over *PR Newswire*, and (iii)

14

maintain a website with relevant information at www.ITTSecuritiesSettlement.com. Notice programs such as this have been approved in a multitude of class action settlements. *New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group, PLC, et al.*, No. 08-5093-LAP, Dkt. 270 (S.D.N.Y. July 18, 2014) (approving notice program where notice was mailed to reasonably ascertainable class members and broker-dealer nominees, summary notice was published and settlement website and toll-free number was maintained by claims administrator); *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (notice program approved where claims administrator disseminated notice to reasonably ascertainable class members and published summary notice in *Investor's Business Daily* and over *PR Newswire*); *In re Sadia S.A. Sec. Litig.,* No. 08-cv-9528, 2011 U.S. Dist. LEXIS 149107 (S.D.N.Y. Dec. 28, 2011) (approving notice program where notice was mailed to class members identified from transfer records, summary notice was published, and settlement website was maintained for further information); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02-MDL-1484, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007) (notice program approved where claims administrator disseminated notice and proof of allocation to class members and published summary notice "in appropriate publications").

Lead Plaintiffs' proposed manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of Due Process and Rule 23 of the Federal Rules. *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 at 448-49 (S.D.N.Y. 2004). Therefore, Lead Plaintiffs respectfully submit that the Court should approve the form and content of the Notice.

## VI.     PROPOSED SCHEDULE OF EVENTS

Lead Plaintiffs propose the following schedule for the Settlement-related events in this

case.

| Event | Proposed Date/Deadline |
|---|---|
| Publish Notice of Settlement and Begin Mailing Long Form Notice to Class Members | 21 days after Preliminary Approval Order is entered. |
| Deadline to File Motion for Final Approval of Settlement and for Reimbursement of Litigation Expenses | 35 days before Final Approval Hearing. |
| Deadline for Receipt of Requests for Exclusion from Settlement | 21 days before Final Approval Hearing. |
| Deadline to File and Serve Objections to Final Approval and Reimbursement of Litigation Expenses | 21 days before Final Approval Hearing. |
| Reply to Objections, if any | 7 days before Final Approval Hearing. |
| Deadline to File Papers in Further Support of Final Approval of Settlement and for Reimbursement of Litigation Expenses | 7 days before Final Approval Hearing. |
| Final Settlement Approval Hearing | During the week of February 29, 2016, subject to the Court's availability. |
| Deadline for the Submission of Proof of Claim Forms | 120 days after Preliminary Approval Order is entered. |

## VII.     CONCLUSION

Lead Plaintiffs respectfully request that the Court (i) preliminarily approve the

Settlement; (ii) preliminarily certify the Class for the purposes of the Settlement; (iii) approve the

proposed form and manner of notice to Class Members; (iv) approve the proposed Proof of

Claim Form; (v) preliminarily appoint Lead Plaintiffs as class representatives for the Class and

Lead Counsel as counsel for the Class; and (vi) schedule a hearing on Lead Plaintiffs' motion for

final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and

reimbursement of litigation expenses during the week of February 29, 2016, subject to the

Court's availability. A proposed Preliminary Approval Order is being submitted herewith as

Exhibit A to the Stipulation.

16

Dated: November 2, 2015

**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**

By: _/s/ Carol V. Gilden_
     Carol V. Gilden
     190 South LaSalle Street
     Suite 1705
     Chicago, IL 60603
     Tel.: (312) 357-0370
     Fax: (312) 357-0369
     cgilden@cohenmilstein.com

     S. Douglas Bunch
     Elizabeth Aniskevich
     Times Wang
     1100 New York Avenue, N.W.
     Suite 500 East
     Washington, D.C. 20005
     Tel.: (202) 408-4600
     Fax: (202) 408-4699
     dbunch@cohenmilstein.com
     eaniskevich@cohenmilstein.com
     twang@cohenmilstein.com

     Kenneth M. Rehns
     88 Pine Street, 14th Fl.
     New York, New York 10005
     Tel.: (212) 838-7797
     Fax: (212) 838-7745
     krehns@cohenmilstein.com

     *Attorneys for Lead Plaintiffs and the Class*

**O'DONOGHUE & O'DONOGHUE LLP**

     James R. O'Connell
     Mark W. Kunst
     4748 Wisconsin Ave. N.W.
     Washington, D.C. 20016
     Tel.: (202) 362-0041
     Fax: (202) 362-2640

     *Additional Attorneys for Lead Plaintiff*
     *Plumbers and Pipefitters National Pension Fund*