**EXECUTION COPY**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ITT EDUCATIONAL SERVICES, INC. SECURITIES LITIGATION | Civil Action No. 13-cv-1620-JPO<br>ECF Case |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement ("Settlement") is made and entered into by and among (i) Lead Plaintiffs, on behalf of themselves and each of the Class Members, by and through Lead Counsel; and (ii) Defendants, by and through their counsel.

This Settlement is intended by the Settling Parties to fully, finally and forever compromise, resolve, discharge and settle the Released Claims and result in the complete dismissal of this Action with prejudice, upon and subject to the approval of the Court and the terms and conditions herein, without any admission or concession as to the merits of any of the Settling Parties' claims or defenses.

**WHEREAS:**

A.     All terms with initial capitalization shall have the meanings ascribed to them in Paragraph 1 below or as otherwise defined herein.

B.     On March 11, 2013, plaintiff William Koetsch filed a class action complaint, Civil Action No. 13-cv-1620-JPO (Dkt. 1), against ITT Educational Services, Inc. ("ITT" or the "Company"), and two of its officers, Daniel M. Fitzpatrick and Kevin M. Modany (the "Individual Defendants"), in the United States District Court for the Southern District of New York (the "Court" or "District Court"), on behalf of a putative class comprising purchasers of the Company's common stock between April 22, 2010 and February 25, 2013, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. The case was assigned to the Honorable J. Paul Oetken.

C.     On April 17, 2013, plaintiff Massachusetts Laborers' Annuity Fund filed a substantially similar class action complaint against the same defendants in the same Court, with a

proposed class period of April 24, 2008 to February 25, 2013. On July 25, 2013, the Court consolidated the two actions, appointed Plumbers and Pipefitters National Pension Fund ("PPNPF" or "Plumbers and Pipefitters") and Metropolitan Water Reclamation District Retirement Fund ("MWRDRF" or "Metropolitan Water") as Lead Plaintiffs, and approved Lead Plaintiffs' selection of Cohen Milstein Sellers & Toll PLLC as Lead Counsel in the consolidated action (the "Action"). (Dkt. 18).

D.      On October 7, 2013, Lead Plaintiffs filed a Consolidated Amended Class Action Complaint. (Dkt. 29).

E.      On November 26, 2013, pursuant to the Individual Practices of Judge Oetken, Defendants filed a letter articulating the bases for an anticipated motion to dismiss. (Dkt. 32).

F.      On December 6, 2013, also pursuant to Judge Oetken's Individual Practices, Lead Plaintiffs sought, and were granted, leave to amend the Consolidated Amended Class Action Complaint in lieu of Defendants filing a motion to dismiss at that stage. (Dkt. 34).

G.      On January 15, 2014, Lead Plaintiffs filed a Second Amended Consolidated Class Action Complaint (the "Complaint"). (Dkt. 37). The Complaint alleged: (1) that ITT and the Individual Defendants made material misrepresentations and omissions in violation of Section 10(b) and Rule 10b-5 of the Exchange Act; and (2) that the Individual Defendants are liable for ITT's primary violation of the Exchange Act as alleged "control persons" of the Company within the meaning of Section 20(a) of the Exchange Act.

H.      On March 3, 2014, Defendants moved to dismiss the Complaint. (Dkt. 40).

I.      On July 22, 2014, after the motion was fully briefed, the Court issued an opinion granting in part and denying in part Defendants' motion to dismiss. (Dkt. 48).

**EXECUTION COPY**

J.      On August 5, 2014, Defendants answered the Complaint, denying all allegations of wrongdoing or liability therein. (Dkt. 50).

K.      On March 27, 2015, Lead Plaintiffs filed a motion for class certification ("Class Certification Motion"). (Dkt. 64).

L.      On June 16, 2015, before Defendants' opposition to Lead Plaintiffs' Class Certification Motion was due to be filed, the Court entered a stipulation and order that stayed proceedings for three months to facilitate the parties' efforts to resolve the Action through mediation. (Dkt. 76).

M.      On September 14, 2015, the Court extended the stay of proceedings for two months to allow the parties to continue their settlement discussions. (Dkt. 78).

N.      There has been a significant amount of discovery in this Action, both on the merits and related to class certification. Defendants have produced over 350,000 documents, and over 1,400,000 pages of documents. Lead Plaintiffs have produced over 1,300 documents, and over 115,000 pages of documents. Additionally, Defendants took seven depositions, largely in connection with class certification, including the deposition of Lead Plaintiffs' economic expert on the issue of market efficiency, as well as the Rule 30(b)(6) depositions of Plumbers and Pipefitters and Metropolitan Water.

O.      On August 12, 2015, Lead Plaintiffs, Lead Counsel, Defendants, ITT's insurers, and Defendants' Counsel participated in a mediation under the auspices of the Honorable Daniel Weinstein (Ret.) of JAMS. Pursuant to Judge Weinstein's instructions, the parties submitted detailed mediation statements in advance of the mediation session. As a result of the arm's-length negotiations at that mediation, the parties (including ITT's insurers) agreed in principle to settle the Action for $16.9625 million, subject to documentation and the approval of the Court.

P.      Lead Counsel and Lead Plaintiffs have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that (i) it is in the best interests of the Class to enter into this Settlement in order to avoid the uncertainties of litigation and to ensure that the benefits reflected herein are obtained for the Class and (ii) the Settlement set forth herein is fair, reasonable and adequate and in the best interests of the Class Members.

Q.      Defendants believe that they are not liable for the claims asserted against them in the Action and that they have good and meritorious defenses thereto. They have nevertheless agreed to enter into this Settlement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to put to rest this controversy and avoid the risks inherent in litigation.

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties, through their respective counsel of record, that, subject to the approval of the District Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the PSLRA and other conditions set forth herein, in consideration of the benefits flowing to the Settling Parties hereto, that the Action and all Released Claims as against the Released Parties shall be fully, finally and forever compromised, settled, released, discharged and dismissed with prejudice, upon and subject to the following terms and conditions:

## DEFINITIONS

1.      As used in this Settlement, the following terms shall have the meanings specified below. In the event of any inconsistency between any definition set forth below and any

definition set forth in any document attached as an exhibit to this Settlement, the definition set forth below shall control.

