**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ITT EDUCATIONAL SERVICES, INC. SECURITIES LITIGATION | Civil Action No. 13-cv-1620-JPO ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND APPROVAL OF THE PLAN OF ALLOCATION**

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 4

I.      THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ............................ 4

     A.      The Settlement Was Reached After Arm's-Length Negotiations with the
         Assistance of an Experienced Mediator and Is Procedurally Fair ............................. 5

     B.      Application of the *Grinnell* Factors Supports Approval of the Settlement as
         Fair, Reasonable and Adequate ................................................................................. 6

          1.      The Complexity, Expense and Likely Duration of the Litigation
              Support Approval of the Settlement ................................................................ 6

          2.      The Reaction of the Class Supports Approval of the Settlement ................... 7

          3.      The Stage of the Proceedings and the Amount of Discovery
              Completed Support Approval of the Settlement ............................................. 8

          4.      The Risks of Establishing Liability and Damages Support Approval
              of the Settlement ............................................................................................. 9

          5.      The Ability of Defendants to Withstand a Greater Judgment Supports
              Approval of the Settlement .......................................................................... 10

          6.      The Range of Reasonableness of the Settlement Fund, in Light of the
              Best Possible Recovery and All of the Attendant Risks of Litigation,
              Supports Approval of the Settlement .......................................................... 11

II.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD
     BE APPROVED ................................................................................................................ 12

III.    NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23
     AND DUE PROCESS ....................................................................................................... 14

IV.    THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND
     THE CLASS SHOULD BE CERTIFIED .......................................................................... 15

     A.      Rule 23(a) ............................................................................................................... 15

     B.      Rule 23(b)(3) .......................................................................................................... 16

1.      Predominance ....................................................................................... 16

2.      A Class Action Is Superior to Other Available Methods of
        Adjudication ........................................................................................ 18

CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008)....................................................................................16

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................10, 13

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012) .......................................................................................15

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .....................................................................................15, 16, 17

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
    133 S. Ct. 1184 (2013) ...............................................................................................17

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ...................................................................................................17

*In re Beef Indus. Antitrust Litig.*,
    607 F.2d 167 (5th Cir. 1979) .....................................................................................15

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ...........................................................................................5

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) .............................................................................17

*Chavarria v. N.Y. Airport Serv., LLC*,
    875 F. Supp. 2d 164 (E.D.N.Y. 2012)............................................................... *passim*

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)...................................................................................4, 11

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)......................................................................................15

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)......................................................................5, 6, 9, 11

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011)................................................................................9

*In re Gilat Satellite Networks, Ltd.*,
    No CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007)....................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) ....................................................................................17

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012)..............................................................6, 12

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) .....................................................13

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ..............................................................7

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) .....................................................13

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997).......................................................................16

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................15

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010).............................................................5, 13

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)........................................................................6

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010).....................................................10

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)........................................................................5

*Padro v. Astrue*,
    No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013).................*passim*

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997)..............................................................13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995)..............................................................15

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014)..............................................................18

v

*Silberblatt v. Morgan Stanley*,
    524 F. Supp. 2d 425 (S.D.N.Y. 2007) ................................................................... 12

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    546 F.3d 196 (2d Cir. 2008) ................................................................................ 17

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
    283 F.R.D. 199 (S.D.N.Y. 2012) ......................................................................... 16

*UFCW Local 1776 v. Eli Lilly and Co.*,
    620 F.3d 121 (2d Cir. 2010) ................................................................................ 17

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .................... 12

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................................ 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................... 4, 5, 6, 14

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) .................... 9

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1983) .................................................................................. 15

**STATUTES**

Private Securities Litigation Reform Act of 1995 ............................................... 12, 14

Securities Exchange Act of 1934 ................................................................................. 1

**OTHER AUTHORITIES**

Rule 23 of the Federal Rules of Civil Procedure ...................................... *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Plumbers and Pipefitters National Pension Fund ("Plumbers and Pipefitters") and Metropolitan Water Reclamation District Retirement Fund ("Metropolitan Water") (collectively, "Lead Plaintiffs") respectfully submit this memorandum of law in support of their motion for final approval of the proposed settlement of this securities class action (the "Action") against defendants ITT Educational Services, Inc. ("ITT" or the "Company"), Daniel M. Fitzpatrick, and Kevin M. Modany (collectively, "Defendants"), and approval of the proposed Plan of Allocation.[1]

