**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ITT EDUCATIONAL SERVICES, INC. SECURITIES LITIGATION | Civil Action No. 13-cv-1620-JPO<br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND REIMBURSEMENT OF LEAD PLAINTIFFS' COSTS AND EXPENSES**

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION....................................................................................................... 1

II.   HISTORY AND BACKGROUND OF THE CASE................................................... 3

III.  ARGUMENT ............................................................................................................. 3

    A.    Lead Counsel Is Entitled To Attorneys' Fees From the Common Fund.................... 3

    B.    The Court Should Award a Reasonable Percentage of the Common Fund ............... 4

    C.    The Requested Fees Are Reasonable Under the Percentage Method ........................ 5

    D.    *Goldberger* Factors Confirm the Requested 27.5% Fee Is Fair and
        Reasonable ................................................................................................................ 6

        1.    Risks Assumed in Pursuing the Action....................................................... 6

        2.    The Time and Labor Expended.................................................................... 9

        3.    The Magnitude and Complexity of the Action Support the Fee ................. 10

        4.    The Quality of Representation Supports the Requested Fee........................ 10

        5.    Second Circuit Precedent Supports the 27.5% Fee as a Reasonable
            Percentage of the Total Recovery ............................................................... 11

        6.    Public Policy Considerations Support the Requested Fee ........................... 11

        7.    The Approval of Lead Plaintiffs, as Well as the Reaction of the Class
            to Date, Support the Requested Fee ............................................................ 12

    E.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request ........... 12

    F.    Lead Counsel's Expenses Are Reasonable and Should Be Approved..................... 14

    G.    Lead Plaintiffs Should Be Awarded Their Reasonable Costs  and Expenses
        Under 15 U.S.C. § 78u-4(a)(4)................................................................................ 14

IV.   CONCLUSION ........................................................................................................ 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-variant: small-caps;">ASES</span>

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)..................................10

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................................6

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04 Civ. 8141(DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ....................................15

*In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*,
    772 F.3d 125 (2d Cir. 2014) .........................................................................................14, 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) .........................................................................................................4

*In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..............................................................................13

*Blum v. Stenson*,
    465 U.S. 886 (1984) .........................................................................................................5

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .........................................................................................................3

*In re Bristol-Myers Squibb Sec. Litig.*,
    361 F. Supp. 2d 229 (S.D.NY. 2005) ................................................................................3

*In re China Sunergy Sec. Litig.*,
    No. 07 Civ. 7895(DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...................................14

*City of Providence v. Aeropostale, Inc.*,
    No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................6, 13

*In re Comverse Tech. Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354 (E.D.N.Y. June 23, 2010) ........................11

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...........................................................................................7

*In re Direxion Shares ETF Trust*,
    No. 09-cv-8011-KBF (S.D.N.Y. May 10, 2013) ..................................................................14

*In re Dynex Capital, Inc. Sec Litig.*,
   Civ. No. 05-1897 (S.D.N.Y. Mar. 13, 2012)..................................................................5

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)....................12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................... *passim*

*Fogarazzo v. Lehman Bros., Inc.*,
   No. 03 Civ. 5194(SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) .......................13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011)...................................................................................4

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004).................................................................................10

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ................................................................................. *passim*

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013).....................................................................................4

*In re Hi-Crush Partners L.P. Sec. Litig*,
   No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .......................5

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................4, 11

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012)........................................................................................8

*In re IMAX Sec. Litig.*,
   No. 06 Civ. 6128(NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012)........................5

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ......................................................................................................4

*In re Lucent Techs., Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004) .............................................................................12

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).........................................................................11

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010).............................................................................9, 10

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ................................................................................................5, 13

*In re Monster Worldwide, Inc. Sec. Litig.*,
    No. 07-cv-02237 (JSR), 2008 WL 9019514 (S.D.N.Y. Nov. 25, 2008)....................................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014)........................................................................6, 12

