**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ITT EDUCATIONAL SERVICES, INC. SECURITIES LITIGATION | Civil Action No. 13-CV-1620-JPO |

**DECLARATION OF CAROL V. GILDEN IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND
APPROVAL OF THE PLAN OF ALLOCATION, AND LEAD COUNSEL'S MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES**

I, Carol V. Gilden of the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), submit this declaration in support of Lead Plaintiffs' motion for final approval of the proposed Settlement and approval of the Plan of Allocation, as well as Lead Counsel's motion for approval of attorneys' fees and reimbursement of litigation expenses, including the expenses of the Lead Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4). I am a partner at Cohen Milstein and have actively supervised and participated in the prosecution of this Action since Lead Plaintiffs' appointment in 2013. As a result, I have personal knowledge of all material matters related to this Action. The statements in this declaration are made based on my personal knowledge unless otherwise indicated.

## I.   PRELIMINARY STATEMENT

1.   My law firm is the Court-appointed Lead Counsel in this Action and counsel for Lead Plaintiff Plumbers and Pipefitters National Pension Fund ("Plumbers and Pipefitters") and Lead Plaintiff Metropolitan Water Reclamation District Retirement Fund ("Metropolitan Water") (collectively "Lead Plaintiffs").

2.   This Declaration does not seek to detail each and every event that occurred since the Action was commenced. Rather, the Declaration provides the Court with highlights of the

litigation, the events leading to the Settlement, and the basis upon which Lead Counsel and Lead Plaintiffs recommend its approval.

3.      In entering into the Stipulation and Agreement of Settlement dated November 2, 2015 (the "Stipulation," Dkt. 82), Lead Plaintiffs and Lead Counsel were fully informed about the strengths and weaknesses of the case.[1] As detailed below, Lead Counsel conducted an extensive investigation of all potential claims that could be asserted against ITT and its executives, by conducting an extensive analysis of the Company's public statements, compared to publicly available information bearing on any potential fraud, as well as by interviewing confidential witnesses; filed two amended complaints based on the results of that investigation; successfully opposed a motion to dismiss by Defendants; moved for certification of a class and filed a related expert report on market efficiency; undertook and engaged in significant discovery relating to both merits and class-certification issues, including analyzing more than two million pages of documents, preparing representatives of both Lead Plaintiffs, as well as Lead Plaintiffs' market efficiency expert, for depositions, and defending those depositions; attended four other third-party depositions; and engaged and conferred throughout the litigation with multiple experts and consultants on issues such as accounting, market efficiency, corporate finance and damages.

4.      The parties reached an agreement in principle to settle in August 2015—more than two years after the commencement of the action and only after extensive litigation including the near-completion of fact discovery. The settlement was also only achieved after negotiations facilitated by the Honorable Daniel Weinstein (Ret.) of JAMS, an experienced and highly-

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

respected mediator. *See generally* Declaration of Daniel Weinstein ("Weinstein Decl."), attached hereto as Exhibit 5.

5.      Based upon our experience, the extensive discovery we conducted, our evaluation of the facts and the applicable law, our recognition of the risk and expense of continued litigation, and in light of the competing demands placed on the Company and its insurance policies by other legal proceedings and other matters, Lead Plaintiffs and Lead Counsel submit that the Settlement is fair, reasonable and adequate. In our view, the Settlement represents an excellent result, and is in the best interests of the Class, particularly because it provides a meaningful recovery to the Class now, and avoids the possibility of recovering nothing, either because of a loss on the merits, or because of the Company's potential inability to pay a substantial money judgment against it in the future.

6.      From the outset of this case, Lead Plaintiffs supervised Lead Counsel and participated in all aspects of the litigation. They produced documents, sat for depositions, reviewed pleadings, and remained informed throughout the case; they also were involved in the settlement mediation, sending representatives to attend the mediations, and ultimately approved the Settlement. *See* Declaration of William T. Sweeney, Jr., Fund Administrator of the Plumbers and Pipefitters National Pension Fund ("Sweeney Decl.") in Support of (A) Lead Plaintiffs' Motion for Approval of Settlement and Plan of Allocation; and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, attached hereto as Exhibit 1; Declaration of Joseph F. Kennedy, President of the Board of Trustees of the Metropolitan Water Reclamation District Retirement Fund ("Kennedy Decl.") in Support of (A) Lead Plaintiffs' Motion for Approval of Settlement and Plan of Allocation; and (B) Lead

Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, attached hereto as Exhibit 2.

