UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ITT EDUCATIONAL SERVICES, INC. SECURITIES LITIGATION | Civil Action No. 13-cv-1620-JPO<br>ECF Case |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF (i) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND APPROVAL OF THE PLAN OF ALLOCATION, AND (ii) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND REIMBURSEMENT OF LEAD PLAINTIFFS' COSTS AND EXPENSES**

**TABLE OF CONTENTS**

                                                                                                                  **Page**

ARGUMENT ............................................................................................................................. 2

I.     The Reaction of the Class Supports Approval of the Proposed Settlement, the Plan of Allocation, and the Fee and Reimbursement Requests .......................................................... 2

II.    The Objections Should Be Overruled ................................................................................ 3

        A.     The Objections Should Be Overruled Because Messrs. Brown and Vey Do Not Have Standing, and Because the Objections Are Facially Invalid under the Court's Preliminary Approval Order .................................................................. 3

        B.     The Objections to the Administrative and Procedural Aspects of the Settlement Are Groundless ............................................................................................ 5

        C.     The Objections to the Attorneys' Fee Request Are Meritless ..................................... 8

CONCLUSION ........................................................................................................................ 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Am. Int'l Group., Inc. Sec. Litig.*,
 916 F. Supp. 2d 454 (S.D.N.Y. 2013) ................................................................................... 4

*In re Bear Stearns Cos. Inc. Sec., Derivative, and ERISA Litig.*,
 909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................................... 2

*In re Celestica Inc. Sec. Litig.*,
 Civil Action No. 07-cv-00312-GBD (S.D.N.Y.) ................................................................... 3

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed
 Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ........................................................................... 4

*Freedman v. Weatherford Int'l, Ltd.*,
 Civil Action No. 12-cv-2121 (LAK) (S.D.N.Y.) ................................................................... 3

*In re Pall Corp. Class Action Attorneys Fees Application*,
 No. CV 07-3359, 2013 WL 1702227 (E.D.N.Y. Apr. 8, 2013) ............................................ 9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
 912 F. Supp. 97 (S.D.N.Y. 1996) .......................................................................................... 3

*Shapiro v. JP Morgan Chase & Co.*,
 Nos. 11 Civ. 8331, 11 Civ. 7961, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................. 9

*In re Telik, Inc. Sec. Litig.*,
 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................................... 3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005) .................................................................................................... 2

**STATUTES, RULES, AND REGULATIONS**

Federal Rule of Civil Procedure 23 ............................................................................................... 5

Private Securities Litigation Reform Act ................................................................................... 6, 7

Securities Exchange Act of 1934 ................................................................................................... 7

**OTHER AUTHORITIES**

Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* (NERA Economic Consulting, Jan. 25, 2016), http://www.nera.com/content/dam/nera/publications/2016/2015_Securities_Trends_Report_NERA.pdf ................................................................................................................10

Lead Plaintiffs Plumbers and Pipefitters National Pension Fund ("Plumbers and Pipefitters") and Metropolitan Water Reclamation District Retirement Fund ("Metropolitan Water"), and Lead Counsel, respectfully submit this reply memorandum of law in further support of (i) their motion for final approval of the proposed settlement of this securities class action (the "Action") (Dkt. 84), and (ii) Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, as well as Lead Plaintiffs' expenses (Dkt. 85).[1,2]

Lead Plaintiffs and Lead Counsel are pleased to report that, now that the February 16, 2016 deadline for objections and exclusions has passed, the proposed Settlement, the Plan of Allocation, and the fee and reimbursement requests have received a resoundingly positive reaction from the Class.

More than 199,000 notice packets, which included a copy of the Notice of Pendency of Class Action and Proposed Settlement ("Notice") (Dkt. 88-3, Exhibit A), as well as a copy of a Proof of Claim Form, have been mailed to potential Class Members, *see* Supp. Gilden Decl., Ex F (Supplemental Declaration of Ryan Kao re Notice Dissemination) ("Supp. Kao Decl."), ¶¶ 2, 4, and the Summary Notice was published in *The Wall Street Journal* and over PR Newswire. In response, to date, more than 8,000 claims have been submitted by institutional and individual investors. *Id.*, ¶ 6. Only three investors have filed exclusion requests and only two individuals have filed objections. *Id.*, ¶¶ 7-8. Both objections, however, failed to comply with the Court's requirement to submit evidence of actual Class membership, thereby rendering them facially invalid. They should be overruled on that basis alone. Indeed, one objection has already been withdrawn because the

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated November 2, 2015 (Dkt. 82).