(a)      "Action" means the action pending in this Court under the caption *In re ITT Educational Services, Inc. Securities Litigation*, Case No. 13-cv-1620-JPO, including, without limitation, all cases consolidated under that caption.

(b)      "Authorized Claimant" means a Class Member that timely submits a valid Proof of Claim Form to the Claims Administrator in accordance with the requirements established by the Court, and that is approved by the Claims Administrator for payment from the Net Settlement Fund.

(c)      "Claim" means a claim submitted by a Class Member to the Claims Administrator for payment pursuant to the Plan of Allocation.

(d)      "Claims Administrator" means Epiq Systems, Inc.

(e)      "Class Certification Motion" means Lead Plaintiffs' motion for class certification, filed on March 27, 2015, seeking certification of a class consisting of all purchasers of the common stock of ITT Educational Services, Inc. between April 24, 2008 and February 25, 2013.

(f)      "Class" means, for purposes of this Settlement, and to be certified pursuant to Fed. R. Civ. P. 23, for purposes of effectuating this Settlement only, all persons and entities who purchased or otherwise acquired the common stock of ITT Educational Services, Inc. (ticker symbol: ESI) between April 24, 2008 and February 25, 2013, both dates inclusive. Excluded from the Class are: Defendants; members of the immediate family of any Defendant; any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest during the Class Period; the officers and directors of ITT during the Class Period; and legal representatives, agents, executors, heirs, successors, or assigns of any such excluded person or

6

entity. Any person or entity that timely and validly requests exclusion from the Class pursuant to and in accordance with the terms of the Preliminary Approval Order is also excluded from the Class.

(g)      "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to eligible Class Members.

(h)      "Class Member" means a person or entity that is a member of the Class.

(i)      "Class Period" means the period from April 24, 2008 to February 25, 2013, both dates inclusive.

(j)      "Defendants" means ITT Educational Services, Inc., Daniel M. Fitzpatrick, and Kevin M. Modany.

(k)      "Defendants' Counsel" means the law firm of Gibson, Dunn & Crutcher, LLP.

(l)      "Effective Date" means the first day on which the Settlement shall become effective as set forth in ¶ 43 below. Lead Counsel shall advise Defendants' Counsel and the Claims Administrator promptly after it has determined that it believes the Effective Date has occurred.

(m)      "Escrow Account" means an escrow account established, maintained, and controlled by the Escrow Agent, subject to Lead Counsel's supervisory authority, into which Defendants shall deposit or cause to be deposited the Settlement Amount.

(n)      "Escrow Agent" means Eagle Bancorp, Inc.

(o)      "Final" means, with respect to any order of court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order

becomes "Final" when (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in all material respects and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this paragraph, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of *certiorari* or *mandamus*, and any other proceedings of like kind. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to a Class Distribution Order, a Plan of Allocation, or to the Court's award of Lead Counsel's fees and/or expenses shall not in any way delay or affect the time set forth above for the Judgment to become Final.

(p)     "Final Approval Hearing" means the hearing set by the Court under Rule 23(e) of the Federal Rules of Civil Procedure to consider final approval of the Settlement, Lead Counsel's request for an award of attorneys' fees, and reimbursement of Litigation Expenses.

(q)     "Judgment" means the order of final judgment to be entered by the Court which, subject to the approval of the Court, shall be substantially in the form attached hereto as Exhibit B.

(r)     "Lead Counsel" means the law firm of Cohen Milstein Sellers & Toll PLLC.

(s)     "Lead Plaintiffs" means Plumbers and Pipefitters National Pension Fund and Metropolitan Water Reclamation District Retirement Fund, collectively.

(t)     "Litigation Expenses" means the reasonable costs and expenses incurred by Lead Counsel in connection with commencing and prosecuting the Action, for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund. Litigation Expenses

may also include reimbursement of the reasonable costs and expenses (including lost wages) of Lead Plaintiffs in accordance with 15 U.S.C. § 78u-4(a)(4).

(u)     "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the District Court.

(v)     "Notice" means the Notice of Pendency of Class Action and Proposed Settlement (substantially in the form attached hereto as Exhibit A-1), which is to be sent to members of the Class.

(w)     "Notice and Administration Costs" means the costs, fees and expenses that are reasonably incurred by the Claims Administrator in connection with (i) providing notice to the Class; and (ii) administering the claims process, including, without limitation, the actual costs of publication, printing and mailing the Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with identifying Class Members and providing notice and processing the submitted Claims, and the reasonable fees, if any, of the Escrow Agent. Prior to the Effective Date, the Escrow Agent, without further approval of Defendants or the Court, may pay from the Settlement Fund up to $150,000.00 in Notice and Administration Costs actually and reasonably incurred associated with the administration of the Settlement. Prior to the Effective Date, payment of any Notice and Administration Costs exceeding $150,000.00 shall require notice to and agreement from Defendants, through Defendants' Counsel. Subsequent to the Effective Date, without further approval by Defendants or the Court, the Settlement Fund may be used by Lead Counsel to pay reasonable and necessary Notice and Administration Costs in excess of $150,000.00. In the event that the Settlement is

terminated pursuant to the terms of this stipulation, all Notice and Administration Costs properly paid or incurred, including any related fees, shall not be returned or repaid to Defendants.

(x)      "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in ¶ 22 below and in the Notice, or such other plan of allocation that the Court approves. The Plan of Allocation is not part of the Settlement, and Defendants and the Released Parties shall have no responsibility for the Plan of Allocation or its implementation, and no liability with respect thereto.

(y)      "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement, and directing that notice be provided to the Class, which, subject to the approval of the Court, shall be substantially in the form attached hereto as Exhibit A.

(z)      "Proof of Claim Form" means the form provided to Class Members by the Claims Administrator for purposes of submitting a Claim, substantially in the form attached hereto as Exhibit A-3.