## PRELIMINARY STATEMENT

This securities class action asserts claims under the Securities Exchange Act of 1934 concerning allegations that Defendants misled investors by misrepresenting the Company's liabilities under certain risk-sharing agreements ("RSAs") that the Company had entered into in connection with certain third-party, private student loan programs for ITT students. Under the RSAs, the Company would be liable to the third parties if the Company's students were to default on their student loans received under those programs beyond a certain threshold. The Action asserted that Defendants knowingly or recklessly understated, or otherwise misrepresented, the extent of those liabilities, and that when the market learned the true extent of those liabilities, investors were harmed.

On November 2, 2015, the Parties filed a motion seeking preliminary approval of the proposed Settlement and approving Lead Plaintiffs' proposed form and manner of providing notice to potential Class Members. On November 23, 2015, the Court entered an Order providing, *inter alia,* for preliminary approval of the proposed Settlement, distribution of the proposed settlement Notice, and a date for a hearing on Lead Plaintiffs' motion for final approval of the proposed Settlement. Dkt. 83. This Memorandum discusses the approval of the Settlement and the Plan of

---

[1] The Court is respectfully referred to the accompanying Declaration of Carol V. Gilden in Support of Lead Plaintiffs' Motion for Final Approval of the Proposed Settlement and Approval of the Plan of Allocation, and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Gilden Decl.") for a detailed description of the case and the proposed Settlement. Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated November 2, 2015 (Dkt. 82).

Allocation. A separate Memorandum discusses Lead Counsel's request for an award of attorneys' fees, reimbursement of Lead Counsel's litigation expenses and reimbursement of Lead Plaintiffs' expenses.

The Settlement achieved – which provides for payment of $16,962,500.00 in cash plus interest – is an excellent result for the Class. The Settlement is the product of over two and a half years of hard-fought litigation and followed intensive arm's-length negotiations conducted under the auspices of the Honorable Daniel Weinstein (Ret.), a highly-respected mediator with substantial experience overseeing negotiations of complex securities class actions. *See* Gilden Decl., ¶¶ 4, 22; *see also generally* Gilden Decl. Ex. 5, Declaration of Daniel Weinstein ("Weinstein Decl."). Lead Plaintiffs and Lead Counsel believe that the Settlement is a very positive result for Class Members considering the risks of continued litigation, including in particular the risk that the Company's financial condition, and the competing demands placed on the Company and its insurance policies by other legal proceedings and other matters could impact the Company's ability to fund a substantial judgment against it, a result which is itself uncertain to occur. Thus, it is Lead Plaintiffs' and Lead Counsel's informed opinion that, in light of the foregoing risks, the Settlement is an exceptional result for the Class.

The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated November 2, 2015 (the "Settlement"), which was previously submitted to the Court (Dkt. 82). In the Court's Order Preliminarily Approving Settlement, Approving Notice to the Class, and Scheduling Final Approval Hearing, entered November 23, 2015 (Dkt. 83) ("Preliminary Approval Order"), the Court preliminarily approved the Settlement, preliminarily certified a Class consisting of all who purchased or otherwise acquired the common stock of ITT between April 24, 2008 and February 25, 2013, both dates inclusive, and directed that notice of the Settlement be provided to potential Class Members. The $16,962,500.00 Settlement Amount was deposited into an escrow account by December 15, 2015, and has been invested for the benefit of the Class pursuant to the terms of the Settlement. If and when the Settlement becomes final, the Settlement Amount will be dispersed in accordance with the proposed Plan of Allocation.