*In re Prudential Inc. Sec. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997)...................................................................................7

*In re Sadia S.A. Sec. Litig.*,
    No. 08 Civ. 9528(SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) .......................................5

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999)............................................................................................5

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999)......................................................................................9

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .................................6, 10

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)..............................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................................4

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989)...................................................................................13

*In re Veeco Instruments, Inc. Sec. Litig.*,
    No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)............................ *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................................................4

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ...........................................................................8, 15

## STATUTES

15 U.S.C. § 78u-4(a)(4)...............................................................................................1, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(h)................................................................................................................1

H.R. Conf. Rep. No. 104-369 (1995)......................................................................................12

Court-appointed Lead Counsel, Cohen Milstein Sellers & Toll PLLC ("Lead Counsel"), after litigating this action for more than two and a half years and achieving a recovery of $16,962,500 in cash for the benefit of the Class, respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 23(h), for an award of attorneys' fees in the amount of 27.5% of the Settlement Fund, after deduction of litigation expenses incurred by Lead Counsel, or $4,464,543.70 (with interest on such amount at the same rate as earned by the Settlement Fund).[1] Lead Counsel also seeks reimbursement of $727,795.65 in litigation expenses reasonably and necessarily incurred to prosecute and resolve the Action and $19,047.25 in Lead Plaintiffs' reasonable costs and expenses pursuant to 15 U.S.C. § 78u-4(a)(4). Notably, the foregoing amounts are *less* than the amounts stated in the Notice to Class Members, which, as of February 2, 2016, has not drawn any objections.

## I.    INTRODUCTION

The $16,962,500 Settlement obtained by Lead Counsel is an excellent result for the Class, considering the substantial risks and obstacles faced by Lead Plaintiffs if the litigation were to continue. Lead Counsel's effort in achieving this result has been without compensation of any kind and its fee and payment of expenses has been wholly contingent upon the result achieved. The requested fee is reasonable given the result obtained, is consistent with the fees awarded in similar actions in this Circuit and decisions throughout the country, and follows the appropriate method for compensating counsel. The requested fee has also been approved by Lead Plaintiffs Plumbers and Pipefitters National Pension Fund ("Plumbers and Pipefitters) and Metropolitan Water Reclamation District Retirement Fund ("Metropolitan Water"), sophisticated institutional investors.[2]

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated November 2, 2015 (Dkt. 82).

[2] *See* Declaration of William T. Sweeney, Jr. on behalf of Plumbers and Pipefitters National Pension Fund ("Sweeney Decl.") and Declaration of Joseph F. Kennedy on behalf of Metropolitan Water Reclamation District Retirement Fund ("Kennedy Decl."), attached as Exs. 1 and 2 to the Declaration of Carol V. Gilden in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement and Approval of the Plan of Allocation, and

In addition to presenting significant risks and obstacles, given Defendants' assertions and defenses rebutting the claims of federal securities laws violations, the prosecution of the litigation required a concerted and thorough effort by Lead Counsel who: conducted an extensive investigation into Defendants' conduct involving numerous confidential witnesses and a review of the Company's public statements, SEC filings and litigation history, news articles, analyst reports, industry reports, the Senate report on its investigation of the for-profit education industry, and accounting literature; drafted detailed amended complaints based on the fruits of their investigation; researched and briefed Lead Plaintiffs' opposition to Defendants' motion to dismiss; drafted a class certification motion that included the submission of a lengthy expert report by Lead Plaintiffs' damages and class certification expert, Michael Hartzmark, Ph.D.; reviewed more than two million pages produced by Defendants and non-parties; prepared and defended the depositions of the two Lead Plaintiffs, and of Dr. Hartzmark; attended four third-party depositions; and engaged in mediated settlement negotiations, which included the exchange of mediation statements addressed to the areas in dispute. Gilden Decl., ¶¶ 41-44. As a result, the Settlement is the culmination of vigorous litigation and arm's-length settlement negotiations. It was only through the diligent efforts of Lead Counsel that the members of the Class will receive compensation for Defendants' alleged wrongdoing.