7.     The Settlement requires Defendants to cause to be paid $16,962,500 in cash (the "Settlement Amount"). By December 15, 2015, Defendants had caused the Settlement Amount to be deposited into an escrow account for the benefit of the Class in accordance with the terms of the Stipulation. The Settlement Fund has been invested in FDIC-insured investment accounts. The Settlement benefits the Class by conferring a guaranteed, immediate and substantial benefit of $16,962,500 and avoids the risks and expenses of continued litigation, including the risk of recovering less than the Settlement Amount after substantial delay, or of no recovery at all.

8.     In addition to seeking final approval of the Settlement, Lead Plaintiffs seek approval of the proposed Plan of Allocation as fair and reasonable. To create the Plan of Allocation, Lead Counsel engaged Michael Hartzmark, Ph.D., a well-recognized economist who has served as Lead Plaintiffs' market efficiency and damages expert throughout this Action. Under the proposed Plan of Allocation, the Settlement Amount (plus interest accrued and after deduction of Court-approved expenses and attorneys' fees) will be distributed on a *pro rata* basis to members of the Class who timely submit valid proofs of claim based on their "Recognized Loss" amount as calculated based on the Plan of Allocation.

9.     In addition, Lead Counsel requests an award of attorneys' fees and reimbursement of litigation expenses. Specifically, Lead Counsel is applying for a fee award of 27.5% of the Settlement Fund **after** deduction of litigation expenses incurred by Cohen Milstein, plus interest, for reimbursement of Lead Counsel's litigation expenses in the amount of $727,795.65, and for reimbursement of Lead Plaintiffs' costs and expenses pursuant to 15 U.S.C. § 78u-4(a)(4) in the amount of $5,385.25 for Plumbers and Pipefitters, and $13,662.00 for Metropolitan Water.

10.     Lead Counsel submits that the fee and expense application is fair and reasonable. As explained in our accompanying brief in support of Lead Counsel's request for attorneys' fees and reimbursement of litigation expenses, the requested fee of 27.5% of the Settlement Fund after deduction of litigation expenses incurred by Cohen Milstein, plus interest, is consistent with other securities class actions. In addition, the reasonableness is further confirmed by a lodestar cross-check that results in Lead Counsel receiving a *fractional* multiplier of 0.47.

## II.     HISTORY OF THE ACTION

11.     The case commenced on March 11, 2013, when plaintiff William Koetsch filed a class action complaint, Civil Action No. 13-cv-1620-JPO (Dkt. 1), against ITT and two of its officers, Daniel M. Fitzpatrick and Kevin M. Modany (the "Individual Defendants"), in the United States District Court for the Southern District of New York (the "Court" or "District Court"), on behalf of a putative class comprising purchasers of the Company's common stock between April 22, 2010 and February 25, 2013, and asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. The case was assigned to the Honorable J. Paul Oetken.

12.     On April 17, 2013, plaintiff Massachusetts Laborers' Annuity Fund filed a substantially similar class action complaint against the same defendants in the same Court, with a proposed class period of April 24, 2008 to February 25, 2013.

13.     Both actions asserted substantially similar claims, namely that Defendants misled investors by misrepresenting the Company's liabilities under certain risk-sharing agreements ("RSAs") that the Company had entered into in connection with certain third-party, private student loan programs for ITT students. Under the RSAs, the Company would be liable to the

third parties if the Company's students were to default on their student loans received under those programs beyond a certain threshold. The actions asserted that Defendants knowingly or recklessly understated, or otherwise misrepresented, the extent of those liabilities, and that when the market learned the true extent of those liabilities, investors were harmed.

14.    On July 25, 2013, the Court consolidated the two actions, appointed Plumbers and Pipefitters and Metropolitan Water as Lead Plaintiffs, and approved Lead Plaintiffs' selection of Cohen Milstein as Lead Counsel in the consolidated action (the "Action"). (Dkt. 18).

15.    On October 7, 2013, Lead Plaintiffs filed a Consolidated Amended Class Action Complaint with an expanded Class Period of April 24, 2008 through February 25, 2013, inclusive. (Dkt. 29). On November 26, 2013, pursuant to the Court's Individual Practices, Defendants filed a letter articulating the bases for an anticipated motion to dismiss, (Dkt. 32), to which Lead Plaintiffs responded on December 3, 2013. (Dkt. 33). On December 6, 2013, also pursuant to the Court's Individual Practices, Lead Plaintiffs sought, and were granted, leave to amend the Consolidated Amended Class Action Complaint in lieu of Defendants filing a motion to dismiss at that stage. (Dkt. 34).