[2] Concurrent with this memorandum, Lead Counsel is filing a Supplemental Declaration of Carol V. Gilden in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Supp. Gilden Decl."), which, among other things, requests an additional reimbursement of $3,003.49, primarily to account for expenses reasonably incurred, or reasonably and conservatively anticipated to be incurred, in connection with (1) responding to the objection of Jeff M. Brown, and (2) travel to the Final Approval Hearing.

objector cannot show he is a member of the Class. In any event, as discussed further below, both objections are without merit.

Given that over 199,000 notice packets were distributed, and given that over 8,000 affirmative claims have been submitted to date, the receipt of a mere two (invalid) objections and three exclusion requests is a testament to the fairness, adequacy, and reasonableness of the Settlement, the proposed Plan of Allocation, and the fee and reimbursement requests.

## ARGUMENT

**I.     THE REACTION OF THE CLASS SUPPORTS APPROVAL OF THE PROPOSED SETTLEMENT, THE PLAN OF ALLOCATION, AND THE FEE AND REIMBURSEMENT REQUESTS**

The Second Circuit has stated that, in assessing the fairness and adequacy of a settlement, "the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our [] inquiry." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005). "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Id.* at 118; *see also In re Bear Stearns Cos. Inc. Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012) (the fact that "just two objections" to the settlement were made weighed strongly in favor of approval). Here, despite the long class period of nearly five years, the distribution of more than 199,000 notice packets, and the publication of the Summary Notice in *The Wall Street Journal* and on PR Newswire, only two objections and three exclusion requests were received. These small numbers, contrasted with the more than 8,000 affirmative claims that have been filed to date without objection, reflect the Class's approval of the Settlement and support final approval. *See, e.g., Bear Stearns*, 909 F. Supp. 2d at 266-67 (noting the absence of significant exclusion requests weighs "strongly in favor of approval" where 115 requests for exclusion were received). Additionally, there has not been any objection to Lead Plaintiffs' requests for reimbursement of costs and expenses. The lack of objections to these items provides firm support for their approval.

With respect to the Plan of Allocation and Lead Counsel's request for attorneys' fees and litigation expenses, the fact that there was only one objection to the former and only two objections

(one of which has now been withdrawn) to the latter, despite the distribution of more than 199,000 notice packets and despite over 8,000 claims being filed to date, supports the fairness and reasonableness of these items. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 594 (S.D.N.Y. 2008) ("That only one objection to the fee request was received is powerful evidence that the requested fee is fair and reasonable."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97, 103 (S.D.N.Y. 1996) ("[I]solated expression[s] of opinion" should be considered "in the context of thousands of class members who have not expressed themselves similarly.").

In sum, the reaction of the Class as a whole has been overwhelmingly positive, and the Court should approve the Settlement, the Plan of Allocation, the request for attorneys' fees, and the reimbursement requests.

## II. THE OBJECTIONS SHOULD BE OVERRULED

### A. The Objections Should Be Overruled Because Messrs. Brown and Vey Do Not Have Standing, and Because the Objections Are Facially Invalid under the Court's Preliminary Approval Order

Out of the hundreds of thousands of potential Class Members who received notice packets, only two individuals submitted objections: attorney Jeff M. Brown—a serial, "professional" objector who has submitted objections in more than nine other class actions,[3] *see* Supp. Gilden

---

[3] Indeed, within just the last year, and in this District alone, Mr. Brown has submitted objections in at least two securities class actions: *In re Celestica Inc. Securities Litigation*, Civil Action No. 07-cv-00312-GBD (S.D.N.Y.), and *Freedman v. Weatherford International, Ltd.*, Civil Action No. 12-cv-2121 (LAK) (S.D.N.Y.). In both cases, as here, Mr. Brown made no effort to demonstrate he was a Class Member. In both cases, the Judges overruled Mr. Brown's objections, both for lack of standing *and* for lack of merit. *See* Supp. Gilden Decl., Ex. B (Transcript of *Celestica* Final Approval Hearing) at 24 ("[I]t's not been established that Mr. Brown is technically in a position to object having not demonstrated that he is, in fact, a class member," and that "even if that issue is overcome, I find that his objections on their substance lack merit," were "not valid," and were "boilerplate."); *id.*, Ex. C (Order Awarding Attorneys' Fees and Expenses in *Weatherford*) at 3 ("The Court finds and concludes that Mr. Brown has not established that he is a Class Member with standing to bring the objection and it is overruled on that basis. The Court has also considered the issues raised in the objection and finds that, even if Mr. Brown were to have standing to object, the objection is without merit."); *id.*, Ex. D (Judgment and Order Approving Class Action Settlement in *Weatherford*) at 7 (same).