(aa)      "Released Claims" means any and all actions, causes of action, claims (including "Unknown Claims," as defined in ¶ 1(kk) herein), duties, debts, demands, rights, disputes, suits, matters, damages, losses, obligations, proceedings, issues, judgments, and liabilities of every nature and description whatsoever (and including, but not limited to, any claims for damages, whether compensatory, consequential, special, punitive, exemplary or otherwise, and any fees, costs, expenses, or charges), whether known or unknown, suspected or unsuspected, fixed or contingent, foreseen or unforeseen, liquidated or unliquidated, accrued and unaccrued, matured or unmatured, at law or in equity, whether class, derivative, or individual in nature, whether or not concealed or hidden, which now exist, or heretofore have existed, or can, shall or may exist,

10

whether arising under federal, state, common, statutory, administrative or foreign law, regulation, or at equity, that (a) Lead Plaintiffs or any Class Member has asserted in this Action, or could have asserted in this Action or in any other proceeding or forum that arise out of, relate to or are based upon, the allegations, claims, transactions, facts, matters, occurrences, events, failures, representations, statements, or omissions alleged, involved, set forth, or referred to in the Complaint; (b) would have been barred by *res judicata* or collateral estoppel had the Action been fully litigated to a final judgment; and (c) were, could have been, or in the future could be, asserted in any forum or proceeding or otherwise by any Class Member that relate to the purchase, sale, acquisition or holding of ITT common stock during the Class Period. Released Claims do not, however, include claims to enforce this Settlement, or claims in other actions that have already been filed as of the date of execution of this Settlement and that are not consolidated with this Action.

(bb)    "Released Party" and "Released Parties" means each Defendant and his, her or its respective past, present or future directors, officers, employees, parents, partners, members, principals, agents, owners, fiduciaries, shareholders, related or affiliated entities, subsidiaries, divisions, accountants, auditors, attorneys, associates, consultants, advisors, insurers, co-insurers, reinsurers, trustees, estates, beneficiaries, administrators, foundations, underwriters, banks or bankers, personal or legal representatives, divisions, joint ventures, spouses, domestic partners, family members, heirs, executors, or any other person or entity acting or purporting to act for or on behalf of any of the Defendants, and each of their respective predecessors, successors and assigns, and any trusts for which any of them are trustees, settlors, or beneficiaries.

(cc)    "Settled Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory, or common law, or any

other law, rule, or regulation, including both known claims and Unknown Claims (as defined in ¶ 1(kk) herein), that have been or could have been asserted in the Action or any forum by Defendants or the Released Parties, against Lead Plaintiffs, any of the Class Members, or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action.  Settled Defendants' Claims do not, however, include claims to effectuate or to enforce this Settlement.

(dd)   "Settlement" means this Stipulation and Agreement of Settlement and the settlement contained herein.

(ee)   "Settlement Amount" means Sixteen Million, Nine Hundred Sixty-Two Thousand, and Five Hundred Dollars ($16,962,500.00).

(ff)   "Settlement Fund" means the Settlement Amount plus any interest earned thereon after it is deposited into the Escrow Account.

(gg)   "Settling Parties" means Defendants and Lead Plaintiffs, on behalf of themselves and the Class.

(hh)   "Summary Notice" means the Summary Notice of Pendency of Class Action and Proposed Settlement, which shall be substantially in the form attached hereto as Exhibit A-2, to be published as set forth in the Preliminary Approval Order.

(ii)   "Taxes" means any taxes due and payable with respect to the income earned by the Settlement Fund, including any interest or penalties thereon.

(jj)   "Tax Expenses" means any reasonable expenses and costs incurred in connection with the payment of Taxes or the preparation of tax returns, including, without limitation, reasonable expenses of tax attorneys and/or accountants and/or other advisors and reasonable expenses relating to the filing of or failure to file all necessary or advisable tax returns.

(kk)    "<u>Unknown Claims</u>" means any and all Released Claims, of every nature and description, that Lead Plaintiffs and/or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, which if known by him, her or it, might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision not to object to this Settlement or not to exclude himself, herself or itself from the Class or to release the Released Claims.  With respect to any Settled Defendants' Claims, "Unknown Claims" means any and all Settled Defendants' Claims, of every nature and description, which Defendants and the other Released Parties do not know or suspect to exist in their favor at the time of the release of Lead Plaintiffs, the Class Members, and their attorneys, which, if known by them, might have affected their decisions with respect to the release of Settled Defendants' Claims or the Settlement.

## SETTLEMENT CONSIDERATION

2.    ITT, on behalf of all Defendants, shall cause to be deposited Sixteen Million, Nine Hundred Sixty-Two Thousand, and Five Hundred Dollars ($16,962,500.00) into the Escrow Account by wire transfer or delivery of a check no later than fifteen (15) business days after the later of: (i) entry of a Preliminary Approval Order by the Court, or (ii) receipt by Defendants' Counsel from Lead Counsel of all necessary payment details to accomplish payment of the Settlement Amount by wire transfer or check, including payee name, payee mailing address, bank account number, name of bank, and bank address, a Sort Code or ABA Routing Number, the currency of the account receiving the funds, wire transfer instructions, the Tax Identification Number and an executed Form W-9. The Settlement Amount shall constitute the full and sole monetary contribution made by or on behalf of the Released Parties in connection with the resolution of the Action and the Settlement. If the Settlement Amount, or any portion

thereof, is not deposited into the Escrow Account by the date provided for in this paragraph, the Settling Parties agree that Defendants will not be obligated to pay the Settlement Amount or any portion thereof and Lead Plaintiffs', Lead Counsel's, and any other parties' remedy against Defendants shall be to terminate the Settlement, in which case ¶ 44 below shall govern.

## CAFA NOTICE

3.    Pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, no later than ten (10) days after the Settlement is filed with the Court, Defendants will serve proper notice of the proposed Settlement upon the appropriate representatives and, within three (3) business days thereafter, will provide written notification to Lead Counsel that they have done so.  Defendants shall be responsible for all costs and expenses related to such notification.

## RELEASES

4.    Upon the Effective Date, Lead Plaintiffs and each of the Class Members (on behalf of themselves and each of their respective present and former directors, officers, employees, parents, subsidiaries, related or affiliated entities, shareholders, members, divisions, partners, joint ventures, family members, spouses, domestic partners, heirs, principals, agents, owners, fiduciaries, personal or legal representatives, attorneys, auditors, accountants, advisors, banks or bankers, insurers, reinsurers, trustees, trusts, estates, executors, administrators, predecessors, successors, assigns, and any other person or entity who has the right, ability, standing, or capacity to assert, prosecute, or maintain on behalf of any Class Member any of the Released Claims (or to obtain the proceeds of any recovery therefrom)), regardless of whether that Class Member actually submits a Proof of Claim Form, seeks or obtains a distribution from the Net Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to the Settlement, the Plan of Allocation, or Lead

Counsel's application for attorneys' fees and Litigation Expenses, shall be deemed to have and by operation of the Judgment shall have fully, finally and forever waived, released, relinquished, discharged and dismissed each and every Released Claim against each and every Released Party.