2

The parties reached this Settlement only after vigorous litigation of the case, at a time when Lead Plaintiffs and Lead Counsel had developed a thorough understanding of the strengths and weaknesses of the claims and defenses in the Action. The $16,962,500.00 Settlement was achieved after an exhaustive investigation, which included interviews conducted with confidential witnesses and the review and analysis of the Company's public statements, SEC filings and litigation history, news articles, analyst reports, industry reports, the Senate report on its investigation of the for-profit education industry and accounting literature, which investigation resulted in two highly-detailed amended complaints; briefing and defeating, in large part, Defendants' motion to dismiss; filing a motion for certification of the Class; and the completion of a substantial amount of fact discovery (encompassing the review of more than two million pages of documents). In addition, the Settlement followed the exchange of mediation briefs and extensive discussions with the mediator, which helped further illuminate the strengths and weaknesses of the claims and Defendants' defenses. *See generally* Weinstein Decl., ¶¶ 8-12.

In reaching the Settlement, Lead Plaintiffs and Lead Counsel considered the numerous risks associated with continuing the litigation, including the risks of recovering less than the Settlement Amount after substantial delay or of no recovery at all. Although Lead Plaintiffs had already overcome Defendants' motion to dismiss in part, Lead Plaintiffs' motion to certify the Class was still pending at the time of settlement, and there were numerous additional hurdles to overcome, including expert discovery, summary judgment, and establishing liability and proving damages at trial, not to mention surviving the appeals process.

Even if Lead Plaintiffs prevailed at trial, Defendants would still have the opportunity to persuade the finder of fact that the damages should be reduced or eliminated because a portion – or even all – of the losses were attributable to causes other than the alleged misstatements and omissions.

Perhaps most significantly, however, was the fact that at the time of the Settlement, ITT was under tremendous pressure as a result of numerous private and regulatory legal actions against the

Company and given the corresponding drain on its insurance policies as a result of defending these actions.

The $16,962,500.00 Settlement achieved by Lead Plaintiffs and Lead Counsel avoids all these risks and uncertainties and provides an immediate and substantial financial benefit for the Class. In light of the significant obstacles to recovery, and the substantial time and expense that continued litigation would require, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement is an outstanding result for the Class, and provides a fair and reasonable resolution of the claims against Defendants in this Action.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Under Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement should be approved if the Court finds it "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion.") (internal citations omitted). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

In this Circuit, public policy favors the settlement of disputed claims among private litigants, particularly in complex class actions such as this one. *See Wal-Mart*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation omitted); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 171 (E.D.N.Y. 2012) ("Settlement approval is within the Court's discretion, which 'should be exercised in light of the general judicial policy favoring settlement.'") (citation omitted). Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would

undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Because "'[t]he very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation,' the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial.'" *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972) (citation omitted); *see also Chavarria*, 875 F. Supp. 2d at 172 (a court may not "conduct a mini-trial of the merits of the action"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("In deciding whether to approve a settlement, a court 'should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another.'") (citation omitted).

### A.     The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator and Is Procedurally Fair

A strong initial presumption of fairness attaches to a proposed settlement reached as a result of arm's-length negotiations between experienced counsel after meaningful discovery. *See Wal-Mart*, 396 F.3d at 116; *Padro v. Astrue*, No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("Where the integrity of the negotiation process is preserved, a strong initial presumption of fairness attaches to the proposed settlement."). The Settlement here is entitled to this strong presumption of fairness because all parties in the Action are represented by counsel experienced in litigating these types of claims, Gilden Decl., ¶¶ 47, 48; the Settlement was the result of arm's-length negotiations before an experienced mediator, *id.*, ¶¶ 4, 22; *see also generally* Weinstein Decl., ¶¶ 8-12; and the parties understood the strengths and weaknesses of the claims and defenses before settlement was reached. *Id.*, ¶¶ 3, 24-27. As described above and in more detail in the Gilden Declaration, over two and a half years of hard-fought litigation, Lead Counsel largely defeated a motion to dismiss and moved for class certification, while simultaneously conducting class and fact discovery, which consisted of analyzing more than two million pages of documents obtained from Defendants and non-parties and defending or attending seven depositions, primarily

related to class-certification issues. *Id.*, ¶¶ 3, 19, 21. Finally, experts were consulted for multiple aspects of the case, including the accounting issues at the heart of the alleged fraud, market efficiency and class certification, damages, as well as the Company's financial condition, giving Lead Counsel and Lead Plaintiffs additional insight into the strengths and weaknesses of the case.