A fee award of 27.5% of the Settlement Fund, net of Lead Counsel's litigation expenses, has been endorsed by the Lead Plaintiffs. Of note, by way of a crosscheck, this amount will not fully compensate Lead Counsel for the time expended in this case. Lead Counsel has expended $9,393,342.50 in legal time over two and a half years, encompassing the work described above and further detailed below and in the Gilden Declaration. Indeed, by seeking an award of $4,464,543.70, Lead Counsel would receive less than 48% of the actual billable hours they have expended on this case.

---

Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Gilden Decl.").

Moreover, the reaction of the Class to the Settlement and the request for attorneys' fees and expenses has been overwhelmingly positive. Pursuant to the Court's November 23, 2015 Order Preliminarily Approving the Settlement, Approving Notice to the Class, and Scheduling Final Approval Hearing (Dkt. 83) (the "Preliminary Approval Order"), copies of the Notice have been mailed to 179,274 potential Class Members and their nominees, and Summary Notice was published in the *Wall Street Journal*, disseminated on *PR Newswire*, and posted on a dedicated settlement website and on Lead Counsel's website.[3] The Notice advised potential Class Members that Lead Counsel would seek fees of up to 28% of the Settlement Fund and reimbursement of litigation expenses in an amount not to exceed $750,000. *See* Kao Decl., Ex. A, ¶¶ 6, 49. No objection to Lead Counsel's application for fees and expenses has been filed at this point.[4]

## II.   HISTORY AND BACKGROUND OF THE CASE

The Gilden Declaration is an integral part of this submission. The Court is respectfully referred to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the extensive investigation conducted, the substantial motion practice and discovery undertaken, and the settlement negotiations, as well as the numerous risks and uncertainties presented in this litigation. An accompanying motion and memorandum in support of final approval of the proposed Settlement sets forth the reasons the Settlement should be approved.

## III.   ARGUMENT

### A.   Lead Counsel Is Entitled To Attorneys' Fees From the Common Fund

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229,

---

[3] *See* Declaration of Ryan Kao, attached as Ex. 3 to the Gilden Decl. ("Kao Decl."), ¶¶ 12, 14, 19.

[4] Should any objections be received after filing this brief, Lead Counsel will address them in reply papers.

233 (S.D.NY. 2005). Awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore to discourage future alleged misconduct of a similar nature. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008).[5] Indeed, the Supreme Court has emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC.[6] Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.     The Court Should Award a Reasonable Percentage of the Common Fund**

The percentage-of-the-fund method, where counsel is awarded a percentage of the fund that they created, is the preferred means to determine a fee because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 121 (2d Cir. 2005) (citation omitted); *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class.").[7] The Supreme Court has indicated that attorneys' fees in common fund cases should

---

[5] *See In re Veeco Instruments, Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same); *see also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (an award of appropriate attorneys' fees should "provid[e] lawyers with sufficient incentive to bring common fund cases that serve the public interest" and "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so") (citations omitted).

[6] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'") (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

[7] Courts have also historically used the lodestar method for awarding plaintiffs' counsel attorneys' fees, where counsel are awarded the product of their number of hours, multiplied by their reasonable rate, and enhanced by a "multiplier." Specifically, under the lodestar method, a court first multiplies the number of hours each attorney or paraprofessional spent on the case by each attorney's and paraprofessional's reasonable hourly rate; and second, the

generally be based on a percentage of the fund.[8] The Second Circuit has approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources."[9]

### C.     The Requested Fees Are Reasonable Under the Percentage Method

An appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery.[10]

Lead Plaintiffs endorse the requested fee. At 27.5%, after deducting Lead Counsel's litigation expenses,[11] the request is well within (and indeed, below) the range of percentage fees awarded within the Second Circuit in class action cases which have settled for comparable amounts, as demonstrated below:

| Case/Fee Order | Percentage of Fund | Settlement Amount |
|---|---|---|
| *In re IMAX Sec. Litig.*, No. 06 Civ. 6128(NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) | 33% | $12 million |
| *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) | 30% | $5.5 million |
| *In re Hi-Crush Partners L.P. Sec. Litig*, No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) | 33 1/3% | $3.8 million |

---

court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work. A lodestar cross-check on the requested percentage-of-the-fund fee request is addressed below in Section II.E.