16.    On January 15, 2014, Lead Plaintiffs filed a Second Amended Consolidated Class Action Complaint (the "Complaint"). (Dkt. 37). The Complaint alleged: (1) that ITT and the Individual Defendants made material misrepresentations and omissions in violation of Section 10(b) and Rule 10b-5 of the Exchange Act; and (2) that the Individual Defendants are liable for ITT's primary violation of the Exchange Act as alleged "control persons" of the Company within the meaning of Section 20(a) of the Exchange Act.

17.    On March 3, 2014, Defendants moved to dismiss the Complaint. (Dkt. 40). On July 22, 2014, the Court denied in large part Defendants' motion to dismiss. (Dkt. 48).

6

18.     On August 5, 2014, Defendants answered the Complaint, denying all allegations of wrongdoing or liability therein, and also asserting various defenses. (Dkt. 50).

19.     Lead Plaintiffs, on behalf of themselves and the putative Class, and Defendants (together the "Parties"), then commenced written discovery focused on, among other things, ITT's RSAs and student loan default rates and the extent of Defendants' knowledge regarding the likelihood that the Company's obligations under the RSAs would be triggered.  Prior to producing documents, the Parties engaged in extensive negotiations about the scope of discovery for both sides. The parties also conducted extensive third-party discovery, including of the third-party lenders who were the counterparties to the RSAs, the Company's auditors and advisors, and loan servicers, while Defendants directed subpoenas to, and took the depositions of, four of Lead Plaintiffs' investment managers.  The parties also conducted discovery in connection with class certification, including the taking by Defendants of the depositions of representatives of Lead Plaintiffs, and of Lead Plaintiffs' market efficiency expert, Michael L. Hartzmark, Ph.D., who submitted an expert report in support of Lead Plaintiffs' motion for class certification ("Class Certification Motion") (Dkt. 64), which was filed on March 27, 2015.

20.     On June 16, 2015, the Court entered a stipulation and order that stayed proceedings for three months to facilitate the parties' efforts to resolve the Action through mediation. (Dkt. 76). On September 14, 2015, the Court extended the stay of proceedings for an additional two months to allow the parties to continue their settlement discussions. (Dkt. 78).

21.     As described above, the parties have engaged in comprehensive discovery relating to both merits issues and class certification. Defendants and third parties have together produced over two million pages of documents. Lead Plaintiffs have produced over 115,000 pages. And,

also as described above, Defendants took the depositions of Lead Plaintiffs' representatives, Lead Plaintiffs' market efficiency expert, and Lead Plaintiffs' investment managers.

**III.    THE SETTLEMENT**

22.    On August 12, 2015, Lead Plaintiffs, Lead Counsel, Defendants, ITT's insurers, and Defendants' Counsel participated in a mediation under the auspices of the Honorable Daniel Weinstein (Ret.) of JAMS. Pursuant to Judge Weinstein's instructions, the Parties submitted detailed confidential mediation statements in advance of the mediation session, totaling 57 pages plus 109 exhibits. As a result of the arm's-length negotiations at that mediation, the parties (including ITT's insurers) agreed to settle the Action for $16,962,500. On November 2, 2015, the Parties executed the Stipulation of Settlement. *See generally* Weinstein Decl., ¶¶ 8-12.

23.    The Settlement of $16,962,500 (plus interest) provides the Class an immediate and substantial benefit and eliminates the significant risks of continued litigation under circumstances where a favorable outcome could not be assured, particularly in light of the pressure placed on ITT as a result of numerous private and regulatory legal actions against the Company. Lead Counsel believes that the Settlement is fair, reasonable, and an excellent result for Class Members considering the risk of an adverse judgment and recovering nothing or less after substantial delay.

**A. Reasons for the Settlement**

24.    Lead Plaintiffs and Lead Counsel endorse the Settlement. Lead Plaintiffs are sophisticated institutional investors who have actively overseen and/or participated in the prosecution of this Action. Lead Counsel is a national law firm that specializes in complex securities litigation and is highly experienced in this type of litigation. Based on their experience and close knowledge of the facts developed over two and a half years of litigation, Lead Counsel and Lead Plaintiffs determined that the Settlement was in the best interest of the Class.