Decl., Ex. A (table of objections)—and Edward L. Vey. However, neither objector complied with the Court's Preliminary Approval Order, which required that: "[a]ny objection ***must*** include: … (b) a list and documentation of all the Class Member's transactions in ITT common stock during the Class Period." Order Preliminarily Approving the Settlement, Approving Notice to the Class and Scheduling Final Approval Hearing ("Preliminary Approval Order") (Dkt. 83), ¶ 12 (emphasis added).

Here, neither Mr. Brown nor Mr. Vey has submitted *any* documentation evidencing their transactions in ITT common stock. Mr. Brown merely states that, "[u]pon information and belief[4] Jeff M. Brown ("Objector") has received notice that he is a member of the class as defined in that certain Notice of Class Action and Proposed Settlement dated December 14, 2015." Objection of Jeff M. Brown to Proposed Settlement and Notice of Intent to Appear ("Brown Objection") (Dkt. 89) at 1. And Mr. Vey merely states that "I was a shareholder of the company for the specified time and am a Class Action Member." Letter from Edward L. Vey to the Honorable J. Paul Oetken, dated February 12, 2016 ("Vey Objection") (Dkt. 90) at 1. Neither, however, has submitted a list and documentation of their transactions in ITT common stock, as required by the Court's Preliminary Approval Order. Indeed, after Lead Counsel served a subpoena for such documentation on Mr. Brown, who has been a serial objector, he withdrew his objection.

Given that only members of the Class have standing to object, *see, e.g.*, *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007) (non-class member could not object to proposed settlement); *In re Am. Int'l Group, Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 459 (S.D.N.Y. 2013) (it is "uncontested that [non-class member] does not have standing under Rule 23 to object to the Settlement"), and given that Messrs. Brown

---

Unsurprisingly, when faced with Lead Counsel's subpoenas for his trading records and his deposition testimony, Mr. Brown capitulated and withdrew his objection. *See id.*, Ex. E (email from Mr. Brown's attorney noting his withdrawal); Dkt. 91 (Notice of Withdrawal).

[4] Lead Counsel does not understand how this statement can be made upon "information and belief." Mr. Brown should know whether he received a Notice and should know from reviewing his investments and reading the Notice whether he is a Class Member.

and Vey have failed to provide Lead Plaintiffs, Lead Counsel, or the Court, of any evidence that they are Class Members, neither Mr. Brown nor Mr. Vey appear to have standing. Moreover, by the terms of the Court's Preliminary Approval Order, their failure to comply with ¶ 12(b) means that they "shall be deemed to have waived such objection and shall forever be foreclosed from making any objection." Preliminary Approval Order, ¶ 12. Thus, their objections should be overruled.

### B. The Objections to the Administrative and Procedural Aspects of the Settlement Are Groundless

Even on their merits, the objections should be overruled. The Vey Objection lists three purported issues, while the Brown Objection lists ten purported items (one of which merely purports to "join[] in all other objections"). However, neither Mr. Vey nor Mr. Brown objects to the substance of the Settlement itself, or the proposed recovery. Nor do they object to Lead Plaintiffs' requests for reimbursement of costs and expenses.

Instead, both object to various administrative and procedural aspects of the Settlement and claims process, and to attorneys' fees and expenses. However, even a cursory examination reveals these objections to be groundless. For instance, Mr. Vey purports to object to the Plan of Allocation on the grounds that it was prepared by an unnamed damages consultant selected by Lead Counsel, allegedly without ITT's input. Vey Objection at 1. Mr. Vey's concern is misplaced. The consultant was Michael L. Hartzmark, Ph.D., a respected economist with significant experience in securities class actions, including formulating plans of allocation. As for ITT's perceived lack of involvement, by the very terms of the Settlement Agreement, "[t]he Plan of Allocation is not part of the Settlement, and Defendants … shall have no responsibility for the Plan of Allocation or its implementation." Settlement Agreement (Dkt. 82), ¶ 1(x). This makes sense because the purpose of the Plan of Allocation—as explained in the Notice itself, *see* Notice, ¶ 28—is to ensure that the Settlement proceeds are distributed appropriately among Class members, which in this case was accomplished by designing the Plan to track the theories of liability that survived the Court's ruling on Defendants' motion to dismiss. This fulfills Lead Plaintiffs' and Lead Counsel's fiduciary duties to the Class. Indeed, to allow Defendants to influence how the Settlement proceeds are distributed

arguably undermines those duties. Thus, Mr. Vey's objection to the Plan of Allocation is meritless, and should be overruled.