5.     With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code § 1542, and of any U.S. federal or state law, or principle of common law or the law of any foreign jurisdiction, that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides, in relevant part:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiffs and other Class Members, or certain of them, may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiffs and the Class Members, and each of them, upon the Effective Date, by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, claims relating to conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

15

Lead Plaintiffs acknowledge, and Class Members by law and operation of the Judgment shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

6.      Upon the Effective Date, Lead Plaintiffs and each of the Class Members (on behalf of themselves and each of their respective present and former directors, officers, employees, parents, subsidiaries, related or affiliated entities, shareholders, members, divisions, partners, joint ventures, family members, spouses, domestic partners, heirs, principals, agents, owners, fiduciaries, personal or legal representatives, attorneys, auditors, accountants, advisors, banks or bankers, insurers, reinsurers, trustees, trusts, estates, executors, administrators, predecessors, successors, assigns, and any other person or entity who has the right, ability, standing, or capacity to assert, prosecute, or maintain on behalf of any Class Member any of the Released Claims (or to obtain the proceeds of any recovery therefrom)), regardless of whether that Class Member actually submits a Proof of Claim Form, seeks or obtains a distribution from the Net Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and Litigation Expenses, and in accordance with the terms of the proposed Judgment attached hereto as Exhibit B, shall have covenanted not to sue the Released Parties with respect to any Released Claims and are forever barred and enjoined from commencing, instituting, participating in, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Claim (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of this Action against any Released Party.

7.      Upon the Effective Date, each of the Released Parties, on behalf of themselves and each of their past or present subsidiaries, affiliates, parents, assigns, successors and predecessors, estates, heirs, executors, administrators, and the respective officers, directors, shareholders, agents, legal representatives, spouses and any persons or entities they represent, shall, with respect to each and every one of Settled Defendants' Claims, release and forever discharge each and every one of the Settled Defendants' Claims, and shall forever be enjoined from instituting, commencing, or prosecuting the Settled Defendants' Claims.

### BAR ORDER

8.      The proposed Judgment shall include, and the Settling Parties agree to the entry by the Court of an order providing for the bar order in ¶ 9 (the "Bar Order"), subject to the terms in ¶ 11 herein.

9.      The Bar Order shall provide that, upon the Effective Date, except as provided in ¶ 11 below, any and all persons and entities are permanently barred and enjoined, to the fullest extent permitted by law, from commencing, prosecuting, or asserting any and all claims for contribution or indemnity (or any other claim when the alleged injury to that person or entity is their actual or threatened liability to the Class or a Class Member in the Action) based upon, relating to, arising out of, or in connection with the Released Claims, against each and every one of the Released Parties, whether arising under state, federal, common, statutory, administrative or foreign law, regulation, or at equity, as claims, cross-claims, counterclaims, or third-party claims, in this Action or a separate action, in this Court or in any other court, arbitration proceeding, administrative proceeding, or other forum; and, except as provided in ¶ 11 below, the Released Parties are permanently barred and enjoined, to the fullest extent permitted by law, from commencing, prosecuting, or asserting any and all claims for contribution or indemnity (or

any other claim when the alleged injury to the Released Party is their actual or threatened liability to the Class or a Class Member in the Action) based upon, relating to, or arising out of the Released Claims, against any person or entity, other than a person or entity whose liability to the Class has been extinguished pursuant to the Settlement and the Judgment, whether arising under state, federal, common, statutory, administrative, or foreign law, regulation, or at equity, as claims, cross-claims, counterclaims, or third-party claims, in this Action or a separate action, in this Court or in any other court, arbitration proceeding, administrative proceeding, or other forum. Nothing herein shall bar, release, or alter in any way, any obligations, rights or claims among or between the Released Parties.

10.     The Judgment shall also contain a provision, substantially in the form set forth in Exhibit "B" hereto, requiring that any final verdict or judgment that may be obtained by or on behalf of the Class or a Class Member against any person or entity subject to the Bar Order as defined herein be reduced by the greater of: (i) an amount that corresponds to the percentage of responsibility of any of the Defendants for common damages; or (ii) the Settlement Amount.

11.     Notwithstanding the Bar Order in ¶ 9 above, nothing in this Settlement shall bar any action by any of the Settling Parties to enforce or effectuate the terms of this Settlement, the Preliminary Approval Order, or the Judgment.

## USE AND TAX TREATMENT OF SETTLEMENT FUND

12.     The Settlement Fund shall be held and invested in the Escrow Account as provided in ¶ 13 hereof. If the Settlement becomes Final, any interest earned on the Settlement Fund shall be for the benefit of the Class. If the Settlement does not become Final and the Settlement is terminated for any reason, within ten (10) days of termination, the Settlement Fund shall be returned pursuant to written instructions from Defendants' Counsel, together with any

interest earned on the Settlement Fund, less any Notice and Administration Costs actually incurred.

13.     The Escrow Agent shall invest any funds in excess of the $150,000.00 preliminarily allocated to Notice and Administration Costs, in United States Agency or Treasury Securities having maturities of 180 days or less, money market mutual funds comprised of investments secured by the full faith and credit of the United States government, or an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC"), and shall collect or reinvest all interest accrued thereon.  Any funds held in escrow in an amount equal to or less than $150,000.00 may be held in an interest-bearing bank account insured by the FDIC. The Released Parties and Defendants' Counsel shall have no responsibility for, interest in, or liability with respect to the investment decisions of the Escrow Agent. The Settlement Fund and the Escrow Agent shall bear all risks related to investment of the Settlement Amount.

14.     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Settlement.

15.     Subject to the terms and conditions of this Settlement, the Settlement Fund shall be used to pay: (i) Taxes and Tax Expenses; (ii) Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court. In no event shall the Released Parties bear any responsibility for any fees, costs or expenses beyond payment of the Settlement Amount.

16.     After (i) the Judgment becomes Final, and (ii) entry by the Court of a Class Distribution Order approving distribution of the Net Settlement Fund to the Class, the Claims Administrator shall distribute the Net Settlement Fund to Authorized Claimants in accordance with the terms of such Class Distribution Order; provided, however, that any amounts in the

Escrow Account necessary for payment of Taxes and Tax Expenses and/or Notice and Administration Costs shall remain in the Escrow Account for such purpose.