**B.    Application of the *Grinnell* Factors Supports Approval of the Settlement as Fair, Reasonable and Adequate**

The Settlement is also substantively fair, reasonable and adequate and in the best interests of the Class. The standards governing approval of class action settlements are well-established in this Circuit. In *Grinnell*, the Second Circuit held that the following were factors to be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (internal citations omitted); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009); *Wal-Mart*, 396 F.3d at 117. "A court need not find that every factor militates in favor of a finding of fairness; rather, a court considers the totality of these factors in light of the particular circumstances." *Padro*, 2013 WL 5719076, at *4 (citation omitted). Here, the Settlement easily satisfies the criteria set forth in *Grinnell*.

**1.    The Complexity, Expense and Likely Duration of the Litigation Support Approval of the Settlement**

"[I]n evaluating the settlement of a securities class action, federal courts, including [courts in this District] have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (citation omitted). Indeed, courts recognize that "[s]ecurities class actions are generally complex and expensive to prosecute." *In re Gilat Satellite Networks, Ltd.*, No CV-02-1510, 2007 WL 1191048, at *10

(E.D.N.Y. Apr. 19, 2007). Accordingly, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Lead Plaintiffs would have had to overcome numerous hurdles in order to achieve a litigated verdict in this Action. Even though a substantial amount of fact discovery was complete at the time of settlement, there still remained: completing class-certification briefing; merits depositions; merits-related expert discovery; summary judgment; and *Daubert* motions. Assuming Lead Plaintiffs were able to get past all of these obstacles, the Action would have culminated in a jury trial. Whatever the outcome at trial, it is virtually certain that an appeal would be taken. All of the foregoing would have posed considerable expense and risk and would have delayed the Class' recovery for several years – assuming that Lead Plaintiffs were ultimately successful on their claims.

Further, it cannot be disputed that achieving a litigated verdict in this Action was far from certain. Defendants could and would have interposed several defenses to liability and damages, such as scienter, loss causation, materiality, etc., adding significantly to the complexity of the case. Gilden Decl., ¶ 26.

In contrast to this complex, lengthy, and uncertain litigation, the Settlement here provides an immediate, significant and certain recovery of $16,962,500.00 for members of the Class. Accordingly, this factor supports approval of the Settlement.

### 2. *The Reaction of the Class Supports Approval of the Settlement*

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *See, e.g., Chavarria*, 875 F. Supp. 2d at 173 (citation omitted); *see also Padro*, 2013 WL 5719076, at *5 ("The fact that a small number of objections were received weighs in favor of settlement," as does "the positive reaction of the class, particularly in light of its size."). Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq Class Action & Claims Solutions, Inc., began mailing copies

of the Notice and Claim Form to potential Class Members and nominees on December 14, 2015. *See* Declaration of Ryan Kao Regarding Mailing of the Notice and Proof of Claim; Publication of the Summary Notice; and Report on Requests for Exclusion Received to Date ("Kao Decl."), attached as Exhibit 3 to the Gilden Decl., ¶¶ 9-10. As of today, 179,274 copies of the Notice and Claim Form had been disseminated to potential Class Members and their nominees. *Id.*, ¶ 12. In addition, a Summary Notice was published in the *Wall Street Journal* and disseminated on *PR Newswire* on December 14, 2015. *Id.*, ¶ 14.[2] And, as of today, Lead Counsel has received no objections to the Settlement or the Plan of Allocation and only one Class Member has requested to be excluded from the Class.[3] Kao Decl., ¶¶ 22-23. This overwhelming support of the Settlement by the Class favors final approval.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Settlement

At the time of settlement, nearly three years after commencement of the lawsuit, a substantial amount of fact discovery, including the review of over two million pages of documents, had been completed. Moreover, class certification briefing and discovery was well underway – Lead Plaintiffs had filed their class certification motion, supported by an expert report, and seven depositions, primarily related to class-certification issues, had been taken. Moreover, experts on damages and merits issues, including the accounting issues at the heart of the alleged fraud, had been extensively consulted. Accordingly, Lead Plaintiffs and Lead Counsel had a firm grasp of the strengths and weaknesses of the case when negotiating and evaluating the proposed Settlement.