[8] *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' … a reasonable fee is based on a percentage of the fund bestowed on the class").

[9] *Goldberger*, 209 F.3d at 48-50 (holding that either the percentage-of-the-fund method or lodestar method may be used to determine appropriate attorneys' fees); *see also Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").

[10] *See Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

[11] Indeed, between 2011 and 2015, courts have awarded a median percentage of 27.5% of the settlement fund for securities class action settlements between $10 and $25 million – precisely the percentage requested here – *before* the deduction of litigation expenses. *See* Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review*, NERA Economic Consulting, Jan. 25, 2016, http://www.nera.com/content/dam/nera/publications/2016/2015_Securities_Trends_Report_NERA.pdf. This data also supports the reasonableness of the requested fee here.

| | | |
|---|---|---|
| *In re Dynex Capital, Inc. Sec Litig.*, Civ. No. 05-1897 (S.D.N.Y. Mar. 13, 2012) | 32% | $7.5 million |
| *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) | 30% | $24.4 million |
| *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528(SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) | 30% | $27 million |

Judge Gleeson recently reviewed the fee awards in "large class cases with court-set fees" and concluded that applying a graduated fee schedule, settlements of the same magnitude as the instant Action would receive fees of approximately 30%; courts generally awarded 33% of the first $10 million, and decreased the marginal percentage of recovery to 30% of the settlement value between $10 million and $50 million. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 443 (E.D.N.Y. 2014).

### D.     *Goldberger* Factors Confirm the Requested 27.5% Fee Is Fair and Reasonable

The Second Circuit in *Goldberger* explained that whether the court uses the percentage-of the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including: (i) the time and labor expended by counsel; (ii) the risks of the litigation; (iii) the magnitude and complexity of the litigation; (iv) the requested fee in relation to the settlement; (v) the quality of representation; and (vi) public policy considerations. *Goldberger*, 209 F.3d at 50. An analysis of these factors demonstrates that the requested fee is fair and reasonable.

#### 1.   Risks Assumed in Pursuing the Action

Courts within the Second Circuit have long recognized that the risk associated with a case undertaken on a contingency basis is an important factor in determining an appropriate fee award:

> Lead Counsel undertook this Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute the Action without a guarantee of compensation or even the recovery of expenses. Unlike counsel for Defendants, who is paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any

time or expenses since this case began, and would have received no compensation or expenses had this case not been successful.

*City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *City of Providence*, 2014 WL 1883494, at *14 (same); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Inc. Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

Here, Lead Counsel pursued Lead Plaintiffs' claims against Defendants in this complex litigation with no guarantee of ever being compensated for the investment of time and money that the case would require. In undertaking this responsibility, Lead Counsel dedicated substantial attorney and professional resources to the prosecution of the litigation, and paid the considerable expenses which a case such as this entails. Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

After the appointment of Lead Plaintiffs, Lead Counsel conducted a full investigation of the facts and background of this case, including extensive interviews with confidential witnesses, in order to draft two comprehensive, well-supported complaints. Lead Counsel subsequently briefed, and successfully defeated, Defendants' motion to dismiss; engaged in substantial discovery, including a review of more than two million pages of documents produced by

Defendants as well as in response to subpoenas directed by Lead Plaintiffs to the counterparties to certain of ITT's transactions, and depositions of Lead Plaintiffs' investment managers as well as Lead Plaintiffs themselves; filed a class certification motion that was accompanied by a lengthy expert report by Dr. Hartzmark; and defended Dr. Hartzmark's deposition. At each of these junctures, Lead Counsel's litigation of this case bore the risk that Defendants would prevail on the merits (including with respect to issues including scienter and loss causation) or in defeating class certification. Finally, Lead Counsel faced the risk that even if a judgment were obtained, the competing demands placed on the Company and its insurance policies by other legal proceedings and other matters could impact the Company's ability to fund a substantial judgment against it, a result which is itself uncertain to occur. Lead Counsel assumed these risks without any assurance of compensation or of recovering the substantial sums they had invested.