25.     As described herein, at the time of settlement, Lead Plaintiffs faced many risks in continuing the litigation. Perhaps the most significant of these risks was that, even if Lead Plaintiffs survived unscathed the arduous path through class certification, summary judgment, trial, and appeals—which altogether may have taken years—there remained the possibility that the Company would not be able to fund a substantial money judgment against it.

26.     At the time of the Settlement, ITT had been the target of numerous private lawsuits and regulatory proceedings, and defending these actions were placing pressure on its insurance policies, which could have impacted the Company's ability to fund an eventual money judgment against it. More generally, Defendants could and would have interposed several defenses to liability and damages, such as scienter, loss causation, market efficiency, and materiality, at summary judgment or at trial, that would have made the case more complex, and that, if successful, could have barred any recovery whatsoever. Also, Defendants could, and likely would, have sought to disqualify Lead Plaintiffs' economic experts.

27.     The Settlement eliminates the above risks and guarantees the Class a cash recovery now. Lead Counsel firmly believes that settling the Action at this juncture and for the amount negotiated was and is in the best interests of the Class.

**B. Notice to the Class Meets the Requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure**

28.     As required by the Court's Preliminary Approval Order, beginning on December 14, 2015, the Claims Administrator, Epiq Systems, Inc. ("Epiq"), notified potential Class Members of the Settlement by mailing a copy of the Notice to potential Class Members. The Claims Administrator notified potential Class Members based on a proprietary database maintained by the Claims Administrator, containing the names and addresses of 1,615 of the largest and most common U.S. nominees (*i.e.,* brokerage firms, banks, and institutions who hold

securities in the name of the nominee, on behalf of the beneficial purchasers) as well as lists of holders and nominees maintained by ITT's transfer agent.

29.     The Court-approved Notice requires nominees, within fourteen days of receipt of copies of the Notice, to either (i) send a copy of the Notice and the Claim Form to the beneficial owner of such certificates, or (ii) provide to Epiq the names and addresses of such persons.

30.     In the aggregate, as of today, Epiq has disseminated 179,274 copies of the Notice and Proof of Claim Form to potential Class Members and their nominees. *See* Declaration of Ryan Kao Regarding Mailing of the Notice and Proof of Claim; Publication of the Summary Notice; and Report on Requests for Exclusion Received to Date ("Kao Decl."), attached hereto as Ex. 3, ¶¶ 11, 12.

31.     In addition, a Summary Notice was published once in the *Wall Street Journal* and disseminated on *PR Newswire* on December 14, 2015. *See id.*, ¶ 14. Information regarding the Settlement, including downloadable copies of the Notice and Claim Form, was also posted on the website established by the Claims Administrator specifically for this Settlement, www.ITTSecuritiesSettlement.com, *id.*, ¶ 19, as well as on Lead Counsel's website, www.cohenmilstein.com. This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1).

32.     The Notice advises Class Members of the essential terms of the Settlement, sets forth the procedure for objecting to or opting out of the Settlement, and provides specifics on the date, time and place of the final approval hearing. The Notice also contains information regarding Lead Counsel's fee application and the proposed plan of allocating the Settlement proceeds among Class Members.

33.     As explained in the accompanying Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, the Notice fairly apprises Class Members of their rights with respect to the Settlement and therefore is the best notice practicable under the circumstances and complies with the Court's November 23, 2015 Preliminary Approval Order (Dkt. 83), Federal Rule of Civil Procedure 23, and due process.

## IV.     THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

34.     In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel is also applying to the Court for an award of attorneys' fees, reimbursement of litigation expenses and reimbursement of Lead Plaintiffs' costs and expenses pursuant to 15 U.S.C. § 78u-4(a)(4).

35.     Specifically, Lead Counsel are applying for a fee of 27.5% of the Settlement Fund after deduction of Lead Counsel's litigation expenses, *i.e.,* $4,464,543.70, plus interest at the same rate as that earned on the Settlement Fund, reimbursement of $727,795.65 in Lead Counsel's litigation expenses, in particular, reimbursement of $5,385.25 for Lead Plaintiff Plumbers and Pipefitters' costs and expenses, and reimbursement of $13,662.00 for Lead Plaintiff Metropolitan Water's costs and expenses.

36.     In determining whether a requested award of attorneys' fees is fair and reasonable, district courts are guided by the factors first articulated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). As summarized in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), these factors include: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id.* at 50. Based on consideration of each of the foregoing

factors as further discussed below, and on the additional legal authorities set forth in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of litigation expenses (the "Fee Memorandum") filed contemporaneously herewith, I respectfully submit that Lead Counsel's requested fee should be granted.