Additionally, both Messrs. Vey and Brown object to aspects of the Notice as being insufficiently informative. Mr. Vey complains that "[i]t is very difficult for the average layperson to comprehend the scope of this Notice. As an example, pages 7 and 8 utilize Tables (A & B) for PSLRA. This [*sic*] is no explanation anywhere in the Notice of what this abbreviation means, yet it seems to be a foundation for the Settlement." Vey Objection at 1. It is unclear whether Mr. Vey does not understand Tables A and B at all, or if Mr. Vey merely does not understand Table B, insofar as it references the PSLRA. (Table A does not mention the PSLRA.) Either way, Mr. Vey's objection lacks merit. The Notice explains the purposes of both Tables A and B. With respect to Table A, which is part of the Plan of Allocation, the Notice states that "[t]he objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund to Class Members who suffered economic losses as a result of the alleged violations of the federal securities laws, as opposed to losses caused by market or industry factors or factors unrelated to the alleged violations of law." Notice, ¶ 28. The Notice then explains that "[f]or all shares of ITT common stock purchased or acquired for consideration between April 24, 2008 and February 25, 2013, both dates inclusive, the Recognized Loss is calculated as the lesser of the number of shares purchased multiplied by: 1. the recoverable damages set forth in Table A below." Table A, in turn, consists of a matrix for calculating damages in a manner consistent with the federal securities laws and Lead Plaintiffs' allegations—just as the Notice describes.

With respect to Table B, the Notice explains that it is designed to calculate a Recognized Loss for shares sold between February 25, 2013, and May 24, 2013, in which case the Recognized Loss is the "purchase/acquisition price per share less the PSLRA rolling average price on the date of sale as set forth in Table B." Thus, Table B only applies to those cases where the Class Member sold in the 90-day window after the end of the Class Period. Whether this applies to Mr. Vey is unknown because Mr. Vey has not submitted his transaction records. As for the meaning of the abbreviation PSLRA, the fact that it refers to the Private Securities Litigation Reform Act is easily

discernable by a layperson through a simple internet search. It is also defined in the Court's Preliminary Approval Order, which is available on the settlement website, http://www.ITTSecuritiesSettlement.com. Preliminary Approval Order, ¶ 6. More generally, to the extent Mr. Vey contends that the Notice is difficult to understand, potential Class Members were hardly without recourse, as contact information for Lead Counsel, and for the Claims Administrator, was published throughout the Notice, as well as on the settlement website. Indeed, potential Class Members have contacted both Lead Counsel and the Claims Administrator, via email, phone, and letter, hundreds of times for clarifying information. *See* Supp. Kao Decl., ¶ 9. Thus, Mr. Vey's objection to the Notice as being difficult to understand generally, and his objection to Tables A, B, and Table B's use of the PSLRA abbreviation specifically, should be overruled.

As for Mr. Brown's complaint in Point 9 that "[t]he Notice is inadequate in that no alleged violated statutes are referenced," Brown Objection at 4, this is similarly meritless. In a section titled "What Is This Case About? What Has Happened So Far?" the Notice states, in the very first sentence, that "[t]he complaint in this case asserts that in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), Defendants misled investors by allegedly misrepresenting the Company's obligations under certain risk-sharing agreements." Notice, ¶ 14. Thus, contrary to Mr. Brown's objection, the Notice clearly identifies the statutes alleged to have been violated. As for the objection in Point 9 that "the Settlement should require the Defendants to admit or deny certain facts … as a substantial penalty to the Defendant," Mr. Brown cites no authority for this requirement, and none exists. To require a "penalty" in the context of the settlement of a private civil lawsuit misunderstands the nature of settlement. To the extent Mr. Brown is truly concerned about what Defendants admitted or denied, he could have referred to Defendants' Answer, which is readily available on the docket (*see* Dkt. 50), with which he is obviously familiar, as evidenced by his references thereto elsewhere in his objection.