17.     Except as provided herein, the Net Settlement Fund shall remain in the Escrow Account prior to the distribution. All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed or returned pursuant to the terms of this Settlement.

18.     The Settling Parties agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 and that the Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by ¶ 19 herein. The Claims Administrator shall also be solely responsible for causing payment to be made from the Settlement Fund of any Taxes and Tax Expenses owed with respect to the Settlement Fund, and is authorized to withdraw, without prior order of the Court, from the Settlement Fund such amounts as are necessary to pay Taxes and Tax Expenses. Defendants will provide to the Claims Administrator the statement described in Treasury Regulation § 1.468B-3(e). However, neither the Released Parties nor Defendants' Counsel shall have any liability or responsibility for the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority. The Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-

2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation-back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

19.     All Taxes (including any interest or penalties) and Tax Expenses shall be considered to be a cost of administration of the Settlement and shall be paid out of the Settlement Fund. The Released Parties shall not have any responsibility for, and no liability with respect to, payment of any such Taxes or Tax Expenses, and shall have no responsibility for, and no liability with respect to, the acts or omissions of the Claims Administrator, Lead Counsel or their agents, with regard to Taxes and Tax Expenses. The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the terms of this Settlement with regard to Taxes and Tax Expenses.

20.     If all conditions of the Settlement are satisfied and the Judgment is entered and becomes Final, no portion of the Settlement Fund will be returned to Defendants, irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. If any portion of the Net Settlement Fund remains following distribution pursuant to ¶ 29 and is of such an amount that in the discretion of the Claims Administrator it is not cost effective or efficient to redistribute to the Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes and Tax Expenses, shall be donated to a nonsectarian charitable organization(s) certified as tax-exempt under United States Internal Revenue Code Section 501(c)(3), to be designated by Lead Counsel.

## **CLASS CERTIFICATION**

21.     Solely for purposes of the Settlement, the Settling Parties stipulate and agree to: (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class; (b) appointment of Lead Plaintiffs as class representatives; and (c) appointment of Lead Counsel as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

## **PLAN OF ALLOCATION**

22.     The Net Settlement Fund shall be distributed to Authorized Claimants in accordance with a Plan of Allocation prepared by Lead Counsel, in conjunction with Lead Plaintiffs' damages expert, and set forth in Exhibit A-1. The Released Parties and Defendants' Counsel have had no role in the preparation of the Plan of Allocation.

23.     The finality of the Settlement shall not be conditioned on any ruling by the District Court concerning the Plan of Allocation or any award of attorneys' fees or reimbursement of Litigation Expenses. Any order or proceeding relating to a request for approval of the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect or delay the Effective Date or the effectiveness or finality of the Judgment and the release of the Released Claims. There shall be no distribution of any of the Settlement Fund to any Class Member until the Plan of Allocation is finally approved and such order of approval is affirmed on appeal and/or is no longer subject to review by appeal or *certiorari*, and the time for any petition for rehearing, appeal, or review, by *certiorari* or otherwise, has expired. Again, and for the avoidance of doubt, the Released Parties and Defendants' Counsel shall have no responsibility for, and no liability with respect to, the investment or distribution of the Settlement Fund.

24.     The allocation of the Net Settlement Fund among Authorized Claimants is a matter separate and apart from the proposed Settlement between Defendants and Lead Plaintiffs, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Plan of Allocation is not a necessary term of this Settlement, and it is not a condition of this Settlement that any particular plan of allocation be approved by the Court. None of the Settling Parties may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action. The Released Parties shall have no responsibility for, and no liability with respect to, the allocation of the Net Settlement Fund, nor shall they object to the Plan of Allocation proposed by Lead Plaintiffs.

**ATTORNEYS' FEES AND LITIGATION EXPENSES**

25.     Lead Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees not to exceed 28% of the Settlement Fund (*i.e.*, up to $4,749,500.00). Litigation Expenses may include reimbursement of the expenses of Lead Plaintiffs' counsel up to $750,000.00 and Lead Plaintiffs' expenses up to approximately $40,000.00 in accordance with 15 U.S.C. § 78u-4(a)(4). Attorneys' fees and Litigation Expenses are not the subject of any agreement between the Settling Parties other than what is set forth in this Settlement.

26.     The Released Parties will take no position on Lead Counsel's request for attorneys' fees or Litigation Expenses, and shall have no responsibility for, and no liability with respect to, the attorneys' fees or Litigation Expenses that the Court may award.

27.     The procedure for and amounts of any award of attorneys' fees and Litigation Expenses, and the allowance or disallowance by the Court thereof, shall not be a condition of the Settlement. Lead Counsel shall request that its application for an award of attorneys' fees and

**EXECUTION COPY**

Litigation Expenses be considered by the Court separately from the Court's consideration of the fairness and adequacy of the Settlement. Any order or proceedings relating to such request, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect the release of the Released Claims. The finality of the Settlement shall not be conditioned on any ruling by the Court concerning Lead Counsel's application for attorneys' fees and Litigation Expenses.

28.     Within ten (10) days after both the Judgment and an order by the Court approving Lead Counsel's attorneys' fees and Litigation Expenses (the "Fee and Expense Order") become Final, any awarded attorneys' fees and Litigation Expenses shall be paid to Lead Counsel from the Escrow Account. Notwithstanding the foregoing, such attorneys' fees and Litigation Expenses awarded by the Court may be paid immediately following entry of the Judgment and the Fee and Expense Order notwithstanding the existence of or pendency of any appeal or collateral attack on the Settlement or any part thereof or the Fee and Expense Order. In the event that the Effective Date does not occur, or the Judgment or the Fee and Expense Order is reversed or modified by a Final, non-appealable order, or the Settlement is terminated or canceled for any reason, and in the event that attorneys' fees and Litigation Expenses have been paid out of the Escrow Account to any extent, then Lead Counsel shall be obligated and do hereby agree, within ten (10) days from receiving notice from Defendants' Counsel or from the Court, to refund to the Escrow Account such attorneys' fees and Litigation Expenses that have been paid, plus interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account.