Thus, at the time the Settlement was reached, Lead Plaintiffs and Lead Counsel "obtained sufficient information to be able to intelligently assess the strengths and weaknesses of the case and appraise settlement proposals." *Padro*, 2013 WL 5719076, at *6. As a result, Lead Plaintiffs and Lead Counsel have a well-informed basis for their belief that the Settlement is a favorable

---

[2] The Notice set out the essential terms of the Settlement and informed potential Class Members of, among other things, their right to opt out of the Class or object to any aspect of the Settlement, as well as the procedure for submitting Claim Forms.

[3] The deadline for requesting exclusion from the Class and for objections is February 16, 2016. As provided in the Preliminary Approval Order, Lead Plaintiff will file reply papers no later than March 1, 2016, addressing any objections and requests for exclusion that may be received after this brief is filed.

resolution of the Action for the Class and this factor strongly supports approval of the Settlement. *See, e.g.*, *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 161 (S.D.N.Y. 2011) (this factor supported settlement where the action had proceeded through substantial document production, five depositions, "a round of mediation submissions and sessions, and expert consultations on damages and causation," and, thus, "the parties were able to make an intelligent appraisal of the value of the case"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) (settlement approved where the parties "have a clear view of the strengths and weaknesses of their cases").

### 4. *The Risks of Establishing Liability and Damages Support Approval of the Settlement*

*Grinnell* holds that, in assessing the fairness, reasonableness and adequacy of a settlement, courts should consider such factors as the "risks of establishing liability [and] … the risks of establishing damages." 495 F.2d at 463. Although Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit, they also recognize that there were significant risks as to whether they would ultimately be able to prove liability and establish damages on their claims in the Action, as well as with respect to the amount of damages that Lead Plaintiffs could establish. These risks included challenges in proving that there were misstatements and omissions in Defendants' public statements. Further risks included, for example, overcoming Defendants' arguments that some or all of the declines in the price of ITT stock were caused by factors unrelated to the alleged fraud.

*Risks of Establishing Liability.* To avoid an adverse summary judgment ruling and prevail at trial, Lead Plaintiffs would need to present evidence that Defendants made false and misleading statements about their liabilities under the RSAs, and that Defendants had the requisite scienter when those statements were made. Defendants have argued and would continue to argue that the alleged misstatements were not false when they were made and that Defendants had no reason to believe they were false when they were made.

*Risks of Establishing Damages.* Defendants were also likely to vigorously challenge Lead Plaintiffs' eventual damages calculations by arguing that the price declines of ITT stock on the alleged disclosure dates were the result of information unrelated to the alleged fraud. Thus, Lead Plaintiffs would have to show, through expert reports and testimony, that the price declines were directly related to the alleged misstatements. Although Lead Plaintiffs expected to present persuasive expert testimony establishing causation and damages for all the alleged disclosures, Defendants likely would have been able to present experts who would support their position. Defendants, moreover, undoubtedly would assert *Daubert* challenges to each of Lead Plaintiffs' experts. Assuming that Lead Plaintiffs prevailed in such challenges, Lead Plaintiffs could not be certain which experts' views would be credited by the jury and who would prevail at trial in this "battle of the experts." *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants.").

In light of all these risks, the proposed Settlement is fair, reasonable and adequate.

### 5. The Ability of Defendants to Withstand a Greater Judgment Supports Approval of the Settlement

Here, there was significant financial risk that neither ITT nor the Individual Defendants would be able to pay a greater amount in the future. At the time of the settlement, ITT was the target of several private and regulatory legal actions, and its insurance policies were being depleted. Moreover, the Company had limitations on its available cash resources, and the Individual Defendants did not have assets that would alter the analysis. Thus, the possibility that insurance proceeds would no longer be available and that the Company would have insufficient funds to pay a greater judgment later was significant and provided additional support for this settlement now. Moreover, even if ITT or the Individual Defendants could potentially pay a larger settlement, this

does not weigh against approval of the settlement. "[D]efendants' ability to withstand a higher judgment … standing alone, does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86.