It is also not correct to presume that a law firm handling complex contingent litigation always wins. Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. As the court in *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.* recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." 364 F. Supp. 2d 980, 994 (D. Minn. 2005). Even plaintiffs who survive summary judgment and succeed at trial may find their judgment overturned on appeal or on a post-trial motion.[12]

Further, the Court could rule against Lead Plaintiffs on any motion for summary judgment that might be filed at the end of expert discovery and might ultimately find that scienter, market efficiency or loss causation had not been adequately proven. Gilden Decl., ¶ 26. Similarly, even had Lead Plaintiffs survived summary judgment, Defendants might have

---

[12] *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor).

prevailed at trial or on their post-trial appeals. Additionally, Lead Plaintiffs faced the risk that Defendants would seek to disqualify, and potentially be successful in disqualifying, Lead Plaintiffs' class certification and damages expert.

Accordingly, the risks faced by Lead Counsel from the outset of the Action were very high. In the face of these uncertainties, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of attorney time and a significant expenditure of litigation expenses with no guarantee of compensation. Gilden Decl., ¶ 46. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *In re Veeco Instruments*, 2007 WL 4115808, at *6. Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.[13]

### 2.  The Time and Labor Expended

Over two and a half years, Lead Counsel dedicated 22,997.50 hours and expended $727,795.65 in expenses prosecuting this case. As described in the accompanying Gilden Declaration, Lead Counsel engaged in hard-fought motion practice including a motion to dismiss and a motion for class certification (although the proposed Settlement was reached while the motion for class certification was pending), and substantially completed fact discovery – encompassing the review of over two million pages of documents and seven depositions, including four of Lead Plaintiffs' investment managers, two of Lead Plaintiffs, and one of Lead Plaintiffs' class certification and damages expert. Gilden Decl., ¶¶ 3, 19, 21, 41-43. In addition, the process of engaging in intense settlement negotiations with Defendants, culminating in a full-day mediation in August 2015, took significant time and labor. The amount of time and effort devoted to this case by Lead Counsel confirms that the fee request here is reasonable.

---

[13] *See In re FLAG Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3.   The Magnitude and Complexity of the Action Support the Fee

The magnitude and complexity of the Action also support the requested fee. Courts have long recognized that even garden variety securities class action litigation is "notably difficult and notoriously uncertain." *In re FLAG Telecom*, 2010 WL 4537550, at *27 (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)). As noted above, this particular case involved the exacting review of more than two million pages of documents produced by Defendants as well as by non-parties, including extremely complex accounting data and financial models that Lead Counsel analyzed in conjunction with a forensic accountant. In order to prepare for Lead Plaintiffs' motion for class certification, and to defend against Defendants' attacks on Lead Plaintiffs during their depositions, Lead Counsel engaged in extensive and costly consultations with Dr. Hartzmark on such issues as loss causation and market efficiency. Accordingly, the magnitude and complexity of this Action support the conclusion that the requested fee is reasonable and fair.