### A. Application for Attorneys' Fees

#### i. The Requested Fee of 27.5% of the Settlement Fund Is Fair and Reasonable

37.    For the extensive efforts on behalf of the Class, Lead Counsel is applying for compensation from the Settlement Fund on a percentage basis. As set forth in the accompanying Fee Memorandum, the percentage method is the appropriate method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the Class in achieving the maximum recovery in the shortest amount of time required under the circumstances, is supported by public policy, has been recognized as appropriate by the United States Supreme Court for cases of this nature and represents the overwhelming current trend in the Second Circuit and most other circuits.

38.    Based on the result achieved for the Class, the extent and quality of work performed, the risks of the litigation and the contingent nature of the representation, Lead Counsel submits that a 27.5% fee award, net of Lead Counsel's litigation expenses, is justified and should be approved. Lead Plaintiffs, both sophisticated institutional investors, approve of Lead Counsel's fee request. *See* Ex. 1, Sweeney Decl., ¶¶ 10-11; Ex 2., Kennedy Decl., ¶¶ 10-11.

39.    As discussed in the Fee Memorandum, a 27.5% fee award, net of Lead Counsel's litigation expenses, is fair and reasonable for attorneys' fees in common fund cases such as this,

and is well within, or below, the range of the percentages typically awarded in securities class actions in this Circuit.

40.     I personally devoted substantial time litigating this case, including overseeing and monitoring of the work that other experienced attorneys at my firm undertook commensurate with their levels of expertise, skill and experience.

41.     To review the more than two million pages of documents that were produced during the course of discovery in this case, my firm hired discovery counsel. Each discovery counsel retained was an experienced attorney and each of them possessed extensive complex securities litigation experience.

42.     I respectfully submit that the work undertaken by Lead Counsel in prosecuting this case and arriving at this Settlement has been time-consuming and challenging. From the outset, Lead Counsel and Lead Plaintiffs appreciated the risks inherent in this type of litigation.

43.     This Action settled only after Lead Counsel overcame multiple legal and factual challenges. To do so, Lead Counsel: conducted an extensive investigation (including interviewing numerous confidential witnesses and reviewing numerous articles and publications related to ITT and the for-profit education industry); filed two amended complaints; successfully opposed Defendants' motion to dismiss; moved for certification of the Class; conducted extensive fact discovery, including the review of more than two million pages of documents produced by Defendants and third parties; defended and/or attended seven depositions in connection with class certification; engaged and conferred with experts and consultants on issues such as accounting, market efficiency, corporate finance and damages; researched the applicable law with respect to the claims of Lead Plaintiffs and the Class, as well as Defendants' potential defenses and other litigation issues; and engaged in settlement negotiations with experienced

defense counsel. The requested fee is justified given the substantial uncertainties and risks surrounding and inherent in complex securities litigation such as this case.

44.     As described in Lead Counsel's Fee Memorandum, the requested fee is not only fair and reasonable under the percentage approach, but a lodestar cross-check, which reveals a *fractional multiplier*, confirms the reasonableness of the fee.

45.     Listed here at ¶¶ 45 and 58 are schedules that summarize Lead Counsel's lodestar, as well as the expenses incurred by category (the "Fee Schedule" & "Expense Schedule" respectively). The Fee Schedule indicates the amount of time spent by each attorney and paraprofessional employed by Lead Counsel, and the lodestar calculations based on their current billing rates and titles. The Fee Schedule and this Declaration were prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which records are available at the request of the Court. The hourly rates for attorneys and paraprofessionals included in these schedules are the same as the current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation. For attorneys or paraprofessionals who are no longer employed by Lead Counsel, the lodestar calculations are based upon the billing rates for such person in his or her final year of employment.