Mr. Brown also claims in Point 1 that the claims process "fails to require reliable oversight, accountability and reporting." Again, this is untrue. The Claims Administrator was appointed by the Court, and is subject to the oversight of the Court and Lead Counsel. Preliminary Approval Order,

7

¶ 7; Settlement Agreement, ¶ 29. All claims processed by the Claims Administrator will be the subject of a future motion for distribution, which will also require Court approval. *See* Settlement Agreement, ¶ 35.

Mr. Brown then claims in Point 2 that "[n]o timeframe for completing administration of the monetary relief is set, so Class Members cannot know when payment would arrive." But securities class action settlements generally have no set timeframe, for the simple reason that it is impossible to predict the number and nature of claims submitted, the extent of deficiencies and the time needed to cure them, and whether there will be disputes requiring Court intervention. These types of issues can delay distribution in some cases, while in other cases the process is completed considerably more quickly. By contrast, setting forth an unduly rigid or short schedule for completing the administration merely invites errors in the administration process, which benefits no one.

Mr. Brown's final objection to the administration of the Settlement is made in Point 7, which asserts that "[s]ome *cy pres* procedure needs to be articulated," and objects to "[a]llowing the *cy pres* process to be determined solely by Lead Class Counsel." However, as is routinely done in these cases, Lead Counsel will propose a *cy pres* recipient(s) to the Court in its distribution motion. Thus, the *cy pres* procedure will not be "determined solely" by Lead Counsel; rather it will be conducted under the auspices of and subject to the approval of the Court. Accordingly, Mr. Brown's concern regarding *cy pres* is unwarranted.

In sum, none of the objections to the administrative and procedural aspects of the Settlement have merit, and all should be overruled.

      **C.**    **The Objections to the Attorneys' Fee Request Are Meritless**

Messrs. Vey and Brown also object to various aspects of Lead Counsel's fee request. Mr. Brown first argues in Point 3 that attorneys' fees should "be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement." Lead Counsel's "oversight and involvement," however, are required both by Lead Counsel's fiduciary duty to the Class, and the Settlement Agreement. *See, e.g.*, Settlement Agreement, ¶¶ 29-37. This Court's appointment of Cohen Milstein as Lead Counsel and as Class Counsel for the purposes of the Settlement

presumably reflected its confidence that Cohen Milstein would fulfill its ongoing fiduciary obligations. And indeed, Lead Counsel has a track record of meeting such obligations in administering numerous securities class action settlements in this District and elsewhere. There is no basis to suggest Cohen Milstein will not do so here. Thus, it is fair and reasonable for such funds to be paid upon approval by the Court.

Mr. Brown's Point 6 asserts "[n]o fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable cost incurred), which can be evaluated by Class Members and the Court." Yet, this is exactly what Lead Counsel submitted in the Declaration of Carol V. Gilden on February 2, 2016 ("Gilden Decl.") (Dkt. 88), which included everything Mr. Brown asks for: hourly rates, *see* Gilden Decl., ¶ 45, hours accumulated, *see id.*, and reasonable costs incurred. *See id.*, ¶ 58. To the extent Mr. Brown would require more, that is inconsistent with well-established practice in this District. *See, e.g., In re Pall Corp. Class Action Attorneys' Fees Application*, No. CV 07-3359, 2013 WL 1702227, at *4 (E.D.N.Y. Apr. 8, 2013) ("Neither existing case law nor, frankly, the conduct of objectors' counsel in this case suggests that objectors' counsel should be provided with the detailed time records of counsel for the class plaintiffs."); *Shapiro v. JP Morgan Chase & Co.*, Nos. 11 Civ. 8331, 11 Civ. 7961, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) (time need not be "exhaustively scrutinized").

Finally, Mr. Vey, and Mr. Brown in Points 4, 5, and 8, essentially assert that the fee request is too high. However, neither offers any authority in support. As an initial matter, Lead Counsel's fee request (approximately $4.465 million) is *less* than the amount to which Messrs. Vey and Brown object (approximately $4.75 million). This is because, as a result of negotiations and discussions between Lead Counsel and Lead Plaintiffs, Lead Counsel is requesting 27.5% of the Settlement Amount, **after** subtracting Lead Counsel's litigation expenses, as opposed to what was described in the Notice as the maximum Lead Counsel would request, *i.e.*, 28% of the Settlement Amount (*before* subtracting expenses). Thus, the premise of Messrs. Vey and Brown's objection is incorrect.