## ADMINISTRATION OF THE SETTLEMENT

29.     The Claims Administrator, subject to the supervision of Lead Counsel and the jurisdiction of the Court, shall administer and calculate the Claims submitted by Class Members, oversee distribution of the Net Settlement Fund to Authorized Claimants, and perform all claims administration procedures necessary or appropriate in connection therewith. The Claims Administrator shall receive and administer Claims in accordance with the Plan of Allocation approved by the Court. The proposed Plan of Allocation is set forth in the Notice attached hereto as Exhibit A-1.

30.     The Released Parties shall have no liability, obligation or responsibility whatsoever to any person, including, but not limited to, Class Members, the Escrow Agent, or the Claims Administrator, in connection with the administration of the Settlement, the processing of claims, or the disbursement of the Net Settlement Fund.

31.     Within ten (10) business days of the Court's Preliminary Approval Order, Defendants will use reasonable efforts to cause ITT's transfer agent to provide the Claims Administrator in a computer-readable format, the last known names and addresses of all of ITT's shareholders of record during the Class Period.

32.     Lead Counsel shall cause the Claims Administrator to mail the Notice to those Class Members who may be identified through the records maintained by or on behalf of ITT, and to publish the Summary Notice, pursuant to the terms of the Preliminary Approval Order entered by the Court.

33.     Any Class Member who does not timely submit a valid Proof of Claim Form by the deadline set by the Court will not be entitled to receive any distribution from the Net Settlement Fund but will nevertheless be bound by all of the terms of the Settlement, including

25

the terms of the Judgment to be entered in the Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party concerning any Released Claim.

34.     By submitting a Claim, a Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claim, including, but not limited to, the releases and Bar Order provided for in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to their status as a Class Member and the validity and amount of their Claim. No discovery shall be allowed on the merits of this Action or this Settlement in connection with the processing of Proof of Claim Forms, nor shall any discovery be taken of the Released Parties in connection with such matters.

35.     Lead Counsel will apply to the Court, with reasonable notice to Defendants, for a Class Distribution Order, *inter alia*: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding Notice and Administration Costs from the Escrow Account; and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

36.     Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Class Members. All Class Members who did not submit a Claim or whose Claim was not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will be permanently barred and

enjoined from bringing any action, claim or proceeding of any kind against any Released Party concerning any Released Claim.

37.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

**OBJECTIONS AND REQUESTS FOR EXCLUSION**

38.     Any member of the Class may appear at the Final Approval Hearing and show cause why the proposed Settlement should or should not be approved as fair, reasonable, adequate and in the best interests of the Class, or why the Judgment should or should not be entered thereon, and/or to present opposition to the Plan of Allocation or to the application of Lead Counsel for attorneys' fees and reimbursement of Litigation Expenses. However, no Class Member or any other person or entity shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the Judgment to be entered thereon approving the same, or the terms of the Plan of Allocation or the application by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses, unless that Class Member (i) has served written objections, by hand or first-class mail, including the basis therefor, as well as copies of any papers and/or briefs in support of his, her or its position upon Lead Counsel and Defendants' Counsel for receipt no later than twenty-one (21) days prior to the Final Approval Hearing; and (ii) filed said objections, papers and briefs with the Clerk of the United States District Court for the Southern District of New York no later than twenty-one (21) days prior to the Final Approval Hearing. Any objection must include: (a) the full name, address, and phone number of the objecting Class Member; (b) a list and documentation of all of the Class

Member's transactions in ITT common stock during the Class Period, such as brokerage confirmation receipts or other competent documentary evidence of such transactions, including the amount and date of each purchase (or acquisition) or sale and the price or other consideration paid and/or received (including all income received thereon); (c) a written statement of all grounds for the objection accompanied by any legal support for the objection; (d) copies of any papers, briefs or other documents upon which the objection is based; (e) a list of all persons who will be called to testify in support of the objection; (f) a statement of whether the objector intends to appear at the Final Approval Hearing; (g) a list of other cases in which the objector or the objector's counsel have appeared either as settlement objectors or as counsel for objectors in the preceding five years; and (h) the objector's signature, even if represented by counsel. If the objector intends to appear at the Final Approval Hearing through counsel, the objection must also state the identity of all attorneys who will appear on his, her or its behalf at the Final Approval Hearing. Any Class Member who does not make his, her or its objection in the manner provided for herein shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the Settlement, to the Judgment, to the Plan of Allocation or to the application by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses. The Notice shall also state the manner in which a notice of objection should be prepared, filed and delivered. By objecting to the Settlement, the Judgment, the Plan of Allocation and/or the application by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses, or otherwise requesting to be heard at the Final Approval Hearing, an objector shall be deemed to have submitted to the jurisdiction of the Court with respect to the person's or entity's objection or request to be heard and the subject matter of the Settlement, including, but not limited to, enforcement of the terms

of the Settlement (including, but not limited to, the release of the Released Claims provided for in the Settlement and the Judgment).

39.    A person or entity requesting exclusion from the Class must timely provide the following information to the Claims Administrator: (i) name; (ii) address; (iii) telephone number; (iv) number of shares of ITT common stock purchased (or otherwise acquired) or sold; (v) prices or other consideration paid or received for such ITT common stock; (vi) the date of each purchase (or acquisition) or sale transaction; and (vii) a statement that the person or entity wishes to be excluded from the Class. Unless otherwise ordered by the Court, any Class Member who does not timely submit a written request for exclusion as provided by this section shall be bound by the Settlement. Lead Plaintiffs shall request that any requests for exclusion must be received by the Claims Administrator no later than twenty-one (21) days prior to the Final Approval Hearing.

40.    The Claims Administrator shall scan and electronically send copies of all requests for exclusion in PDF format (or such other format as shall be agreed) to Defendants' Counsel and to Lead Counsel expeditiously (and not more than two (2) days) after the Claims Administrator receives such a request. Lead Counsel shall provide Defendants' Counsel, within two (2) days after the expiration of the request for exclusion deadline, copies of all requests for exclusion of any Class Members who will be identified to the Court as having validly and timely requested exclusion from the Class. Lead Counsel will submit to the Court a final list of all persons or entities who have requested exclusion from the Class, and shall certify that copies of all requests for exclusion received by the Claims Administrator have been provided to Defendants' Counsel, at least two (2) days before the Final Approval Hearing.