> **6.    The Range of Reasonableness of the Settlement Fund, in Light of the Best Possible Recovery and All of the Attendant Risks of Litigation, Supports Approval of the Settlement**

The last two factors that courts consider are the range of reasonableness of the settlement fund in light of (i) the best possible recovery and (ii) litigation risks. The issue for the court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case. A court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462 (citation omitted). "The determination of a reasonable settlement 'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'" *Chavarria*, 875 F. Supp. 2d at 174 (citation omitted). Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. "In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Chavarria*, 875 F. Supp. 2d at 175 (citation omitted).

The Settlement here is well within the range of reasonableness in light of the risks presented by this litigation. Although Lead Plaintiffs believed that the damages that might be recoverable in this case were significant, there were reasonable arguments with respect to those damages (as well as liability in general) that, if successful, could have greatly reduced or eliminated altogether those damages. Lead Plaintiffs and Lead Counsel have concluded that, in light of these risks, the Settlement, which provides an immediate and substantial benefit to Class Members, outweighs the benefits of continued litigation. Gilden Decl., ¶¶ 23, 27. A court may not "substitute its judgment for that of the parties who negotiated the settlement." *Chavarria*, 875 F. Supp. 2d at 172.

Lead Counsel is intimately familiar with the facts in the case and has extensive experience prosecuting comparable securities class actions. In these circumstances, Lead Counsel's opinion that the Settlement is reasonable is entitled to "great weight." *Padro*, 2013 WL 5719076, at *7 ("Where … settlement has been reached after an arms-length negotiation, 'great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.'") (citation omitted).

The recommendations of Lead Plaintiff Plumbers and Pipefitters and Lead Plaintiff Metropolitan Water also support the fairness of the Settlement. Representatives of Lead Plaintiffs took an active role in supervising this litigation, as envisioned by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Gilden Decl., Ex. 1, Declaration of William T. Sweeney, Jr. ("Sweeney Decl."), ¶ 6; Gilden Decl., Ex. 2, Declaration of Joseph F. Kennedy ("Kennedy Decl."), ¶ 6, and Lead Plaintiffs strongly endorse the settlement. Sweeney Decl., ¶¶ 7-9; Kennedy Decl., ¶¶ 7-9. A settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor … is 'entitled to an even greater presumption of reasonableness.'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (citation omitted).

In sum, a review of the *Grinnell* factors, including the complexity, expense and delay of further litigation, discovery completed and the stage of the proceedings, and the substantial risks of the Action, strongly supports a finding that the Settlement is fair, reasonable and adequate.

## II.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate. *See IMAX*, 283 F.R.D. at 192; *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 430 (S.D.N.Y. 2007) ("Exactitude is not required in allocating consideration to the class, provided that the overall result is fair, reasonable and adequate."). Generally, "[a] plan of allocation that reimburses class members based on the extent of their injuries is [] reasonable." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Plans of allocation,

however, need not be tailored to fit each and every class member with "mathematical precision." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997). Rather, broad classifications may be used in order to promote "[e]fficiency, ease of administration and conservation" of the settlement fund. *Id.* at 133-35. A plan of allocation is fair and reasonable as long as it has a "reasonable, rational basis." *Maley*, 186 F. Supp. 2d at 367; *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009).

In determining the fairness, reasonableness and adequacy of a proposed allocation plan, courts give considerable weight to the opinion of experienced counsel. *See In re Marsh*, 265 F.R.D. at 145 ("In determining whether a plan of allocation is fair, courts give substantial weight to the opinions of experienced counsel."); *In re Am. Bank*, 127 F. Supp. 2d at 429-30 ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel …. As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

Here, Lead Counsel developed the Plan of Allocation in consultation with Lead Plaintiffs' damages expert and believes that the Plan of Allocation provides a fair and reasonable method to equitably distribute the Net Settlement Fund among eligible Class Members. Gilden Decl., ¶ 8.