### 4.   The Quality of Representation Supports the Requested Fee

The quality of the representation here is evidenced first and foremost by the result obtained. *See Goldberger*, 209 F.3d at 55; *In re Veeco Instruments*, 2007 WL 4115808, at *7; *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Lead Counsel respectfully submit that the quality of Lead Counsel's efforts in the litigation to date, together with their substantial experience in securities class actions and their commitment to the litigation, provided Lead Counsel with the leverage necessary to negotiate the $16.9625 million Settlement. Lead Counsel specializes in complex securities litigation with a successful track record in cases throughout the country. *See* Gilden Decl., ¶ 47, and Lead Counsel's firm resume attached thereto as Ex. 4.[14]

---

[14] *See Teachers' Ret. Sys. of La.*, 2004 WL 1087261, at *6  (the skill and prior experience of counsel in the field is relevant to determining fair compensation).

Finally, the quality of the opposition faced by Lead Counsel should also be taken into consideration in assessing the quality of counsel's performance.[15] Here, Defendants were represented by Gibson, Dunn & Crutcher LLP, one of the most highly-respected law firms in the country, which spared no effort in the representation of its clients. *See* Gilden Decl., ¶ 48.

### 5. Second Circuit Precedent Supports the 27.5% Fee as a Reasonable Percentage of the Total Recovery

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *In re Comverse Tech. Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354, at *3 (E.D.N.Y. June 23, 2010) (citation omitted). As discussed in detail in Part II.C. above, the requested 27.5% fee, which is *after* deducting Lead Counsel's litigation expenses, is well within (and indeed, below) the range of percentage fees that courts in this District have awarded in comparable cases. Accordingly, the 27.5% fee requested is reasonable in relation to the size of the Settlement.

### 6. Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. *See In re FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").[16] This is particularly true here where Lead Counsel

---

[15] *See, e.g.*, *In re Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *In re Veeco Instruments*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work.") (citation omitted).

[16] *See also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citation omitted).

is not even seeking enough to cover its full lodestar. Accordingly, public policy favors granting Lead Counsel's application here.

### 7. The Approval of Lead Plaintiffs, as Well as the Reaction of the Class to Date, Support the Requested Fee

Lead Plaintiffs were actively involved in the prosecution and settlement of this Action and fully support the requested fee. *See* Sweeney and Kennedy Decls., attached as Exs. 1 and 2 to the Gilden Decl., ¶¶ 6, 10-11. Lead Plaintiffs are the types of sophisticated and financially interested institutional investors that Congress envisioned serving as fiduciaries for the class when it enacted the PSLRA.[17] Thus, their endorsement of the fee request supports its approval as fair and reasonable.[18]

The reaction of the Class to date also supports the requested fee. As of today, the Claims Administrator has mailed 179,274 copies of the Notice packet to potential Class Members and their nominees (Kao Decl., ¶ 12), which informed them, among other things, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 28% of the Settlement Fund. Kao Decl., Ex. A, ¶¶ 6, 49. As of February 2, 2016, no objection to this fee request has been received (and only one request for exclusion). Kao Decl., ¶ 23.

### E. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to cross-check the proposed award against

---

[17] The PSLRA was intended to encourage institutional investors like Lead Plaintiffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731. Congress believed that these institutions would be in the best position to monitor the prosecution and to assess the reasonableness of counsel's fee requests. In this Action, fund counsel for both Lead Plaintiffs also played an active role in the litigation and closely supervised the work of Lead Counsel. *See* Gilden Decl., Exs. 1-2.

[18] *See, e.g., In re Veeco Instruments*, 2007 WL 4115808, at *8 ("public policy considerations support the award in this case because the Lead Plaintiff … – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("[s]ignificantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request") (approving fee of 19% of $517 million recovery).

counsel's lodestar. *See Goldberger*, 209 F.3d at 50; *In re Payment Card*, 991 F. Supp. 2d at 440. In cases of this nature, fees representing multiples above the lodestar are regularly awarded to reflect the contingency fee risk and other relevant factors.[19]