| Cohen Milstein Sellers & Toll PLLC Lodestar | | | |
|---|---|---|---|
| **Partners** | **Hours** | **Current Rate** | **Lodestar** |
| Bunch, S. Douglas | 887.25 | $530 | $470,242.50 |
| Devore, Joshua, S. | 3.75 | $655 | $2,456.25 |
| Eisenkraft, Michael | 4.50 | $605 | $2,722.50 |
| Gilden, Carol, V. | 939.50 | $815 | $765,692.50 |
| Sommers, Daniel, S. | 11.25 | $815 | $9,168.75 |
| Toll, Steven, J. | 71.00 | $915 | $64,965.00 |
| **Total Partner Lodestar** | | | **$1,315,247.50** |
| | | | |
| **Associates** | | | |

| | | | |
|---|---|---|---|
| Aniskevich, Elizabeth, A. | 694.50 | $420 | $291,690.00 |
| Fontan, Genevieve | 10.25 | $440 | $4,510.00 |
| Rehns, Daniel | 4.00 | $550 | $2,200.00 |
| Rehns, Kenneth | 329.75 | $500 | $164,875.00 |
| Wang, Times | 305.25 | $420 | $128,205.00 |
| **Total Associate Lodestar** | | | **$591,480.00** |
| | | | |
| **Paralegals** | | | |
| Clark, Cameron | 13.25 | $245 | $3,246.25 |
| Hill, Jordan, V. | 605.50 | $260 | $157,430.00 |
| Lee, JiHoon | 3.00 | $270 | $810.00 |
| Marchbank, Ryan | 80.25 | $260 | $20,865.00 |
| McBride, Michael | 4.00 | $270 | $1,080.00 |
| Sanchez, Jeannette | 0.75 | $270 | $202.50 |
| Tucker, Rhys | 208.50 | $260 | $54,210.00 |
| **Total Paralegal Lodestar** | | | **$237,843.75** |
| | | | |
| **Securities Specialists** | | | |
| Bournazian, Thea | 314.50 | $425 | $133,662.50 |
| Sutter, Daniel | 48.50 | $260 | $12,610.00 |
| Twigg, Andrew | 4.00 | $260 | $1,040.00 |
| **Total Securities Specialist Lodestar** | | | **$147,312.50** |
| | | | |
| **Law Clerks** | | | |
| Kramer, Sam | 18.25 | $260 | $4,745.00 |
| Nelson, Michael | 28.25 | $250 | $7,062.50 |
| Noll, Andrew | 20.75 | $245 | $5,083.75 |
| Ripley, Joshua | 11.25 | $260 | $2,925.00 |
| Westerman, Jessica | 21.25 | $250 | $5,312.50 |
| **Total Law Clerk Lodestar** | | | **$25,128.75** |
| | | | |
| **Discovery Counsel** | | | |
| Butler, Michael | 1,137.50 | $490 | $557,375.00 |
| Carey, Denis, M. | 1,196.00 | $270 | $322,920.00 |
| Copenhaver, Carl | 1,242.50 | $405 | $503,212.50 |
| Copenhaver, Christina | 1,349.75 | $405 | $546,648.75 |
| Corrado, Megan | 1,304.75 | $285 | $371,853.75 |
| Decherd, James | 20.00 | $300 | $6,000.00 |
| Dirks, Bradley, A. | 1,004.25 | $385 | $386,636.25 |
| Figueroa, Damien | 1,424.25 | $415 | $591,063.75 |

| | | | |
|---|---|---|---|
| Hettler, Kathryn, A. | 973.50 | $240 | $233,640.00 |
| Marino, William, L. | 997.75 | $405 | $404,088.75 |
| Mogil, Jamie, R. | 1,585.50 | $375 | $594,562.50 |
| Nash, Dana | 1,054.50 | $490 | $516,705.00 |
| Rossi, Paul, A. | 1,730.50 | $415 | $718,157.50 |
| Saltzman, Jay | 1,036.00 | $510 | $528,360.00 |
| Sosler, Evan | 587.00 | $425 | $249,475.00 |
| Taggart, Megan | 414.50 | $300 | $124,350.00 |
| Ulon, Robert, C. | 1,296.25 | $325 | $421,281.25 |
| **Total Discovery Counsel Lodestar** | | | **$7,076,330.00** |
| | | | |
| **Total Lodestar** | **22,997.50** | | **$9,393,342.50** |

46.      Lead Counsel took this case on a contingency basis, fully committed the firm's resources and then aggressively litigated it for more than two and a half years without any compensation or guarantee of success. Based on the excellent result achieved for the Class, the quality of work performed, the risks of the Action and the contingent nature of the representation, Lead Counsel submits that the request for a 27.5% fee award, net of Lead Counsel's litigation expenses, is fair and reasonable and consistent with cases of similar size in the Second Circuit.

### ii.   Standing and Expertise of Lead Counsel

47.      The expertise and experience of counsel are other important factors in setting a fair fee. As demonstrated by Lead Counsel's firm resume, attached hereto as Exhibit 4, the attorneys at Cohen Milstein are experienced and skilled class action securities litigators and have a successful track record in securities cases throughout the country – including within this Circuit in particular.