Moreover, as explained in the Memorandum of Law in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Fee and Expense Memorandum") (Dkt. 87), according to a recent study, 27.5% is the precise statistical median award for recent securities class action settlements between $10 and $25 million.[5] Here, Lead Counsel is actually requesting *less* than that, because it is deducting Lead Counsel's expenses from the Settlement Amount first. As a percentage of the Settlement Amount, Lead Counsel's fee request is 26.3%. That Lead Counsel's actual fee request was arrived at through negotiation with Lead Plaintiffs, and is at or below the statistical median award for similar securities class action settlements, underscores the fairness and reasonableness of the request.

Mr. Brown in Point 5 also states that "in the 88 docket entries very few entries were substantive in nature," and asserts that "only the Plaintiff's Complaint(s), Defendant's Answer, Defendant's Motion to Dismiss and Plaintiff's Motion to Approve Settlement and Award Attorney's Fees had any significant legal basis to its content." Mr. Brown then asserts that "[t]his is hardly the record of a case justifying Plaintiff's Attorneys' Fees in the amount of $4,749,500 (plus interest) and expenses of up to $750,000 (plus interest)."

However, Mr. Brown overlooks not just key docket entries, such as Lead Plaintiffs' letter brief (Dkt. 33) addressing Defendants' pre-motion letter outlining arguments for dismissal (Dkt. 32) (both filed pursuant to the Court's individual practices), Lead Plaintiffs' opposition (Dkt. 43) to Defendants' subsequent formal motion to dismiss (Dkts. 40-42), and Lead Plaintiffs' class-certification papers and expert report (Dkts. 64-66), but also *all* the discovery *not* reflected on the docket, but described in Lead Counsel's brief and declaration in support of the fee request, *see* Dkts. 87 and 88, including Lead Counsel's review of more than two million pages of documents, the depositions of non-parties, the depositions of Lead Plaintiffs, and the deposition of Lead Plaintiffs' class-certification expert. Put simply, Mr. Brown significantly understates the amount of

---

[5] *See* Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review*, 36, (NERA Economic Consulting, Jan. 25, 2016), http://www.nera.com/content/dam/nera/publications/2016/2015_Securities_Trends_Report_NERA.pdf.

work performed by Lead Counsel. And, as set forth in the Fee and Expense Memorandum, and the Gilden Decl., in light of that work, which amounts to a lodestar that is *twice* the amount actually being requested, the excellent $16.9625 million cash recovery, and the fact that all of Lead Counsel's expenses were reasonable and necessary for the success of the litigation, the requested fee and expense reimbursement are reasonable and fair.

## CONCLUSION

For the reasons set forth herein, and in Lead Plaintiffs' and Lead Counsel's previous submissions, the Court is respectfully requested to approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and to approve the request for attorneys' fees and reimbursement of litigation expenses (including the expenses described in the Supp. Gilden Decl.), as well as reimbursement of Lead Plaintiffs' expenses.[6]

---

[6] Proposed orders are attached as Exhibits G-H to the Supp. Gilden Decl., and will be emailed to the Orders and Judgments Clerk.

Dated: March 1, 2016                    Respectfully submitted,

                                        **COHEN MILSTEIN SELLERS & TOLL PLLC**

                                        By: */s/ Carol V. Gilden*
                                                Carol V. Gilden
                                                190 South LaSalle Street
                                                Suite 1705
                                                Chicago, IL 60603
                                                Tel.: (312) 357-0370
                                                Fax: (312) 357-0369
                                                cgilden@cohenmilstein.com

                                                S. Douglas Bunch
                                                Elizabeth Aniskevich
                                                Times Wang
                                                1100 New York Avenue, N.W.
                                                Suite 500 East
                                                Washington, D.C. 20005
                                                Tel.: (202) 408-4600
                                                Fax: (202) 408-4699
                                                dbunch@cohenmilstein.com
                                                eaniskevich@cohenmilstein.com
                                                twang@cohenmilstein.com

                                                Kenneth M. Rehns
                                                88 Pine Street, 14th Fl.
                                                New York, New York 10005
                                                Tel.: (212) 838-7797
                                                Fax: (212) 838-7745
                                                krehns@cohenmilstein.com

                                        *Attorneys for Lead Plaintiffs and the Class*

                                        **O'DONOGHUE & O'DONOGHUE LLP**

                                        James R. O'Connell
                                        Mark W. Kunst
                                        4748 Wisconsin Ave. N.W.
                                        Washington, D.C. 20016
                                        Tel.: (202) 362-0041
                                        Fax: (202) 362-2640

                                        *Additional Attorneys for Lead Plaintiff Plumbers and Pipefitters National Pension Fund*