## PRELIMINARY APPROVAL OF THE SETTLEMENT

41.     Promptly after execution of this Settlement, Lead Plaintiffs, by and through Lead Counsel, with Defendants' Counsel's consent, shall submit the Settlement together with its exhibits to the Court and shall move for entry of the Preliminary Approval Order, among other things, preliminarily approving the Settlement, approving the contents and method of distribution of the Notice and Summary Notice, approving the contents of the Proof of Claim Form, and setting a date for the Final Approval Hearing. To permit compliance with the settlement notice requirements of the Class Action Fairness Act, the Final Approval Hearing shall take place no earlier than 100 days after the Court enters the Preliminary Approval Order.

## JUDGMENT APPROVING THE SETTLEMENT

42.     Lead Plaintiffs, by and through Lead Counsel, with Defendants' Counsel's consent, shall request that the Court, if it approves the Settlement following the Final Approval Hearing, enter the Judgment. The Settlement is expressly conditioned upon, among other things, the entry of a Judgment substantially in the form attached hereto as Exhibit B and in all respects consistent with this Settlement.

## EFFECTIVE DATE OF THE SETTLEMENT, AND TERMINATION

43.     The Effective Date of the Settlement shall be the first date by which all of the following have occurred:

(a)     The Court has entered the Preliminary Approval Order;

(b)     ITT shall have caused the Settlement Amount to be deposited into the Escrow Account;

(c)     Defendants have not exercised their option to terminate the Settlement pursuant to ¶ 45 herein;

(d)      The Court has approved the Settlement following notice to the Class and the Final Approval Hearing in accordance with Rule 23 of the Federal Rules of Civil Procedure, and has entered the Judgment; and

(e)      The Judgment has become Final, as defined in ¶ 1(o) herein.

44.      Defendants and Lead Plaintiffs each shall have the right to terminate the Settlement by providing written notice of their election to do so to the other within twenty (20) days of the date on which: (a) the Court refuses to approve this Stipulation and Agreement of Settlement, or the terms contained herein, in any material respect; (b) the Court declines to enter the Preliminary Approval Order in any material respect; (c) the Court refuses to grant final approval of this Settlement or any material part of it; (d) the Court declines to enter the Judgment in any material respect; (e) the Effective Date of the Settlement does not occur; or (f) the payment of the Settlement Amount is not satisfied in accordance with the terms herein. In addition, Defendants may also terminate the Settlement in accordance with ¶ 45. The foregoing list is not intended to limit or impair the Settling Parties' rights under the law of contracts of the State of New York with respect to any breach of this Settlement (except as provided in ¶ 2 hereof). In the event the Settlement is terminated, the provisions of ¶¶ 12, 13, 14, 17, 28, 30, 46, 47, 51, 53, 54, 63, 64, 65, 66, and 67 shall survive termination. If the Settlement does not become Final or is terminated for any reason, within ten (10) days of termination, the Settlement Fund shall be returned to Defendants pursuant to written instructions from Defendants' Counsel, together with any interest earned on the Settlement Fund, less any Notice and Administration Costs actually and reasonably incurred.

45.      Defendants shall have the option to terminate the Settlement in the event that the aggregate number of total shares of ITT common stock purchased or acquired during the Class

Period by persons or entities who would otherwise be entitled to participate in the Settlement as Class Members, but who timely and validly request exclusion in accordance with the terms of this Settlement, equals or exceeds the threshold (the "Opt-Out Threshold") as calculated pursuant to a separate agreement (the "Supplemental Agreement") executed between Lead Counsel and Defendants' Counsel, which is incorporated by reference into this Settlement. The Opt-Out Threshold may be disclosed *in camera* to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the confidentiality of the Opt-Out Threshold.

46.     Except as otherwise provided herein, in the event the Settlement is terminated, the Settling Parties reserve their rights to proceed in all respects as if this Settlement had not been entered into and without any prejudice in any way from the negotiation, fact or terms of this Settlement. If the Settlement is terminated, the Settling Parties shall be restored to their respective positions in the Action as of June 16, 2015, the date this Action was stayed pending settlement discussions. Any order certifying a class in this Action for purposes of this Settlement prior to termination shall be null and void and a class shall not be considered certified for purposes of further litigation. Defendants will be provided a full opportunity to oppose Lead Plaintiffs' Class Certification Motion. The Settling Parties will in good faith propose a new case schedule for the completion of class certification briefing, discovery and other pretrial proceedings and for the trial of this Action.

## <u>NO ADMISSION OF WRONGDOING</u>

47.     Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Settlement, including its exhibits, all

negotiations, discussions, drafts and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement:

(a)      shall not be offered or received against the Released Parties, Lead Plaintiffs or the other Class Members as evidence of, or be deemed to be evidence of, any presumption, concession or admission by any of the Released Parties or by Lead Plaintiffs or the other Class Members with respect to the truth of any fact alleged by Lead Plaintiffs or the validity, or lack thereof, of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of the Released Parties;

(b)      shall not be offered or received against the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Released Party, or against Lead Plaintiffs or any of the other Class Members as evidence of any infirmity in the claims of Lead Plaintiffs and the other Class Members;

(c)      shall not be offered or received against the Released Parties, Lead Plaintiffs or the other Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Released Parties, Lead Plaintiffs or the other Class Members, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement; provided, however, that if this Settlement is approved by the Court, the Released Parties may refer to the Settlement and the Judgment in any action that may be brought against them to effectuate the liability protection granted them hereunder, including, without limitation, to support a defense or

claim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or claim under U.S. federal or state law or foreign law;

(d)     shall not be construed against the Released Parties, Defendants' Counsel, Lead Counsel or Lead Plaintiffs or the other Class Members as an admission or concession that the consideration to be paid hereunder represents the amount which could be or would have been recovered after trial or that any damages potentially recoverable under the Complaint would have exceeded or would have been less than the Settlement Amount; and

(e)     shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiffs or the other Class Members or any of them that any of their claims are without merit;

(f)     shall not be construed as or received in evidence as an admission, concession or presumption against the Released Parties that class certification is appropriate in this Action, except for purposes of this Settlement.