If approved, the Plan of Allocation will govern how the Net Settlement Fund will be distributed among Class Members who submit timely and valid Proofs of Claim to the Claims Administrator, in accordance with the requirements established by the Court, and who are approved for payment ("Authorized Claimants"). While the Plan of Allocation is not a formal damages study, it reflects Lead Plaintiffs' damages expert's analysis of the alleged artificial inflation of ITT stock during the Class Period.

Pursuant to the Plan of Allocation, a "Recognized Loss" amount will be calculated for each share of ITT common stock purchased or otherwise acquired during the Class Period (*i.e.*, the period between April 24, 2008 and February 25, 2013) that is listed in the Proof of Claim submitted and for which adequate documentation is provided. A Class Member's Recognized Loss will depend on, among other things, wand when the shares were sold during the Class Period in relation

13

to the disclosure dates alleged in this Action, whether they were sold after the Class Period during the statutory 90-day look-back period and the value of the shares at which they were sold or held.

To date, there have been no objections to the Plan of Allocation. Gilden Decl., ¶ 54; Kao Decl., ¶ 23. Accordingly, for all of the reasons set forth herein and in the Gilden Declaration, the Plan of Allocation is fair and reasonable, and should be approved.

### III.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The Notice provided to the Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable." Fed. R. Civ. P. 23(e)(1). Notice of a settlement is reasonable if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (citation omitted).

Both the substance of the Notice and the method of its dissemination to potential Class Members satisfied these standards. The Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7). As noted above, in accordance with the Court's Preliminary Approval Order, as of today, the Claims Administrator has disseminated 179,274 copies of the Notice to potential Class Members and their nominees. Kao Decl., ¶ 12. In addition, the Claims Administrator caused the Summary Notice to be published in the *Wall Street Journal* and disseminated on *PR Newswire* and copies of the Notice and Claim Form were made available on a dedicated website maintained by the Claims Administrator and on Lead Counsel's website.  Kao Decl., ¶¶ 14, 19; Gilden Decl., ¶ 54. To date, the ITT Settlement website has received 456 hits. Kao Decl., ¶ 20.

This combination of individual mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, and set forth on Internet websites, was "the best notice … practicable under the circumstances" and

14

satisfies the requirements of due process and Rule 23. Fed. R. Civ. P. 23(c)(2)(B). *See, e.g., Padro*, 2013 WL 5719076, at *3 ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.") (citation omitted).

## IV.    THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED

Lead Plaintiffs also respectfully request that the Class be finally certified for the purposes of settlement. The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238-39 (2d Cir. 2012); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1983); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *Id.* (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems … is not a consideration when settlement-only certification is requested.").

Here, those requirements are easily met.

### A.    Rule 23(a)

15

**Numerosity.** During the Class Period, ITT had an average of more than 31 million shares outstanding, *see* Declaration of Carol V. Gilden in Support of Lead Plaintiffs' Motion for Class Certification, Exhibit 1 (Report of Michael L. Hartzmark) (Dkt. 66-1) ("Hartzmark Report"), ¶¶ 87-88; *see also* Hartzmark Report, Exhibit VII, satisfying numerosity. *See, e.g., In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 275 (S.D.N.Y. 2008).

**Commonality.** This is satisfied here because common questions include whether Defendants made material misrepresentations or omissions with scienter. *See, e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (requirement met "if plaintiffs' grievances share a common question of law or of fact").

**Typicality.** This is satisfied here because each Class Member's claims arise from the same "course of events," namely Defendants' alleged misstatements and omissions, and each Class Member will make "similar legal arguments to prove the defendant's liability." *See Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 207 (S.D.N.Y. 2012) (footnotes and quotation omitted).

**Adequacy.** Adequacy is met because Lead Plaintiffs "possess the same interest and suffer[ed] the same injury as the Class Members," *Amchem*, 521 U.S. at 594-95, and suffer no non-speculative, disabling "fundamental" conflicts. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (citation omitted). Defendants' depositions of Lead Plaintiffs uncovered no evidence to suggest otherwise. Indeed, Lead Plaintiffs have vindicated Class Members' interests by engaging and overseeing the work of experienced class counsel, Cohen Milstein, and participating in discovery.

**B.  Rule 23(b)(3)**

Rule 23(b)(3) requires that "questions of law or fact common to Class Members predominate over any questions affecting only individual members" ("predominance"), and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority").  Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 623.