In complex contingent litigation, a lodestar multiplier less than one is a "strong indication of the reasonableness of the proposed fee." *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving requested fee with a fractional multiplier). In *City of Providence*, where the court awarded a 33% fee on a $15 million settlement which resulted in a multiplier of 0.70, the court stated that "such a multiplier is well below the parameters used throughout district courts in the Second Circuit, which affords additional evidence that the requested fee is reasonable." 2014 WL 1883494, at *13.[20] Here, a lodestar cross-check fully supports the reasonableness of the requested percentage fee. In this entirely contingent action that raised myriad complex and novel legal and factual issues, Lead Counsel devoted 22,997.50 hours of attorney and other professional support time in the prosecution and investigation of the Action. Lead Counsel's total lodestar, derived by multiplying the hours spent by each attorney and paraprofessional by their current hourly rate, is $9,393,342.50.[21] The requested fee of 27.5% of the Settlement Fund, after deducting Lead Counsel's litigation expenses, will amount to $4,464,543.70 (before interest), which represents a

---

[19] *See, e.g., In re FLAG Telecom*, 2010 WL 4537550, at *26 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.") (citation omitted). As Judge McMahon noted, "[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *17, n.7 (S.D.N.Y. July 27, 2007) (citing cases).

[20] *See also Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194(SAS), 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) ("Not only is Class Counsel not receiving a multiplier of their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar. Thus, the lodestar 'cross-check' unquestionably supports a percentage fee award of one-third."); *In re Flag Telecom*, 2010 WL 4537550, at *26 ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").

[21] Gilden Decl., ¶ 45. Lead Counsel's hourly rates are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation, including within this Circuit. *Id.* Both the Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the lodestar figure. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *In re Veeco Instruments*, 2007 WL 4115808, at *9; *Missouri*, 491 U.S. at 284.

fractional multiplier of just 0.47 times Lead Counsel's lodestar. Thus, the 27.5% fee requested is at the low end of the range of fees awarded.

In sum, Lead Counsel's requested 27.5% fee award is well within the range of what courts in this Circuit and throughout the country commonly award in complex class actions such as this one when calculated as a percentage of the fund, and pursuant to a lodestar cross-check.

### F.   Lead Counsel's Expenses Are Reasonable and Should Be Approved

Lead Counsel requests reimbursement of litigation expenses reasonably incurred on behalf of the Class that are properly recovered by counsel.[22] Lead Counsel incurred $727,795.65 in litigation expenses. The expenses for which Lead Counsel seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.[23] The Notice informed potential Class Members that Lead Counsel would apply for reimbursement of expenses in an amount not to exceed $750,000. Kao Decl., Ex. A, ¶¶ 6, 49. Lead Counsel's expense reimbursement is $727,795.65. To date, there has been no objection and reimbursement should be approved. Kao Decl., ¶ 23.

### G.   Lead Plaintiffs Should Be Awarded Their Reasonable Costs
### and Expenses Under 15 U.S.C. § 78u-4(a)(4)

Lead Counsel also seeks approval for $19,047.25 in costs and expenses incurred by Lead Plaintiffs directly relating to their representation of the Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Numerous courts have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent on behalf of the class, and

---

[22] *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895(DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'") (citation omitted).

[23] These expenses include, among others, expert fees, document management/litigation support, computerized research, mediation costs, travel expenses, photocopying, long distance telephone and facsimile charges, postage and delivery expenses, and filing fees. *See* Gilden Decl., ¶ 58.

the Second Circuit recently affirmed a district court's award of costs to representative plaintiffs totaling over $453,000.[24]

As set forth in the Sweeney Declaration (Exhibit 1 to the Gilden Decl.), and in the Kennedy Declaration (Exhibit 2 to the Gilden Decl.), Lead Plaintiffs took an active role in the prosecution of the Action, including communicating extensively with Lead Counsel regarding issues and developments in the Action, reviewing and compiling documents in response to Defendants' document requests, preparing for and sitting for full day depositions, and consulting with Lead Counsel concerning the settlement negotiations as they progressed. Sweeney Decl., ¶ 6; Kennedy Decl., ¶ 6. Pursuant to the PSLRA, Lead Plaintiff Plumbers and Pipefitters requests $5,385.25 based on the value of the 85 hours that Plumbers and Pipefitters' employees expended participating in and managing this litigation on behalf of the Class, and Lead Plaintiff Metropolitan Water requests $13,662.00 based on the value of the 59.5 hours that Metropolitan Water's employees expended on similar activities, as well as legal services provided by Metropolitan Water's outside corporate counsel in connection with this litigation, for a total reimbursement to Lead Plaintiffs of $19,047.25. These are precisely the types of activities that courts have found to support awards to class representatives.[25]