### iii.   Standing and Caliber of Opposing Counsel

48.     The quality of the work performed by counsel in attaining the Settlement should also be evaluated in light of the quality of opposing counsel. Lead Counsel was opposed in this case by very skilled and highly-respected counsel. The Defendants were represented by Gibson, Dunn & Crutcher LLP, one of the most formidable international law firms, which spared no effort in the defense of its clients. In the face of this knowledgeable and powerful defense, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that are favorable to the Class.

### iv.   The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk, Contingent Securities Cases

49.     As noted above, the Action was undertaken on a wholly contingent basis. From the outset, Lead Counsel understood that we were embarking on a complex and expensive litigation with no guarantee of compensation for the investment of time, money and effort that the case would require.

50.     In undertaking the responsibility for prosecuting the Action, Lead Counsel assured that sufficient attorney resources were dedicated to the investigation of the Class claims against the Defendants and that sufficient funds were available to advance the expenses required to pursue and complete such complex litigation. As set forth below, Lead Counsel received no compensation and, in total, incurred $727,795.65 in expenses in prosecuting this Action for the benefit of the Class.

51.     Lead Counsel also bore the risk that no recovery would be achieved. As discussed herein, this case presented a number of risks and uncertainties which could have prevented any recovery whatsoever. Despite the vigorous and competent efforts of Lead Counsel, success in contingent-fee litigation, such as this, is never assured.

52.     Lead Counsel firmly believes that the commencement of a securities class action does not guarantee a favorable outcome to a class. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations.

53.     Courts have repeatedly recognized that it is in the public interest to have experienced and able counsel available to enforce the securities laws. As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs − particularly institutional investors − take an active role in protecting the interests of securities purchasers. If this important public policy is to be carried out, plaintiffs' counsel should be adequately compensated, taking into account the risks undertaken in prosecuting securities class actions.

### v.   The Reaction of the Class to Date

54.     As set forth above, 179,274 Notices have been disseminated to potential Class Members and their nominees. Kao Decl., ¶ 12. In addition, the Summary Notice was published in the *Wall Street Journal* and disseminated on *PR Newswire*. *See id*., ¶ 14. Both the Notice and Summary Notice were published on a dedicated settlement website, www.ITTSecuritiesSettlement.com, which is also linked to by Lead Counsel's website. The Notice explains the Settlement and Lead Counsel's anticipated fee request. The deadline to object to Lead Counsel's fee request is February 16, 2016. To date, no Class Member has objected.

55.     In addition, the Notice informed Class Members that the deadline to request exclusion from the class is February 16, 2016. To date, only a single request for exclusion has

been received by the Settlement Administrator. Kao Decl., ¶ 22. The approval of the Class to date further supports Lead Counsel's request.

56.     In sum, given the complexity and magnitude of the Action; the responsibility undertaken by Lead Counsel; the difficulty of proof on liability and damages; the experience of Lead Counsel and defense counsel; and the contingent nature of Lead Counsel's agreement to prosecute this Action, Lead Counsel respectfully submit that the attorneys' fees requested here are reasonable and should be approved.

### vi.   Application for Reimbursement of Expenses

57.     Lead Counsel also seeks reimbursement of $727,795.65 in litigation expenses reasonably and actually incurred by Lead Counsel in connection with commencing and prosecuting the claims against the Defendants over the course of the last several years. The Notice apprised potential Class Members that Lead Counsel would be seeking reimbursement of expenses in an amount not to exceed $750,000. The amount of the unreimbursed litigation expenses actually requested is less than what was stated in the Notice and, to date, no objection has been raised to Lead Counsel's request for reimbursement of litigation expenses.

58.     As detailed below, Lead Counsel has incurred a total of $727,795.65 in expenses in connection with the prosecution of this litigation. These expenses were all reasonably and necessarily incurred in connection with the prosecution of this Action on behalf of the Class.