48.     Defendants have denied, and continue to deny, each and every claim and contention alleged in the Complaint and affirm that they have acted properly and lawfully at all times. Further, Defendants have denied expressly, and continue to deny, all allegations of wrongdoing, fault, liability, or damage against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action and deny that they ever engaged in or committed any fraud, wrongdoing, improper conduct, violation of law, or breach of duty whatsoever. Defendants also have denied, and continue to deny, *inter alia*, that there were any materially false or misleading statements or material omissions in any of Defendants' public statements, including their filings with the SEC, and that Lead Plaintiffs or

34

any Class Member has suffered damage or harm of any kind. Had the terms of this Settlement not been reached, Defendants would have continued to contest vigorously Lead Plaintiffs' allegations, and Defendants maintain that they had and have meritorious defenses to all claims alleged in the Action.

## MISCELLANEOUS PROVISIONS

49.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

50.     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Lead Plaintiffs or any other Class Members in the Action or with respect to all Released Claims. Except in the event of termination of this Settlement, Lead Plaintiffs and Defendants agree not to assert under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the Action was brought or defended in bad faith or without a reasonable basis. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Settling Parties and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with their respective experienced legal counsel.

51.     While maintaining their positions that the claims and defenses asserted in the Action are meritorious, Lead Plaintiffs and Lead Counsel, on the one hand, and Defendants and Defendants' Counsel, on the other, shall not make any public statements or statements to the media (whether or not for attribution) that disparage the other's business, conduct, or reputation or that of their counsel based on the subject matter of the Action.

52.     This Settlement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their successors-in-interest. After

prior notice to the Court, but without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any provisions of this Settlement.

53.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

54.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the truth or validity of any Released Claim, any allegations or claims made in the Action, or of any purported wrongdoing or liability of any of the Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, negligence, fault, omission, or wrongdoing as against any of the Released Parties in any civil, criminal or administrative proceeding in any court, any arbitration proceeding or any administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate or enforce the Settlement or the Judgment.

55.    The waiver by one party of any breach of this Settlement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement. The provisions of this Settlement may not be waived except by a writing signed by the affected party, or counsel for that party.

56.    This Settlement, including its exhibits and the Supplemental Agreement, which are material parts thereof, constitute the entire agreement among the Settling Parties, and no representations, warranties or inducements have been made to any party concerning this Settlement, its exhibits, or the Supplemental Agreement, other than the representations, warranties and covenants contained and memorialized in such documents. It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with

respect to which this Settlement is entered into may turn out to be other than, or different from, the facts now known to each party or believed by such party to be true; each party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Settlement shall be in all respects effective and not subject to termination by reason of any such different facts or law.

57.    This Settlement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument.

58.    Lead Plaintiffs agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Settlement, and Defendants agree to provide such support as may be reasonably requested by Lead Plaintiffs or Lead Counsel.

59.    Each signatory to this Settlement represents that he or she has authority to sign this Settlement on behalf of Lead Plaintiffs or Defendants, as the case may be, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement to effectuate its terms. Lead Plaintiffs and Lead Counsel also represent and warrant that none of Lead Plaintiffs' claims or causes of action referred to herein, or that could have been alleged in the Action, has been assigned, encumbered, hypothecated, conveyed, transferred, or in any manner granted or given, in whole or in part, to any other person or entity.

60.    This Settlement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto, including all Released Parties, and any corporation, partnership, or other entity into or with which any party hereto may merge, consolidate or reorganize.

61.     Any notice required by this Settlement shall be submitted by overnight mail and e-mail to each of the signatories below.

62.     The administration, consummation and enforcement of the Settlement shall be under the authority of the Court and the Settling Parties intend that the Court retain jurisdiction for the purpose of, *inter alia*, entering orders, providing for awards of attorneys' fees and Litigation Expenses, and enforcing the terms of the Settlement.

63.     The construction, interpretation, operation, effect and validity of this Settlement, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of New York without regard to that State's choice-of-law principles, except to the extent that federal law requires that federal law govern.

64.     To the extent there are disputes regarding the interpretation of any term of this Settlement, the Settling Parties will attempt to resolve any such dispute in good faith. If the Settling Parties fail to resolve the dispute, or in the event of a breach of the terms of the Settlement, any non-breaching Settling Party shall be entitled to bring an action seeking to enforce those provisions, and the exclusive forum for any such action shall be this Court. The prevailing Settling Party in any such action to enforce these provisions of the Settlement shall be entitled to recover their reasonable attorneys' fees and expenses incurred in connection with remedying the breach.

65.     This Settlement shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Settlement.

66.     Nothing in this Settlement, or the negotiations or proceedings relating to the Settlement, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege, the joint defense privilege, the accountants' privilege, or work product immunity; further, all information and documents transmitted between Lead Plaintiffs' Counsel and Defendants' Counsel in connection with this Settlement shall be kept confidential and shall be inadmissible in any proceeding in any U.S. federal or state court or other tribunal or otherwise, in accordance with Rule 408 of the Federal Rules of Evidence as if such Rule applied in all respects in any such proceeding or forum.

67.     Except where specifically noted, all time periods set forth in this Settlement will be computed in calendar days and pursuant to the terms of Rule 6(a) of the Federal Rules of Civil Procedure.

EXECUTION COPY

IN WITNESS WHEREOF, the Settling Parties hereto have caused this Settlement to be

executed, by their duly authorized attorneys, as of November 2, 2015.

COHEN MILSTEIN SELLERS & TOLL PLLC

*Carol V. Gilden*

Carol V. Gilden
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

Kenneth M. Rehns
88 Pine Street, 14th Fl.
New York, New York 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
krehns@cohenmilstein.com

S. Douglas Bunch
Elizabeth Aniskevich
Times Wang
1100 New York Avenue, N.W.
Suite 500 West
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
dbunch@cohenmilstein.com
eaniskevich@cohenmilstein.com
twang@cohenmilstein.com

*Attorneys for Lead Plaintiffs and the Class*

GIBSON, DUNN & CRUTCHER LLP

Jennifer L. Conn
Brad Schoenfeldt
200 Park Avenue, 48th Floor
New York, NY 10166
Tel.: (212) 351-4000
Fax: (212) 351-4035
jconn@gibsondunn.com
bschoenfeldt@gibsondunn.com

Wayne W. Smith
3161 Michelson Drive
Irvine, CA 92612-4412
Tel.: (949) 451-3800
Fax: (949) 451-4220
wsmith@gibsondunn.com

*Attorneys for Defendants*