*1.    Predominance*

16

Predominance is "readily met in certain cases alleging … securities fraud." *Amchem*, 521 U.S. at 625. It is satisfied if the resolution of class claims and issues "can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010). Here, common questions of law and fact predominate because the proof for the claims of misrepresentation, materiality, reliance, and scienter, are all based on a common nucleus of evidence. Further, reliance is also subject to common proof under the presumption of reliance and the "fraud on the market" theory adopted in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and reaffirmed in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) (*Halliburton II*), if Lead Plaintiffs show the market is efficient. *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

Lead Plaintiffs have previously submitted evidence demonstrating that an efficient market did exist for ITT common stock throughout the Class Period. This includes evidence on the factors enumerated in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) (the "*Cammer* factors"), which are appropriate "analytical tool[s]" for evaluating efficiency. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 204 n.11, 210 (2d Cir. 2008):

- a cause and effect relationship between unexpected corporate events or financial releases and ITT prices, *see* Hartzmark Report, ¶¶ 29-62;

- a large average weekly trading volume of approximately 4.56 million shares, *see id.*, ¶¶ 67-69;

- the fact that ITT was eligible to file Form S-3 registration statements, reflecting the SEC's belief that the market for ITT operates efficiently, *see id.*, ¶¶ 79-81;

- the existence of a market maker in the form of the NYSE's Designated Market Maker, *see id.*, ¶¶ 76-78; and

- the fact that between 12 and 21 analysts followed ITT stock throughout the Class Period, *see id.*, ¶¶ 70-75.

*See Cammer*, 711 F. Supp. at 1286-87 (describing each of the above factors as "giv[ing] rise to an

inference that [a company] traded in an efficient market"). Because the market for ITT securities displayed the characteristics of an efficient market, Lead Plaintiffs are entitled to the fraud-on-the-market presumption, and accordingly, common questions regarding reliance predominate. Further, Lead Plaintiffs have previously demonstrated that damages also can be calculated using common proof. *See* Hartzmark Report, ¶¶ 117-21. Therefore, the predominance criteria are satisfied.

### 2. *A Class Action Is Superior to Other Available Methods of Adjudication*

"Courts in this district have regularly held that securities class actions are presumed to be superior to individual suits." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 142 (S.D.N.Y. 2014). That presumption applies here, and, in any event, the superiority factors are clearly met. Those are:

> (A) the class members' interests in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability … of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

This is a prototypical securities class action, with at least thousands of Class Members, and there is no reason to believe the presumption of superiority should not apply here. Accordingly, a class action is the superior method of adjudicating this Action.

Thus, the Class satisfies each of the requirements of Rule 23(a) and (b), and should be certified for purposes of the proposed Settlement.

### <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable and adequate.

Dated: February 2, 2016      Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By: */s/ Carol V. Gilden*
      Carol V. Gilden
      190 South LaSalle Street
      Suite 1705
      Chicago, IL 60603
      Tel.: (312) 357-0370
      Fax: (312) 357-0369
      cgilden@cohenmilstein.com

      S. Douglas Bunch
      Elizabeth Aniskevich
      Times Wang
      1100 New York Avenue, N.W.
      Suite 500 East
      Washington, D.C. 20005
      Tel.: (202) 408-4600
      Fax: (202) 408-4699
      dbunch@cohenmilstein.com
      eaniskevich@cohenmilstein.com
      twang@cohenmilstein.com

      Kenneth M. Rehns
      88 Pine Street, 14th Fl.
      New York, New York 10005
      Tel.: (212) 838-7797
      Fax: (212) 838-7745
      krehns@cohenmilstein.com

      *Attorneys for Lead Plaintiffs and the Class*

      **O'DONOGHUE & O'DONOGHUE LLP**

      James R. O'Connell
      Mark W. Kunst
      4748 Wisconsin Ave. N.W.
      Washington, D.C. 20016
      Tel.: (202) 362-0041
      Fax: (202) 362-2640

      *Additional Attorneys for Lead Plaintiff Plumbers and Pipefitters National Pension Fund*