The Notice sufficiently informed potential Class Members that such expenses would be sought. *See In re Bank of Am.*, 772 F.3d at 132-33 (affirming district court's holding of sufficient

---

[24] *See, e.g., In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.,* 772 F.3d 125, 133 (2d Cir. 2014) (affirming district court's award of costs totaling over $453,000 to representative plaintiffs); *In re Veeco Instruments,* 2007 WL 4115808 (awarding Steelworkers Pension Trust $16,089 for 80 hours of lost wages in a $5.5 million settlement); *In re Direxion Shares ETF Trust*, No. 09-cv-8011-KBF (S.D.N.Y. May 10, 2013) (Dkt. 201) (awarding lead plaintiffs costs totaling $27,600); *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-02237 (JSR), 2008 WL 9019514, at *2 (S.D.N.Y. Nov. 25, 2008) (awarding class representative costs totaling $7,303.08).

[25] *See, e.g., In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141(DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"); *In re FLAG Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to lead plaintiff for time spent on the litigation); *In re Veeco Instruments*, 2007 WL 4115808, at *12 (characterizing such awards as "routine" in this Circuit) (citation omitted); *see also In re Xcel*, 364 F. Supp. 2d at 1000 (awarding $100,000 collectively to lead plaintiffs who "fully discharged their PSLRA obligations and have been actively involved throughout the litigation [including] … communicat[ing] with counsel … [and] review[ing] counsels' submissions").

notice, finding that comparable notice "unequivocally conveys the relevant information to the respective class members"). The request by Lead Plaintiffs is supported by the Sweeney and Kennedy Declarations, which include a detailed accounting of the hours dedicated to the litigation and an explanation that the hours constituted lost work time. Lead Plaintiffs' request is reasonable and fully justified under the PSLRA and should be granted.

## IV.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of 27.5% of the Settlement Fund, after deducting Lead Counsel's litigation expenses, $727,795.65 in reimbursement for the reasonable litigation expenses Lead Counsel incurred in connection with the prosecution of the claims on behalf of the Class and $19,047.25 in reimbursement for the reasonable costs and expenses Lead Plaintiffs incurred directly related to the prosecution of this Action.

Dated: February 2, 2016

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By: */s/ Carol V. Gilden*
  Carol V. Gilden
  190 South LaSalle Street
  Suite 1705
  Chicago, IL 60603
  Tel.: (312) 357-0370
  Fax: (312) 357-0369
  cgilden@cohenmilstein.com

  S. Douglas Bunch
  Elizabeth Aniskevich
  Times Wang
  1100 New York Avenue, N.W.
  Suite 500 East
  Washington, D.C. 20005
  Tel.: (202) 408-4600
  Fax: (202) 408-4699
  dbunch@cohenmilstein.com
  eaniskevich@cohenmilstein.com

twang@cohenmilstein.com

Kenneth M. Rehns
88 Pine Street, 14th Fl.
New York, New York 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
krehns@cohenmilstein.com

***Attorneys for Lead Plaintiffs and the Class***

**O'DONOGHUE & O'DONOGHUE LLP**

James R. O'Connell
Mark W. Kunst
4748 Wisconsin Ave. N.W.
Washington, D.C. 20016
Tel.: (202) 362-0041
Fax: (202) 362-2640

***Additional Attorneys for Lead Plaintiff***
***Plumbers and Pipefitters National Pension Fund***