### Cohen Milstein Sellers & Toll PLLC Expenses

| Expense Type | Cost |
|---|---|
| Duplicating and Copying | $1,016.65 |
| Long Distance Telephone | $1,149.32 |
| Postage and Express Mail | $1,550.25 |
| Messenger | $248.88 |
| Service of Process | $2,120.00 |
| Court Fees | $433.00 |

19

| | |
|---|---|
| Court Reporters and Transcripts | $10,443.62 |
| Lexis/Westlaw | $7,603.33 |
| Pacer/Bloomberg Law | $1,084.70 |
| Document Management | $45,383.89 |
| Other Computer Services | $627.00 |
| Travel | $18,642.68 |
| Local Transportation | $195.04 |
| Experts and Consultants | $611,431.95 |
| Mediation | $24,228.75 |
| Administrative Overtime/Related Expenses | $777.37 |
| Business Meals | $859.22 |
| **Total Litigation Expenses** | **$727,795.65** |

59.     From the beginning of the case, Lead Counsel was aware that we might not recover any of our expenses, and would not recover anything until the Litigation was partially or fully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate us for the lost use of the funds advanced to prosecute this Litigation. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

60.     As set forth in the Expense Schedule of Cohen Milstein above, Lead Counsel has incurred a total of $727,795.65 in unreimbursed litigation expenses through the date of the accompanying motion in connection with the prosecution of this Litigation. The expenses are reflected on the books and records maintained by Lead Counsel. These books and records are prepared from expense vouchers, check records and other source materials, and are an accurate record of the expenses incurred.

61.     The litigation expenses for which Lead Counsel seeks reimbursement were largely incurred for professional fees, including the costs of experts, consultants and document

CRITICAL

management. Lead Plaintiffs' experts on accounting, damages, class certification, and financial issues provided substantial assistance to Lead Counsel in the prosecution and resolution of this Litigation. This included analyzing produced documents to assess the Defendants' liability, analyzing relevant accounting and economic literature, drafting reports, and otherwise assisting Lead Counsel in connection with class certification, mediation, and settlement. The assistance of Lead Plaintiffs' experts was crucial to establishing potential liability, damages, market efficiency, among other things.

62.     The other expenses for which Lead Counsel seek reimbursement are also the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, long distance telephone and facsimile charges, postage and delivery expenses, computerized research, overtime expenses, filing fees and photocopying.

63.     All of the litigation expenses incurred, which total $727,795.65, were necessary to the successful prosecution and resolution of the claims against the Defendants. In view of the complex nature of the Litigation, the expenses incurred were reasonable and necessary to pursue the interests of the Class. Accordingly, we respectfully submit that the litigation expenses incurred by Lead Counsel should be reimbursed in full.

### vii.   Application for Reimbursement of Expenses

64.     Included in Lead Counsel's request for reimbursement of litigation expenses is a request for reimbursement of Lead Plaintiffs' reasonable costs and expenses, including lost wages, in recognition of Lead Plaintiffs' contribution to the prosecution and successful resolution of this securities class action, pursuant to 15 U.S.C. § 78u-4(a)(4). Lead Plaintiff Plumbers and Pipefitters requests reimbursement of $5,385.25, as set forth in the Sweeney Declaration, attached hereto as Exhibit 1. Lead Plaintiff Metropolitan Water requests

reimbursement of $13,662.00, as set forth in the Kennedy Declaration, attached hereto as Exhibit 2. These costs were reasonably incurred by the staff of Lead Plaintiffs and were directly related to the representation of the Class, including, but not limited to, 1) collecting documents in response to Defendants' document requests; 2) regularly communicating with Lead Counsel and Fund Counsel regarding updates and strategy in this Action; 2) preparing and sitting for full-day depositions and 3) communicating and participating in settlement discussions. Sweeney Decl., ¶¶ 6, 13-14; Kennedy Decl., ¶¶ 6, 13-14. Accordingly, we respectfully submit that the costs and expenses reasonably incurred by Lead Plaintiffs should be reimbursed in full.

## V.    CONCLUSION

65.    In view of the outstanding recovery for the Settlement Class, the very substantial risks of this litigation, the efforts of Lead Counsel, the quality of work performed, the contingent nature of the fee, the complexity of the case and the standing and experience of Lead Counsel, Lead Counsel respectfully submits that the Settlement should be approved as fair, reasonable and adequate; that the Plan of Allocation should be approved as fair and reasonable; that a fee in the amount of 27.5% of the Settlement Fund after deduction of litigation expenses incurred by Lead Counsel, plus interest at the same rate as earned by the Settlement Fund, should be awarded to Lead Counsel; and that Lead Counsel's and Lead Plaintiffs' litigation expenses should be reimbursed in full.

I declare, under penalty of perjury, that the foregoing facts are true and correct.

Dated: February 2, 2016                    */s/ Carol V. Gilden*
                                           Carol V. Gilden